



1   ELISE KING
    10 MOUNT JUDAH PLACE
2   SACRAMENTO, CA 95835
    916-752-1720
3   ELISEKING@MSN.COM

FILED

NOV 16 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

4            UNITED STATES DISTRICT COURT FOR

5            THE EASTERN DISTRICT OF CALIFORNIA

6   ELISE KING,                        | Case No.: 2:17-cv-01257-MCE-EFB PS
7            Plaintiff,
8   vs.                                | FIRST AMENDED COMPLAINT FOR
9                                       | INJUNCTIVE AND EQUITABLE RELIEF
    CALIFORNIA DEPARTMENT OF WATER
10  RESOURCES, ET AL                    | VIOLATIONS OF STATUTE:
                                        | 1.    AMERICAN WITH DISABILITIES
11           Defendant                  | ACT 42 U.S § 12101, ET SEQ;
                                        | 2.    REHABILITATION ACT SECTION
12                                      | 501, 504(a) and 504(d), 29 U.S.C. § 791 and
13                                      | 794,
14
15                                      | DECLARATORY JUDGMENT
                                        | REQUESTED BASED ON THE MERITS OF
16                                      | EVIDENCE PRESENTED IN THIS
                                        | COMPLAINT
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT 2:17-CV-01257-MCE-EFB PS              - 1

I.       INTRODUCTION

1.       Plaintiff brings this action against the Defendants for denial of reasonable accommodation and failure to engage with plaintiff in a good faith interactive process as set forth in the American With Disabilities Act (1990) As Amended 42 USC Section 12101 ET SEQ). See Mohsin v. Cal Dept. of Water Resources, 52 F. Supp. 3d 1006; See also: Ex Parte Young, 209 U.S. 123; See also: Bd. Of Trustees of Univ of Ala. V. Garrett, 531 U.S. 356.

2.       State officials named herein, employees of the DWR failed to engage with plaintiff in the interactive process as defined under 29 C.F.R. § 1630.2(o)(3), which prevented plaintiff from receiving a reasonable accommodation. Plaintiff repeatedly requested reasonable accommodation as defined under 42 USC Section 12111(9) (a) and (b) from, state officials employed by her previous employer, CA Department of Water Resources (DWR).   DWR ultimately failed to provide plaintiff with reasonable accommodation as set forth in 42 U.S.C. § 12112(b)(5)(A).

3.       This action is also authorized and instituted pursuant to REHABILITATION ACT SECTIONS 501, 504(a) and 504(d), 29 U.S.C. §§ 791 and 794.  See Johnston v. Horne "An" otherwise qualified handicapped individual "under §794 may bring a private cause of action for handicap discrimination against an activity or program that receives federal funds." (citing Boyd v. U.S. Post Office, 752 F.2d 410).  (Exhibit 1 - California Department of Finance DWR 2017 Budget Summary)

II.      PARTIES

4.       Elise King, Plaintiff (hereinafter referred to as Plaintiff or King) is a 56-year old female who is a resident of Sacramento. CA.  Plaintiff was employed with California Department

of Water Resources beginning March 2, 2010 and served as a Staff Services Analyst and an Associated Governmental Program Analyst (AGPA) for California Department of Water Resources, Integrated Regional Water Management/ Financial Assistance Branch (herein after referred to as IRWM/FAB) between June 6, 2011 and September 30, 2016 when she was removed from her employment duties by DWR.   At all times relevant herein Plaintiff is a qualified individual with a disability as set forth under the American With Disabilities Act (1990) As Amended 42 USC Section 12111(8).  At all times relevant herein Plaintiff was entitled to benefits and protections as provided under the CA State Employees Union, SEIU1000 Bargaining Unit 1 contract. (Exhibits 2 through 7 - a copy of plaintiff's performance reviews)

     5.     Defendant, Department of Water Resources, (herein after referred to as DWR or Department) is a State of California, governmental agency with a principal place of business at 1416 Ninth Street, Sacramento, California 95814. DWR is responsible for the management of California's natural and water resources.  At all times relevant herein, DWR has failed to provide plaintiff with reasonable accommodation and failed to engage with plaintiff in a good faith interactive process as defined under the American With Disabilities Act (1990) As Amended and the Rehabilitation Act of 1973.

     6.     Defendant, Stephanie Varrelman, Chief, CA Department of Water Resources, Office of Workforce Equality (hereinafter referred to as Varrelman or OWE) works at 1416 Ninth St. Sacramento, CA 94236.

     7.     Defendant, Arthur Hinojosa, Division Chief,  CA Department of Water Resources, Integrated Regional Water Management/ Financial Assistance Branch (hereinafter referred to as Hinojosa or IRWM/FAB) works at 1416 Ninth St. Sacramento, CA 942836.

FIRST AMENDED COMPLAINT 2:17-CV-01257-MCE-EFB PS     - 3

8. Defendant, Tracie Billington, Chief, CA Department of Water Resources, Integrated Regional Water Management/ Financial Assistance Branch (hereinafter referred to as Billington or IRWM/FAB) beginning approximately 2005 through 2017 is now from retired from State service at 1416 Ninth St. Sacramento, CA 942836.

9. Defendant, Tom Beiler, Chief, CA Department of Water Resources, Employee Health Services & Labor Relations (hereinafter referred to as Beiler or EHS) works at 1416 Ninth St. Sacramento, CA 942836.

10. Defendant, Danielle Gist, Chief, Department of Water Resources, Employee Health Services (hereinafter referred to as Gist or EHS) left DWR in July 2014. Her last known place of employment is 1416 Ninth St. Sacramento, CA 942836.

11. Defendant, Jacqueline Nelson, Chief, Employee Health Services, Department of Water Resources, Employee Health Services Division (hereinafter referred to as Nelson or EHS) works at 1416 Ninth St. Sacramento, CA 942836.

12. Defendant, Muzaffar Eusuff, Supervising Engineer, Department of Water Resources, Integrated Regional Water Management/ Financial Assistance Branch (hereinafter referred to as Eusuff or IRWM/FAB) works at 1416 Ninth St. Sacramento, CA 942836.

13. Defendant, April Duenas-Davis, Return to Work Coordinator, Department of Water Resources, Employee Health Services Division (hereinafter referred to as Duenas-Davis or EHS) left DWR to work for another state agency in 2016.  Her last known place of employment is 1416 Ninth St. Sacramento, CA 942836.

14.  Whenever in this Complaint an act or omission of DWR is alleged, the said allegation shall be deemed to mean and include an allegation that the DWR acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, that the act or

FIRST AMENDED COMPLAINT 2:17-CV-01257-MCE-EFB PS          - 4

omission was authorized by managerial officers or directors, and that the act or omission was ratified by the officers of DWR.

15. The first cause of action is alleged against defendants Varrelman, Hinojosa, Billington, Beiler, Gist, Nelson, Eusuff, and Duenas-Davis. Each of the other causes of action alleged herein is alleged against each Defendant, jointly and severally unless otherwise specifically set forth in the allegation.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. King has exhausted her administrative remedies as required under the United States Equal Employment Opportunity Commission (hereafter "EEOC") by filing her charges of discrimination and obtaining her Private Right to Sue Letters from the EEOC.

17. Both charges in item 11. were dual filed with the California Department of Fair Employment and Housing (DFEH) who notified plaintiff in writing that "The EEOC is responsible for processing of this Complaint and DFEH will not be conducting an investigation in to this matter. Please contact EEOC directly for any discussion of the complaint or the investigation." The DFEH issued plaintiff Right To Sue documents pursuant to Charge No. 555-2015-00673 on May 18, 2015 and issued a Notice of Case Closure October 8, 2015.  DFEH issued plaintiff a Notice of Right to Sue pursuant to Charge No. 555-2015-0673 and Charge No. 555-2017-00411C on April 2, 2017.  (Exhibits 8 to 14 - Right to Sue Letters and EEOC Charges)

18. King has timely filed this action with respect to each cause of action alleged herein.

### IV. JURISDICTION

19. The court has subject matter jurisdiction under the provisions of 28 U.S.C. § 1331 (2015) and 1343 (1), (2), (3), and (4); the provisions of 42 USC § 1981, 1983, 1985, 1986,

1988; and the Constitution of the United States, and more particularly, the Eleventh, and
Fourteenth Amendment thereto and 29 U.S.C. § 207 (o) (1).

20.  This action is authorized and instituted pursuant to THE AMERICAN WITH
DISABILITIES ACT (1990), AS AMENDED 42 U.S.C. §§ 1201-12117 including but not
limited to 42 U.S.C. § 12112(b)(5)(A) and Section 107(a) 42 U.S.C. § 12117(a) which
incorporates by reference Section 706(f)(1.)

21. This action is also authorized and instituted pursuant to REHABILITATION
ACT SECTIONS 504(a) and 504(d), 29 U.S.C. § 791 and 794.

## V.  VENUE

22. Venue is proper pursuant to 28 U.S.C § 1391 because the events and
omissions giving rise to this complaint happened in this district.

## VI.  FACTS

23.      DWR ignored their duty to plaintiff to evaluate the employee's
circumstances under the laws of the Americans with Disabilities Act (ADA), the Family Medical
Leave Act (FMLA), and worker's compensation (WC) separately with regard to the purpose and
applicability of each law including leave rights, reinstatement rights, medical documentation,
privacy rights, fitness to return to work certification, and benefits while plaintiff was on leave.
DWR did not notice plaintiff of any changes in leave status, as required under SEIU1000 Unit 1
contract unless plaintiff specifically and repeatedly requested leave status information.  By
continuing to approve plaintiff's leave even when her worker's compensation claim was on delay
status DWR acted "as if" plaintiff  had eligibility for leave benefits under at least one of the state
(FMLA) or federal (ADA) medical leave laws and that it understood that the meaning of

"disability" and their duties to provide the interactive process and reasonable accommodation may be defined differently under each of these laws.  See 29 CFR 825.702(d)(2) (1997).

24.     Plaintiff presented Department with a doctor's note on or about May 30, 2014 from the medical providers at Kaiser Permanente's Psychiatry Department's - Intensive Outpatient Program (IOP), taking her off work for two weeks (to attend the two-week outpatient program) after being absent from work since Wednesday, May 28, 2014 when she left work at 6:30 a.m. due to an overwhelming feeling of physical and mental exhaustion and deep sadness. The medical providers at IOP, which served as a member of the DWR's Medical Provider Network, extended plaintiff's treatment for an additional two weeks and plaintiff submitted another note to the Department again keeping her off work.  (Exhibits 15 to 17 - email between Eusuff and King dated May 28, 2014 and emails from Personnel to IRWM/FAB staff to notice plaintiff as FMLA.)

25. On July 1, 2014 plaintiff was evaluated by Dr. Irving Hellman, Psy.D of the Occupational Health Department (OHD) at Kaiser Permanente in Sacramento which is also a member of the DWR's Medical Provider Network for occupational injuries.  Dr. Hellman determined that plaintiff's injury was work-related and begin treating plaintiff for her injury.

26. On July 3, 2014 plaintiff submitted a worker's compensation claim to the Department for the injury citing "serious medical condition/overwhelm resulting from humiliation, harassment and retaliation," that she contended was work-related. (CA Division of Workers Compensation awarded plaintiff both temporary and permanent disability in September 2018.)

27. Plaintiff submitted the necessary form entitled "Certification of Health Care Provider For Family Leave (Family and Medical Leave Act of 1993) completed by Dr. Hellman

of Occupational Health Department.  The provider FMLA form stated in box 1: "The patient is the employee with a Serious Health Condition (SHC) commenced on 5/29/14"; The provider FMLA form was checked in the box 2: "Patient is unable to work: Begin Date: 5/29/14 Through Date 7/6/14."  The form was also checked in box 2: "Patient has restrictions: Begin Date: 7/7/14 Through 9/28/14.  Modified Work:  Restricted from working in customary worksite (901 P Street) due to the risk of environmental/interpersonal triggers flaring up/exacerbating symptoms. In addition, she is restricted from all but incidental auditory/visual contact with her management team M. Eusuff, T. Billington and P. Landis.  Communication is limited to written form only (eg email, memo).  No meetings, telephone calls, conversations." The provider form was checked in box 7: "Treatment Plan: Is it necessary for the employee for the employee to be absent from work? Approximate number of additional treatments: 7."  An identical form was submitted to Department by plaintiff several months later extending the restriction and leave to 11/2/14.

    28. Plaintiff also submitted three Industrial Work Status Reports (IWSR) from Dr. Hellman between 7/1/14 and 11/2/14 with the same restrictions as the FMLA form.  In addition, the IWSRs indicated that "If modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required."  At or around this time plaintiff also submitted Medical Authorization forms to State Compensation Insurance Fund (SCIF), DWR's workers compensation insurance carrier, in order that SCIF could interact with Kaiser Medical Records department and plaintiff's medical providers. (Exhibits 18 to 23 -  FMLA forms and IWSR from Hellman).

During the period between 7/1/14 and 11/2/14, DWR failed to engage in the interactive process with plaintiff or to provide plaintiff any meaningful feedback to her inquiries as to why the Department would not provide her with a reasonable accommodation.

29. Dr. Hellman informed the employer in the IWSR effective 7/1/14 that the employee "will be considered temporarily and totally disabled" if the recommended restrictions are not provided. DWR had no contraindicated medical evidence that the employee was not disabled and did not request the employee to present any other medical opinions at any time. As set forth in Americans With Disabilities Act (1990) As Amended 29 C.F.R Section 1630.2 (i)(1) the plaintiff is entitled to the protections afforded under ADAAA through the employer/employee communication afforded by the interactive process. DWR intentionally avoided providing plaintiff with a good faith interactive process to thwart plaintiff's ability to obtain reasonable accommodation in hopes of exhausting her leave balances and forcing plaintiff to abandon her reasonable accommodation request and return to work without accommodation. (Exhibit 24 - email from Tracie Billington acknowledging that "since plaintiff's SDI benefit has ended we should expect Elise (plaintiff) to return to work tomorrow.")

30. Under 29 C.F.R. § 1630.2(o)(3) and (4), the interactive process obligation is triggered by knowledge that an employee has an actual disability. In this case, it was stated by plaintiff's doctor on the FMLA form and the IWRS submitted to DWR by plaintiff. In addition to making DWR aware of her need for reasonable accommodation, plaintiff continued to request reasonable accommodation, and assert her desire to return to work, and ability to work in her current position or other equivalent position, over 30 times during the period between 7/1/14 and 9/30/16. For the duration of this period, DWR continued to accept plaintiff's, WSR's and approve her leave. At no time during this period did DWR offer any sort of reasonable

FIRST AMENDED COMPLAINT 2:17-CV-01257-MCE-EFB PS          - 9

accommodation to the plaintiff.  Given the fact that (1) plaintiff is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate her disability DWR failed to provide reasonable accommodation to plaintiff under 42 USC Section 12111(9).  See *Cloe v. City of Indianapolis*, 712 F.3d 1171 , 1176 (7th Cir. 2013)

       31.  For more than two years between 5/29/14 and 9/30/16 DWR gave plaintiff vague and varying reasons for not being able to accommodate the doctors recommended restrictions or plaintiff's ad nauseum requests to be allowed to work in a different location in her current position and department or for a medical transfer to another position or department with DWR or the Natural Resources Agency. DWR intentionally and willfully misinterpreted the plaintiff's requests as a "change in supervision" and maintained their assertion that under the ADAAA DWR was not required to accommodate plaintiff.  (Exhibits 25 to 26 - two emails from Employee Health Services describing the Department's position with regard to their strategy for denying plaintiff's return to work.)

       32. DWR ignored unified recommendations from over 10 medical providers that plaintiff be "returned to work in a worksite other than her customary worksite at 901 P Street, Sacramento, CA." Plaintiff expressed repeatedly to DWR that she would like to come back to work but her medical condition prevents her from working at the customary worksite and temporarily restricts her to written only communication with several employees in the department. DWR refused to approve any more leave for plaintiff on September 9, 2016, invoked AWOL proceedings against plaintiff, and terminated plaintiff on September 30, 2016. (Exhibits 27  - AWOL Letters from Division Chief, Arthur Hinojosa and plaintiff's email response to the letters.)

FIRST AMENDED COMPLAINT 2:17-CV-01257-MCE-EFB PS      - 10

33. Tom Beiler, Chief of Employee Health Services and Labor Relations notified State Compensation Insurance Fund (SCIF), the Department's workers compensation insurance carrier, that DWR wanted the plaintiff's workers compensation claim investigated and requested that SCIF "delay" plaintiff's claim. Eventually, DWR, Benefits department listed plaintiff's work status as State Controllers Office code S57, "serious health condition pending investigation of injury" and taking plaintiff out of "payroll" status.  These actions do not relieve DWR of its responsibility to analyze, evaluate and act on plaintiff's reasonable accommodation request under the laws of the Americans with Disabilities Act (ADA), the Family Medical Leave Act (FMLA), and worker's compensation (WC).  See 29 CFR 825.702(d)(2) (1997).  ( See Exhibit 17 - email from plaintiff to Donna Mills, Chief, DWR Benefits Department asking leave status.)

34. A good faith effort would require DWR to apply the law that provides the most benefits to the employee.

35. By acting in the manner stated, in section V. Facts, contained herein, DWR has violated their own company policies with regard to reasonable accommodation, which may offer more protections and/or greater benefits to eligible employees which plaintiff was denied. (Exhibits 28 - DWR Reasonable Accommodation Policy which Department provided to EEOC – Links included as reference may not or do not work.)

VII.    GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

36. Plaintiff (King) brings this disability discrimination claim against the California Department of Water Resources (DWR). King was previously employed by DWR beginning March 2, 2010 through June 6, 2011 in the Fiscal Services Division, Safe Drinking Water Office (SDWO).  Beginning June 9, 2011 through September 30, 2016 King transferred to the Division of Safety of Dams, Integrated Regional Water Management (IRWM), Financial

Assistance Branch (IRWM/FAB).  Plaintiff was an exemplary employee and never received

negative performance evaluations.  Plaintiff had a 9/8/80 alternative work schedule. (See

Exhibits 2 to 7 - a copy of plaintiff's performance reviews).

37. This complaint alleges that shortly after transferring to IRWM/FAB, plaintiff

made several complaints regarding poor working conditions, including dust, lack of regular

cleaning and vacuuming of facilities, substandard restroom facilities, stuffiness due to poor air

quality, problems with pests in her building, and inadequate building security.  Plaintiff believed

that she was privileged to land a State job as grant analyst in IRWM/FAB, which involved set-

up, monitoring and fiscal controls of slightly over $1 billion of general obligation bond funded

projects.  However, plaintiff immediately recognized the IRWM/FAB unit's loose adherence to

department policies, procedures, state and federal laws and regulations as compared with her

previous unit (SDWO).  She discussed all of these issues with coworkers, including

management.  Plaintiff insisted that, in regard to the work load she was responsible for, it was

her intention to follow the required laws and policies.  As a result of her assertions King's

assignments were transferred to other analyst staff and she was given less favorable assignments

by her supervisors.  Plaintiff was subjected to verbal hostility and threatening behavior from her

supervisors and coworkers.  (Exhibits  29 - Sacramento Bee articles , emails re: rats.)

38. The conflicts and issues at work eventually led to plaintiff being diagnosed

with work-related depression and anxiety in May 2014 and resulted in her medical providers

taking her off work under the Family Medical Leave Act (FMLA) beginning May 29, 2014

through November 2, 2014 (See Exhibits 18 to 23 -  FMLA forms and IWSR from Hellman, ibid

Item 28).  Because King was provided with the appropriate FMLA forms and returned them to

DWR. who accepted the forms and provided leave for King under FMLA, DWR was obligated

to treat King's leave as FMLA which they did. C.F.R. 825.702(c)(4) (1997). (See Exhibit 17 - email from Donna. 29 Lane Mills)

39. On June 2, 2014 Danielle Gist, the Chief of Employee Health Services notified her employees April Duenas-Davis (Duenas-Davis), Return To Work Coordinator, Desire Campos, Personnel Specialist, and LeAnn Bromley (Bromley), Personnel Specialist that Debbie Myrum (Myrum), the Administrative Officer for IRWM/FAB had received a medical note from an employee "that they are off work for two weeks." (Exhibit 16 – email from Danielle Gist)) During her treatment at the Kaiser Intensive Outpatient Program, King attended an intake session in the Occupational Health Department (OHD) in order to be evaluated for an industrial work industry.

40. On July 1, 2014 OHDs psychologist, Dr. Irving Hellman, accepted plaintiff's case for treatment and provided King with an Industrial Work Status Report intended to notified her employer of her leave status, restrictions and modified activity. On July 3, 2014 plaintiff submitted a California Division of Workers' Compensation claim form (DWC1) to her employer. Dr. Hellman cleared plaintiff to return to work, with restrictions, on July 7, 2014 (Exhibits 18 to 23 - FMLA forms and IWSR from Hellman). Plaintiff immediately began providing DWRs Employee Health Services Office with an Industrial Work Status Report (IWSR) from Dr. Hellman, which served as notice of plaintiff's need for reasonable accommodation. King also acknowledged to DWR her desire to return to work and requesting that IRWM/FAB and DWR provide her with a reasonable accommodation so that she could return to work.

41. In response to the work status report, plaintiff's supervisor informed her that she would need to "remain off through the end of July because management could not accommodate

those restrictions." Plaintiff continued to provide DWR with work status reports without interruption and DWR continued to approve plaintiff's leave from work – without suggesting alternatives to plaintiff's request for accommodation – until September 30, 2016 at which time plaintiff's employment was terminated.

42. On July 7, 2016 Tom Beiler, Chief of DWR Labor Relations & Employee Health Services sent an email to his staff stating that "we would request that the plaintiff's workers compensation claim be delayed and investigated by SCIF." In his email he did not direct his staff to provide King with any sort of reasonable accommodation or to begin the interactive process with King.

43. Because plaintiff has rights under both FMLA and ADAAA the DWR is required to notify plaintiff that she is possibly eligible for reasonable accommodation and make a good faith offer to begin the interactive process. 42 U.S.C. 12111 (9) (B) (1994); see Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 172, 7 AD Cas. (BNA) 1345, 1349 (1st Cir. 1998) (a modified schedule is a form of reasonable accommodation).

44. On July 10, 2014 Leann Bromley, Personnel Specialist drafted a letter (for Maria Lee-Beason, Return To Work Coordinator) and sent to King regarding FMLA Request Notice. The notice does not address any leave options or other mention of plaintiff's right to participate in the interactive process or to request reasonable accommodation. (Exhibits 30)

45. On July 15, 2014 and July 31, 2014 plaintiff sent emails to Lee-Beason referring to conversations the pair had regarding Workers Compensation, as well as the phone call-in protocol King was supposed to follow in regarding to reporting any future absences and leave requests. King asked Lee-Beason if she had any information of a voice mail that her supervisor, Muzaffar Eusuff sent that stated "they could not honor the doctor's accommodation." Lee-

Beason wrote that she did not know the reason and "that is still being determined" even though the Department's own reasonable accommodation policy states that "the Chief of Employee of Health Services and Labor Relations is the only one that can deny a reasonable accommodation request from a DWR employee." (Exhibits 31 - Lee-Beason's emails; see Exhibits 28 - DWR Reasonable Accommodation Policy)

46. On August 1, 2014 Eusuff, sent an email to plaintiff that states "I acknowledge receipt of your latest Work Status Report, dated July 24. In response, I am letting you know we are still unable to accommodate your modified activity." (Exhibits 32)

47. On August 1, 2014 plaintiff sent an email to her supervisor, Eusuff, asking "Can you tell me what specifically are the reasons that you can not accommodate this request and what sort of modified activity you can accommodate?" (See Exhibits 32)

48. Later in the day of August 1, 2014, Debbie Myrum, IRWM Administrative Officer sent an email to Lee-Beason asking "How are we supposed to respond to this?" referring to King's inquiry to Eusuff earlier in the day (See Exhibits 32) requesting a reason for the IRWM/FABs denial of her reasonable accommodation.

49. Again on August 1, 2014 Maria Lee-Beason of EHS responded to Myrum's email and to the IRWM/FAB staff directing them to tell plaintiff that they are unable to accommodate her [King] because "Communication with management is an essential function." In fact, all of the duties on plaintiff's job description are categorized by DWR as "essential." (See Exhibits 32)

50. On August 8, 2014 instead of sending the response to plaintiff as directed by Lee-Beason of Employee Health Services on August 1, 2014, Eusuff sent an email to King stating

"We are still unable to accommodate the "modified activity" as recommended in the Work Status Report dated July 24, 2014, effectively denying plaintiff's accommodation, again in violation of the Department's Reasonable Accommodation Policy. (Exhibit 33)

51. On August 22, 2014 King contacted SEIU1000 Union Representative, Judith Temesvari to request assistance with getting DWR to engage in the interactive process.

52. On August 27, 2014 at 3:59 pm, Temesvari, emailed Lee-Beason in Employee Health Services to request that "the department engage in the interactive process of Reasonable Accommodation as required by ADA guidelines."  On that same date at 4:47 pm Lee-Beason sent an email to her supervisor, Jacqueline Nelson stating that "I spoke to employee....prior to receiving the email below."  Additionally,  Lee-Beason entered a handwritten in to the file documenting the conversation she had with plaintiff by phone that day. (Exhibits 34 - email and handwritten from Lee-Beason)

53. On August 28, 2014 Lee-Beason drafted the Options Letter to King.  Lee-Beason stated that she is enclosing an Authorization for Release of Medical information form, which however, was not included in the envelope that plaintiff received. (Exhibits 35 - email and Options Letter)

54. On August 29, 2014 plaintiff's supervisor, Eusuff emailed plaintiff to inform her that "the requested accommodations cannot be provided because reporting to the chain of command is an essential function of the job."  Because the supervisor used the words "requested accommodation" it is made clear that he and (IRWM/FAB) are denying plaintiff's reasonable accommodation request as outlined in the Work Status Report.  Once again IRWM/FAB denied plaintiff's reasonable accommodation request in violation of the Department Reasonable Accommodation Policy.  (Exhibit 36 - email from Eusuff).

55. DWR accepts funding from the federal government and as such is required to comply with provisions of the Rehabilitation Act of 1973 29 U.S.C. § 791(g) with regard to reasonable accommodation. See Consolidated Rail Corp. v. Darrone, 465 U.S. 624 (1984). President Clinton issued Executive Order 13164, 65 Fed. Reg. 46565, 2000 WL 1114943 (2000) which requires each federal agency to establish effective written procedures for processing requests for reasonable accommodation and to help to implement the requirement of the Rehabilitation Act of 1973 that agencies provide reasonable accommodation to qualified employees and applicants with disabilities. The IRWM Division in and of itself and as part of DWR receive federal funding and are subject to the statutes of: The Rehabilitation Act of 1973 §794. Nondiscrimination under Federal grants and programs (a) Promulgation of rules and regulations. No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service; and Section 794 (b)1B ''Program or activity'' defined For the purposes of this section, the term ''program or activity'' means all of the operations of (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government.

56. On September 2, 2104 Elise King filed a timely Application For Adjudication of Claim in order to bring a formal proceeding against DWR with the Workers' Compensation Appeals Board. Sometime in September 2014 plaintiff hired a workers' compensation attorney named Janet Conover. Between September 2014 and October 2014 King continued to initiate

FIRST AMENDED COMPLAINT 2:17-CV-01257-MCE-EFB PS                    - 17

communication with Duenas-Davis, Eusuff, to keep them informed of her work status and submitted Work Status Reports to Duenas-Davis and IRWM/FAB which she understood to be requests for reasonable accommodation.  Neither Duenas-Davis, DWR Employee Health Services or IRWM/FAB initiated contact with plaintiff and DWR to tell King their reason for denying the request was "because communication with chain of command is an essential function of the job."  Plaintiff's WSR included communication with current IRWM/FAB co-workers and staff as part of her restrictions, however there were other restrictions which DWR never acknowledged or addressed.

57. On October 8, 2014 Debbie Myrum emailed Eusuff and Billington to update the them on plaintiff's leave status after having a conversation with Tawyna Alibani, from Employee Health Services. "Myrum stated in the email "She [Alibani] is also unaware as to whetherthe employee has filed the "Reasonable Accommodation" request concurrently or not.   Plaintiff continued receiving state disability insurance benefits. "If the WC claim is denied then they would go through the reasonable accommodation process… and since this request is not really "reasonable", then other options  would be offered to the employee.  Options such as: medical reassignments…"  It appears from this statement that DWR is continuing to intentionally ignore and delay engaging in a good faith interactive process with plaintiff. (Exhibit 37)

58. King emailed her latest WSR to Duenas-Davis in Employee Health Services on October 29, 2014 saying "Attached is a copy of my updated Work Status Report.  The report extends my leave through 11/23/14."  Duenas-Davis replied to plaintiff stating "Since you do not have an accepted worker's comp claim, I will keep this for my records."  DWR approved and acknowledged plaintiff's leave which extended plaintiff's off-work status as temporarily disabled with a qualifying disability recognized under the under the ADAAA.  King and Duenas-

Davis exchanged emails several more times on October 29, 2014.  The subject of the email was "Reasonable Accommodation vs. Worker's Compensation Process. (See Exhibits 25) King requested Duenas-Davis confirm her understanding of the topics they discussed by phone and in prior emails in order.  Some of Duenas-Davis' responses are summarized here: 1)  Plaintiff: "Until the 4171 is filled out it is implied that the employee is agreeing with the doctor's evaluation and recommendation and that no other reasonable accommodation request is being considered." Duenas-Davis: "…you have not disputed the restrictions which your doctor has indicated, and you have not returned to work, then that is correct: it is implied you agree with your physician." In Question 2 plaintiff states: "…it is necessary for the employee to fill out the 4171 to officially initiate the Reasonable Accommodation process. Duenas-Davis responds "if you are requesting a reasonable accommodation, you must participate in the interactive process, and I must contact the physician.  I cannot contact the physician without the signed release." DWR repeatedly refused plaintiff's request for DWR to initiate phone communication with any of plaintiff's medical providers who were all willing to speak with DWR by phone to clarify any questions regarding plaintiff's reasonable accommodation.

59. Once King's Workers' Compensation was denied her case was transferred back to the Kaiser psychiatry department as was Kaiser's protocol when the Workers' Compensation claim was "delayed" or denied.  King was now under the care of Dr. Richard Sizer, Psy. D and his team of licensed clinical therapists and treatment providers.  The two departments aimed to provide continuity of care as seamlessly as possible to insure that the patients did not "fall through the cracks."  Dr. Sizer or the therapists that King visited on a weekly basis continued to provide WSRs, with identical recommendations to those advised by Dr. Irving Hellman, in

Occupational Health department.  King continued to provide the WSRs, uninterrupted, to her supervisor, Eusuff as instructed by IRWM/FAB staff.

60. On October 31, 2014 King sent a copy of the latest WSR to her supervisor, Eusuff.

61. On November 3, 2014, Eusuff responded to King via email "Our Division Management has decided that the requested accommodations cannot be provided because reporting to the chain of command is an essential function of the job."

62. On December 24, 2014, Temesvari, SEIU1000 union representative emailed King to ask "Did you receive a formal decision letter from DWR about the Reasonable Accommodation? RAR denials can be appealed to SPB at the second level. The first level has to go to HR within DWR."  In response King emails Temesvari to inform her, "No. I did not get a letter from them." (See Exhibit 38).

63. On December 30, 2014 King emailed Duenas-Davis to request the Kaiser specific Medical Authorization Form 4171.  Plaintiff asked Duenas-Davis to clarify the scope of the medical information that the Authorization would include asking "…returning the Form mean I am giving a blanket authoriza tion for DWR to have access to all of my medical records?" "If so, who is the DWR staff person that reviews the information and makes the RAR determination? Can you please provide me with statutes and locations where I can access the written policies that DWR uses to determine reasonable accommodation so that I can better understand the process and respond appropriately?"

64. Duenas-Davis emailed her response to King later that day stating "As the employee, you request the accommodation that you believe will help you to perform the essential functions of your current position or another (vacant) position which you may qualify for the within the Department.  You may discuss with your physician, but you would let me know what you are

requesting for accommodation." "... Both forms are specific to reasonable accommodation as we do not accept nor review medical records." However, due to the worker's compensation case DWR already had a copy of Dr. Hellman's - First Medical Report which they received from SCIF. They also requested and received a copy of both medical reports from the workers compensation, Qualified Medical Examiner, Dr. Daniel King.   (See Exhibit  24  - Email from T Beiler requesting medical report)

65. Between December 2014 and March 30, 2015 King would continue to submit her WSRs and Employee Health Services would continue to receive confirmation from IRWM/FAB and Employee Health Services staff stating the reason for the denial of reasonable accommodation  recommendations on the WSR.

66. In March 11, 2015 King submitted the Medical Authorization forms for the second time to Employee Health Services as well as the first of four DWR 4007 – Reasonable Accommodation Request Forms, which Duenas-Davis stated in her email of 10/29/14 that the Department considered to be a "formal" reasonable accommodation request.  Duenas-Davis faxed letters to two of Plaintiff's medical providers Rosemary Cook, LCSW and Dr. Anita Larrow, ND which contained questions that Duenas-Davis developed which Employee Health Services would use to map out possible accommodations to offer King.

67. On April 1, 2015 once again King emailed Duenas-Davis to insist that Employee Health Services schedule an informal in-person meeting.  A meeting was scheduled for April 8, 2015 which was attended by King, Temesvari and Alex, a legal intern,  from SEIU1000, Duenas-Davis, Jacqueline Nelson, and Tom Beiler from Employees Health Services.  Tom Beiler, Chief of Employee Health Services and Labor Relations brought several documents with him that he had prepared for the meeting which he felt were central to King's reasonable accommodation

request. Beiler presented a synopsis of King's reasonable accommodation which made light of

Rosemary Cook and Dr. Larrow's recommendation that King "not be returned to her current

unit, ..." and a two-page table that broke out King's request from DWR Form 4007. Beiler

noted on page one of the chart, in the Reason column, that "EE revised this request below." He

listed King's revised request as "The position that I am transferred to can not include an option

to work in the IRWM/FAB." Plaintiff explained to Beiler that her reasonable accommodation

request was for a medical transfer due to the issues caused by the loose and free methods of the

IRWM/FAB in regards to policies and procedures, lack of written processes and procedures and

the unique matrix-management style, that lead to frequent break downs in communications

among staff and redundancy in work assignments. King stated that if the medical transfer was

not possible that Beiler might consider some of the accommodations outlined in the EEOC

guidance to employers geared toward employees with impairments such as depression and

anxiety. Plaintiff provided a copy of the guidance for employees with mental disabilities from

the Job Accommodation Network (JAN) to Beiler and Nelson at the meeting. (Exhibits 38 –

Beiler's meeting preparation notes.)

68. On April 17, 2015. once again, Beiler and his staff denied King's request for

reasonable accommodation. This time Beiler informed King that "a change in supervision is not

considered to be a reasonable accommodation."

69. On June 11, 2015, King sent an email King sent an email to Tesmesvari to follow up

on a conversation they had regarding a change of supervisor, a Staff Services Manager 1 (SSM1)

over plaintiff's position which plaintiff discovered through an advertised vacancy on the DWR

job website. This position was posted in March 2015, however, no one from DWR had informed

King of this proposed change (considered a "mini-reorg" by Myrum) and no one at DWR had

mentioned that they had considered the impact of how this change might present an opportunity to adjust King's job description to make any necessary reasonable accommodation possible. As stated in this email, according to Debbie Myrum, IRWM, Administrative Officer stated "Yes, FAB will soon hire a new Staff Services Manager 1. This SSM1 will be responsible for the 4 AGPAs in FAB [IRWM/FAB] and RPB [IRWM/Regional Offices]." There are four regional offices each with at least one analyst. King email her union representative to notify her of the update for the new SSM1. (Exhibits 39 - a copy of the emails along with the Form 525 – Job Description and Position Classification for the new Staff Services Manager 1 filled by Susan Bradley)

70. As a result of hiring this individual IRWM/FAB restructured its analysts into a new section called the "Analyst Section." IRWM/FAB did not mention this to plaintiff although they did make some revisions to King's Form 525. The revisions did not address any of the reasonable accommodations that plaintiff was requesting. Additionally, all of plaintiff's duties were listed as "essential functions" which made it obvious that no matter what reasonable accommodation request King made IRWM/FAB could cite that those functions were "essential" to the position and therefore deny any reasonable accommodation requests made based on that determination. (Exhibit 40 - plaintiff's new Form 525 – Job Description and Position Classification). It is a violation of the American With Disabilities Act and the Rehabilitation Act of 1973 for an employer to change an employees job description to avoid granting a reasonable accommodation.

71. King submitted the fourth and final revised DWR 4007s on May 28, 2015. It was denied on June 18, 2015 by Employee Health Services stating that "a change in supervision is not considered a reasonable accommodation under the law." None of the requests that King

submitted specifically asked for "a change in supervision." (Exhibits 41 - King's fourth "formal" reasonable accommodation request submitted on the Form 4007 and the "official denial letter from Tom Beiler; as well as a detailed email from Jacqueline Nelson explaining to King the process and methodology that Employee Health Services used to evaluate each request that she submitted.) According to Beiler's own pre-meeting notes on 4/8/15 "EE revised her request" acknowledging that King was asking for a medical transfer. (Exhibits 38 - Beiler's notes from 4/8/15 meeting.) However, Beiler used Ms. Cook's recommendation alone to justify his decision that a "request for change in supervision was the determining factor in his decision to deny King's requests. Furthermore, the email sent to King from Duenas-Davis on 12/30/14 entitled: Form for Return To Work Accommodation, Duenas-Davis tells King that "You may discuss with your physician, but you would let me know what you are requesting for accommodation. I will need to interact with your physician as well to obtain his/her medical opinion." This prior statement by Duenas-Davis is an acknowledgement by Employee Health Services that their responsibility to consider both the doctor's recommendation and the employee's recommendation as required under ADAAA 1630.9(d) which states An individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept. See also Hankins v. The Gap, Inc., 84 F.3d 797, 801, 5 AD Cas. (BNA) 924, 927 (6th Cir. 1996)

72. On July 28, 2015 Jacqueline Nelson, sent an email entitled "Work Status Report - CONFIDENTIAL" to Susan Bradley, plaintiffs supervisor, to update Bradley on the status of plaintiff's case file. Stating "she is in my unit fairly deep with a workers com claim, a prior one, and reasonable requests (x4) that have been denied. She has filed an EEOC complaint alleging discrimination and she has not stopped there.... "we must continue receiving doctors notes until

the worker comp issue has been cleared AND per Legal we as a department are showing that we've gone out of our way to accommodate her which will hold up in court. Hang in there…" (Exhibit 42).

Later that day Debbie Myrum noticed Nelson in Employee Health Services that "Paula Landis retired as the Division Chief or DWR/IRWM on July 1, 2015 and Susan Bradley-Hudson is now Elise's (King's) supervisor. (No longer Zaffar Eusuff)." The only person in the original "chain of command remaining is Tracie Billington.

73. Nelson emails DWR attorney Melinda Williams and Beiler on August 11, 2015 to ask, "Are we still continuing on with what we have been doing (e.g. keeping her off work and letter her know she cannot be accommodated)? Nothing is changing on Elise Kings' end of this." Beiler replies "I say yes." Also Jackie can you remind me again as to when the QME evaluation and the deposition of Ms. King are scheduled? (See Exhibit  26)

74. Later on the afternoon of August 11, 2015 Nelson emails Beiler to inform him "Yes, Tom. The QME re-evaluation was scheduled for July 7th and the Deposition was scheduled for August 18th." Beiler responds that afternoon to Nelson stating "Thanks. If we haven't already done so, please ask the SCIF adjuster to provide us with a copy of the QME report when it's received. Thanks." The Qualified Medical Examiner's report Beiler is referring to is the second QME report from King's workers' compensation the report that Beiler would be referring to. At this point, DWR/Employee Health Services is in possession of the first QME report (approximately 129 pages long) as well as the six-page Occupational Health Report from Dr. Hellman at Kaiser. EHS had obtained only the doctor's report from the workers' compensation case even though DWR/EHS is using the WSR supplied by plaintiff's non-industrial related health providers to approve my leave.

75.  In her email to King dated December 30, 2014 in an effort to have King sign the Medical Authorization giving unrestricted access to DWR to her medical records from Kaiser. Duenas-Davis assures King that she does not have to worry about privacy concerns with her personal medical information, "as we do not accept nor review medical records."  As stated previously since the Department had already obtained plaintiff's medical reports, so the Department's refusal to communicate with plaintiff's medical providers by phone, seemed to plaintiff to clearly be just a pretense to continue to delay the interactive process and to gather additional information that might support DWR's refusal to accommodate plaintiff.  Thereby exhausting plaintiff's leave balances and state disability payments in effort to thwart providing plaintiff's requests for reasonable accommodation. Pursuant to ADAAA Section 12112(d)(4)(A), a covered entity shall not make inquiries as to the nature or severity of the disability, unless such inquiry is shown to be job-related and consistent with business necessity.  Here it was not a business necessity to obtain Ms. King's medical records, and the request was prohibited by the ADAAA.

76.  On August 24, 2015 King emails her new supervisor Susan Bradley-Hudson (Hudson) and attaches a copy of her WSR.  Hudson responds to King stating that "In response to your latest Work Status Report, we are unable to accommodate the restrictions on your doctor's note dated August 24, 2015; therefore you will remain off work through September 11, 2015. Several more emails are exchanged between King and Hudson over the next two days with King asking Hudson "What specifically is the reason that your department can not accommodate my restrictions?"

77.  On August 25, 2015 states to King "Based on the Work Status Report dated August 24, 2015, the doctor's restrictions have not changed from your prior note.  Your doctor is

restricting you from working at 901 P Street, Sacramento, where your job is located, and you are

restricted from all but incidental auditory/visual contact with management.  Your job requires

constant contact and communication with your management team.  You are also required to

attend meetings on a regular basis.  I am unable to accommodate this request, but should your

situation change, please let me know."

78. The WSR did not restrict King from contact with management.  All analyst meetings

and staff meetings that King was required to attend were also attended by regional office staff

members by conference call so that King could attend those same meetings by conference call if

moved to another location near by IRWM/FAB.  King had been required to meet with her

supervisor, Eusuff, in one-on-one sessions which were often cancelled or rescheduled if there

was no specific need.  Although King and Eusuff's cubicles were several rows and about 25 feet

away from each other they came into physical contact most often incidentally and even then

King and Eusuff might not run into each other for periods spanning two to three weeks.  Plaintiff

had little professional in-person contact with Billington, the IRWM/FAB branch chief,  that was

not incidental to proximity, because Billington delegated any assignments that King would be

involved in to Eusuff, as King's supervisor, to relay to King.   Plaintiff had no in-person contact

with Paula Landis, the division chief, because Landis was based in Fresno, CA and all of King's

interactions with Landis were done through email.  Hudson, did not mention whether she had

reviewed plaintiff's job description and history of contact with these individuals listed on the

WSR, Eusuff, Billington and Landis, before denying King's request for accommodation.

Billington was the only manager that remained as part of the management team referred to on

King's Work Status Report.  Additionally, Bradley did not state how IRWM/FAB viewed these

issues or staff changes and King's WSR did not list, Bradley, plaintiff's new supervisor.

79. On August 26, 2015 Hudson emails King stating "There has been no new formal request submitted for consideration by you to Employee Health Services or to me. If you are submitting a new formal request for reasonable accommodation, you will need to contact Jacqueline Nelson."

80. On September 3, 2015 King receives a Limited Examination and Appointment Program (LEAP) Certificate from California Department of Human Resources (CalHR). The Limited Examination and Appointment Program (LEAP) is designed to help persons with disabilities get jobs in the California state civil service. LEAP is an alternative to the traditional testing process, allowing applicants to demonstrate knowledge, skills and abilities through on-the-job testing (a "Job Examination Period"). King applied for the LEAP certification through the California Department of Rehabilitation in preparation for the likely event that DWR would continue to deny her requests for reasonable accommodation or medical transfer. This was a last resort measure for King because LEAP certification was available for entry level employment in to the analyst series as a Staff Services Analyst. King was already an AGPA and was able to perform the essential functions of positions within the AGPA series with or without accommodation. Taking the exams and accepting a LEAP position would almost certainly mean that King would have to accept a demotion to a lesser classification and a substantial pay reduction. Plaintiff made DWR aware of her eligibility for LEAP positions as stated in the CalHR guidelines. (Exhibit 43– LEAP Certification from Department of Rehabilitation)

81. On February 2. 2016 Plaintiff emailed Bradley and Billington an updated WSR extending her leave until March 7, 2016.

82. On February 3. 2016 Bradley wrote to King stating "It is apparent from the Work Status Report you submitted on February 2, 2016 that you have not informed your medical

provider your management chain has changed.  This is your responsibility."  Bradley continued

with the statement "Pursuant to your request below, I will give you an extension until close of

business on Friday, February 12, 2016 to provide a doctor's note which accurately reflects any

current restrictions preventing your return work, or your absences will no longer be excused and

you will be considered absent without approved leave."

83. On February 16, 2016 Bradley responded to an email from King on February 12,

2016 requesting an extension to turn in the Work Status Report due to King's medical provider

being out the week of February 12, 2016.  Bradley told King "we will grant you an extension…"

"You have until 5 p.m. on Monday, February 22, 2016 to provide a doctor's note which

accurately reflects any current restrictions preventing your return to work including both

environmental and interpersonal restrictions."  On February 19, 2016 King emailed copies of her

updated Work Status Report to Bradley as instructed. DWR approved plaintiff's leave using the

updates to the WSR.  The only changes to the "new WSR" were the removal of the words, "her

management team." (Exhibits 44 to 45 – "old WSR" and "new WSR")

84. On March 26, 2015 Duenas-Davis emailed plaintiff in response to an email from

plaintiff providing more specific details of plaintiff's reasonable accommodation request. "The

reasons for the need for clarification is to find out what modification, if any can be made under

reasonable accommodation. So the specific details are very helpful for us…" (Exhibits 46 –

Duenas-Davis email to King)

85. On March 31, 2016 the QME, Dr. Daniel King issued his final report to SCIF  who

provided a copy to Tom Beiler of DWR/Employee Health Services which provide a summary of

the findings. Included in his findings Dr. King states "I am no longer diagnosing an Adjustment

Disorder as I did in the initial evaluation… I am now convinced plaintiff has met criteria for a

Major Depressive Disorder." Dr. King also provides a summary of the causes of plaintiff's depression as well as his recommendations for returning Ms. King to work which are very similar to the previous report that Dr. Daniel King submitted to SCIF over a year prior when he stated that King should be returned to work with restrictions that include "transfer to a different location."

86. On April 19, 2016 at the request of Jana Ellingson, plaintiff's SEIU100 union appointed attorney, plaintiff composed a response to an email sent by Nelson of DWR/EHS regarding what conditions plaintiff would need to return to work. Plaintiff's response still did not seem to be clear to Nelson as no accommodation offer was made by DWR/EHS. However, EHS continued to approve plaintiff's time off as recommended in plaintiff's Work Status Report.

87. On June 1, 2016 plaintiff submitted another updated Work Status Report from Dr. Sizer her Kaiser medical provider. At the recommendation of plaintiff's SEIU1000 union representative, Temesvari, plaintiff also submitted Form 2993 entitled Transfer or Separation From DWR directly to IRWM/FAB Branch Chief, Billington. This recommendation was based on the Temesvari's observation that may be simplifying the request to align with the universal recommendation of all of the medical providers. On the Form 2993 the plaintiff wrote the following: "Request medical transfer within DWR per doctor recommendation/restrictions to a physical location other than Bonderson Building; in my current position or different position with equivalent classification." (Exhibit 47– Form 2993)

88. On June 3, 2016 plaintiff's supervisor, Bradley, responded to plaintiff's June 1, 2016 request for medical transfer. "In reply to your submittal of form DWR 2993, it appears you are asking for a transfer very similar to your reasonable accommodation request; however this is not

the correct form for this request.  To this the Department is currently interacting with you and your treating physician on your Reasonable Accommodation request."

89. On June 8, 2016 Nelson of DWR/EHS responds to plaintiff to inform plaintiff that "Yes, this information regarding the DWR Form 2993 and how it is used is correct."  DWR previously stated in an email to plaintiff from Duenas-Davis "that the Form 4007 is optional." Nelson' s response confirms that she is aware that plaintiff is making a reasonable accommodation request whether it is on the "correct form" should not have been reason enough for DWR to refuse to consider the updated request.

90.    On September 9, 2016 DWR noticed plaintiff by letter of their intention to invoke AWOL proceeding against plaintiff if she did not return to work within five days.

91.  King emailed Arthur Hinojosa, Division Chief, IRWM notifying him that she would not be able to return to work without reasonable accommodation.

92.  On September 30, 2016 DWR finalized the AWOL process effectively terminating King's employment with IRWM/FAB.  (Exhibits  27 – AWOL Letters and email response from plaintiff)

VIII. FIRST CAUSE ACTION

THE AMERICANS WITH DISABILITIES ACT OF 1990 ADA
AMENDMENTS ACT OF 2008 AMENDED
(42 USC §§12101–12117) ET. SEQ
DISCRIMINATION & FAILURE TO PROVIDE REASONABLE
ACCOMMODATION AND ENGAGE IN THE INTERACTIVE PROCESS

This is an action for unlawful employment practices, under AMERICAN WITH
DISABILITIES ACT 42 U.S. § 12101, ET SEQ

93. Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above.

94. Plaintiff's employment was terminated, in substantial part, due to her mental disability, perception that plaintiff was disabled and plaintiff's record of disability.

95. Plaintiff has been unable, despite reasonable efforts to find comparable employment with the State of California.

96. The AWOL status indicated in the plaintiff's official DWR personnel file continues to be a substantial obstacle to plaintiff's ability to find comparable employment with the State of California and plaintiff demands that this be removed and plaintiff immediately be added to the State's surplus employee database and afforded all benefits and privileges of such status.

97. As a proximate result of defendants Varrelman, Hinojosa, Billington, Beiler, Gist, Nelson, Eusuff, and Duenas-Davis discrimination against plaintiff based on her disability and a record or perception of disability, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, retirement benefits, and other employment benefits.

98. As a further proximate result of defendants actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation.

99. As a further proximate result of defendants actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damage and expense.

100. The effect of these practices has been to deprive Elise King of equal employment opportunities and otherwise adversely affect her status as an employee because of her age and disabilities.

101. The unlawful employment practices complained of under the ADA as Amended and ADEA were willful and intentional.


VIII. SECOND CAUSE OF ACTION

REHABILITATION ACT SECTION 504(a) and 504(d), 29 U.S.C. § 791 and 794

This is also an action against California Department of Water Resources for its unlawful employment practices on the basis of disability, in violation of Plaintiff's federally protected rights.

Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above

102. The DWR, in violation of Section 504(a) of the Rehabilitation Act of 1973, did unlawfully exclude Plaintiff from the participation in deny her the benefits of, and subject her to discrimination in her employment.  DWR receives Federal financial assistance and is required to comply with Section 504.

103. Since at least May 28, 2014 defendants Varrelman, Hinojosa, Billington, Beiler, Gist, Nelson, Eusuff, and Duenas-Davis have engaged in unlawful employment practices at DWR's facility in Sacramento, California in violation of the ADA, 42 U.S.C. §12112(a) and (b), and the Age Discrimination in Employment Act, 29 U.S.C. §623 et seq.

104. The practices include the failure to make a reasonable accommodation, discharging Elise King from employment, denying employment opportunities with DWR

because of disability and the need to provide a reasonable accommodation, and limiting Elise King in a way that adversely affected Elise King's employment opportunity and other forms of unlawful discrimination as defined in the ADA and ADEA.

105. Plaintiff's employment was terminated, in substantial part, due to her mental disability, defendants perception that plaintiff was disabled and plaintiff's record of disability.

106. Plaintiff has been unable, despite reasonable efforts to find comparable employment with the State of California.

107. As a proximate result of defendant's discrimination against plaintiff on the basis of her disability and a record or perception of disability, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, retirement benefits, and other employment benefits.

108. As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation.

109. As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damage and expense.

110. The effect of these practices has been to deprive Elise King of equal employment opportunities and otherwise adversely affect her status as an employee because of her age and disabilities.

IX. THIRD CAUSE OF ACTION

VIOLATION OF SECTION 501 OF THE REHABILITATION ACT OF 1973
29 USC 791 AND §§ 102 THROUGH 104 OF THE AMERICANS WITH DISABILITIES ACT
OF 1990 AMENDED (42 U.S.C. 12112–12114).

Plaintiff hereby repeats and realleges each allegation contained in the paragraphs above.

111. Defendant DWR has discriminated against Plaintiff by denying her reasonable accommodation for her disabilities, including occupational stress, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., as amended

112. The State of California, Department of Water Resources which is a recipient of federal financial assistance, discriminated against a "qualified individual with a disability" within the meaning of the Rehabilitation Act.

113. Defendant has conducted itself intentionally, deliberately, willfully, and in callous disregard of the rights of Plaintiff.

114. By reason of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies available under the Rehabilitation Act.

115. If applicable, attorney's fees should be awarded under 29 U.S.C. § 794(a)(1).

## X. PRAYER

116. WHEREFORE, plaintiff respectfully prays that this Court enter judgment granting plaintiff:

a. A declaratory judgment stating that the acts and practices of defendant violate the Rehabilitation Act of 1973 Sections 501, 504(a) and 504(d), 29 U.S.C. § 791 and 794; and The Americans With Disabilities Act 42 U.S. § 12101-12117, ET SEQ;

FIRST AMENDED COMPLAINT 2:17-CV-01257-MCE-EFB PS          - 35

b. Immediately remove all derogatory materials including letters from all files maintained by defendant including removing and shredding of any and all medical records;

c. Recession of defendant's AWOL discharge and removal of all letters and materials related to such action from all files maintained by defendant;

d. Plaintiff immediately be reinstated in the position of Associate Governmental Program Analyst;

e. DWR immediately add Plaintiff to the State of California Surplus Employee database and be afforded all rights and privileges of such appointment;

f. Written notification by defendant to CALHR, and any and all other state agencies of the reversal of the AWOL decision, plaintiff's reinstatement as AGPA on the Surplus Employee database along with a request to update plaintiff's status in their records;

g. Back and front pay in an amount deemed appropriate by the Court, plus all lost fringe and employment benefits including health, dental, and vision insurance and retirement service credits;

h. Medical expenses;

i. Reasonable attorney's fees for cost of suit herein incurred; and for such other and further relief as the Court deems proper.

FIRST AMENDED COMPLAINT 2:17-CV-01257-MCE-EFB PS            - 36

## XI. DEMAND FOR DECLARATORY JUDGMENT

117. Plaintiff hereby requests Declaratory judgment granting injunctive and equitable relief as deemed proper by the Court.

118. Plaintiff hereby respectfully prays that this Court consider appointment of counsel as set forth in §28 USC 1915 E (1) and reserve plaintiff's ability for Demand For Jury Trial if DECLARATORY JUDGMENT REQUESTED BASED ON THE MERITS OF EVIDENCE PRESENTED IN THIS COMPLAINT is not granted.


Dated this 13th of November, 2018


_____
Elise King Pro Se


Dated this day of Month, year.


_____
Elise King



# Budgets and Spending

California's Natural Resources and Environmental Protection Agencies oversee the activities of about 40 state departments, boards, and conservancies whose missions are to protect and restore the state's natural and environmental resources and to ensure public health and environmental quality. The 2017-18 budget provides about $10 billion for these activities from a combination of the General Fund, special funds, bond funds, and federal funds.

## Natural Resources Budget Summary

*(Dollars in Millions)*

| Expenditures | 2016-17 Actual | 2017-18 Estimated | 2018-19 Proposed° | Change From 2017-18 Amount | Percent |
|---|---|---|---|---|---|
| **Total** | **$5,039** | **$8,870** | **$6,266** | **-$2,603** | **-29%** |
| **By Department** | | | | | |
| Department of Forestry and Fire Protection | $1,305 | $2,181 | $1,755 | -$425 | -20% |
| Department of Parks and Recreation | 480 | 868 | 1,093 | 224 | 26 |
| General obligation bond debt service | 1,025 | 984 | 993 | 9 | 1 |
| Energy Commission | 396 | 684 | 604 | -79 | -12 |
| Department of Fish and Wildlife | 431 | 438 | 529 | 92 | 21 |
| Department of Water Resources | 548 | 2,007 | 475 | -1,532 | -76 |
| Wildlife Conservation Board | 94 | 496 | 132 | -364 | -73 |
| Department of Conservation | 124 | 142 | 126 | -16 | -11 |
| California Conservation Corps | 94 | 123 | 125 | 2 | 2 |
| Natural Resources Agency | 312 | 333 | 123 | -209 | -63 |
| State Lands Commission | 32 | 45 | 98 | 53 | 117 |
| Other resources programs° | 199 | 570 | 212 | -358 | -63 |
| **By Funding Source** | | | | | |
| General Fund | $2,726 | $3,586 | $3,034 | -$552 | -15% |
| Special funds | 1,271 | 2,120 | 1,769 | -351 | -17 |
| Bond funds | 885 | 2,794 | 1,171 | -1,623 | -58 |
| Federal funds | 157 | 370 | 292 | -77 | -21 |
| **By Purpose** | | | | | |
| State operations | $4,174 | $5,689 | $4,774 | -$915 | -16% |
| Local assistance | 556 | 2,135 | 1,243 | -892 | -42 |
| Capital outlay | 309 | 1,046 | 250 | -796 | -76 |

②

STATE OF CALIFORNIA – PERSONNEL ADMINISTRATION

**REPORT OF PERFORMANCE**
**OR PROBATIONARY EMPLOYEE**

STD. 636 (REV 8/2002)

*RATER — Before marking this report, read instructions on the back.*

| | |
|---|---|
| FIRST | ☐ |
| SECOND | ☑ |
| THIRD | ☐ |

| NAME (Last) | First | Initial | SOCIAL SECURITY NUMBER | REPORT DATE |
|---|---|---|---|---|
| King | Elise | | | 1/21/11 |

| CIVIL SERVICE TITLE | POSITION NUMBER | DATE PROBATION ENDS |
|---|---|---|
| Staff Services Analyst | 50000240 | 5/23/11 |

| DEPARTMENT NAME | DIVISION / UNIT | EMPLOYEE'S HEADQUARTERS |
|---|---|---|
| DWR | Fiscal/SDWO | Sacramento |

*YOUR WORK PERFORMANCE WILL DETERMINE WHETHER YOU OBTAIN PERMANENT CIVIL SERVICE STATUS*

RATINGS ARE INDICATED BY "X" MARKS

| QUALIFICATION FACTORS | UNACCEPTABLE | IMPROVEMENT NEEDED | STANDARD | OUTSTANDING |
|---|---|---|---|---|
| 1. SKILL—Expertise in doing specific tasks; accuracy; precision, completeness, neatness, quantity. | | | | ✓ |
| 2. KNOWLEDGE—Extent of knowledge of methods, materials, tools, equipment, technical expressions and other fundamental subject matter. | | ✓ | | |
| 3. WORK HABITS—Organization of work; care of equipment; punctuality and dependability; industry; follows good practices of vehicle and personal safety. | | | | ✓ |
| 4. RELATIONSHIPS WITH PEOPLE—Ability to get along with others; effectiveness in dealing with the public, other employees, patients or inmates. | | | ✓ | |
| 5. LEARNING ABILITY—Speed and thoroughness in learning procedures, laws, rules and other details; alertness; perseverance. | | | | ✓ |
| 6. ATTITUDE—Enthusiasm for the work; willingness to conform to job requirements and to accept suggestions for work improvement; adaptability. | | | | ✓ |
| 7. COMMUNICATION—Exhibits aptitude toward good writing and verbal skills, can give concise information in working situations. | | | | ✓ |
| 8. ABILITY AS SUPERVISOR—Proficiency in training employees and planning, organizing, assigning and expediting work; leadership; understanding of and effectiveness in implementing departmental and SPB personnel management policies including equal employment opportunity and affirmative action. | | | | |
| 9. ADMINISTRATIVE ABILITY—Promptness of action; soundness of decision, application of good management practices; understanding and effective implementation of departmental and SPB personnel management policies related to equal employment opportunity and affirmative action. | | | | |
| 10. FACTORS NOT LISTED ABOVE (Use additional sheets if more space is needed.) | | | | |
| OVERALL RATING—The overall rating must be consistent with the factor ratings and comments, but there is no prescribed formula for computing the overall rating. | | | | ✓ |

COMMENTS TO EMPLOYEE—(Supervisor should include factual examples of exceptional or poor work and give suggestions as to how performance can be improved. Factor and overall ratings of unacceptable and overall ratings of outstanding must be substantiated. Use additional sheets if more space is needed).

You are an excellent researcher. You have exerted effort beyond my expectation in researching Safe Drinking Bond Law history and financial records. We now have a better understanding of the program. Another example is the information you have gathered on the now defunct Midland Water Company Trust providing a vehicle for us to collect outstanding debt which has not been successful in the past. I want to recognize your effort and know you will continue to excel.

| | |
|---|---|
| Rater discussed report with employee | ☒ YES   ☐ NO |

I RECOMMEND YOU BE GRANTED PERMANENT CIVIL SERVICE STATUS
(To be checked only on Final Report. If the probationer is rejected, notification must be given as prescribed by Government Code Section 19173.)      ☐ YES      ☐ NO

| RATER'S SIGNATURE | TITLE | DATE SIGNED |
|---|---|---|
| [signature] | Chief | 1/21/11 |

*In signing this report I do not necessarily agree with the conclusions of the rater.*

| EMPLOYEE'S SIGNATURE | DATE SIGNED | |
|---|---|---|
| Elise King | 1/21/11 | ☐ I would like to discuss this report with the reviewing officer. |

*I concur in the ratings given by the rater. I have made no change in this report.*

| REVIEWING OFFICER'S SIGNATURE | DATE SIGNED | AS REQUESTED, REVIEWING OFFICER DISCUSSED REPORT WITH EMPLOYEE ON DATE |
|---|---|---|
| Kula Netto-Brown | 1/24/11 | |

**DISTRIBUTION  Copies:**  1—Departmental Files   2—Employee   3—Supervisor   4—Miscellaneous

**RATER — Before marking this report, read instructions on the reverse side.**

☐ FIRST
☐ SECOND
☑ THIRD

| | First | Initial | SOCIAL SECURITY NUMBER | REPORT DATE |
|---|---|---|---|---|
| | Elise | | | 1/21/11 |

| SERVICE TITLE | POSITION NUMBER | DATE PROBATION ENDS |
|---|---|---|
| Staff Services Analyst | 50000240 | 5/23/11 |

| DEPARTMENT NAME | DIVISION / UNIT | EMPLOYEE'S HEADQUARTERS |
|---|---|---|
| DWR | Fiscal/SDWO | Sacramento |

## YOUR WORK PERFORMANCE WILL DETERMINE WHETHER YOU OBTAIN PERMANENT CIVIL SERVICE STATUS

RATINGS ARE INDICATED BY "X" MARKS

| QUALIFICATION FACTORS | UNACCEPTABLE | IMPROVEMENT NEEDED | STANDARD | OUTSTANDING |
|---|---|---|---|---|
| SKILL—Expertise in doing specific tasks; accuracy; precision, completeness, neatness, quantity. | | | ✓ | |
| KNOWLEDGE—Extent of knowledge of methods, materials, tools, equipment, technical expressions and other fundamental subject matter. | | | ✓ | |
| WORK HABITS—Organization of work; care of equipment; punctuality and dependability; industry; follows good practices of vehicle and personal safety. | | | | ✓ |
| RELATIONSHIPS WITH PEOPLE—Ability to get along with others; effectiveness in dealing with the public, other employees, patients or inmates. | | | | ✓ |
| LEARNING ABILITY—Speed and thoroughness in learning procedures, laws, rules and other details; alertness; perseverance. | | | ✓ | |
| ATTITUDE—Enthusiasm for the work; willingness to conform to job requirements and to accept suggestions for work improvement; adaptability. | | | | ✓ |
| COMMUNICATION—Exhibits aptitude toward good writing and verbal skills, can give concise information in working situations. | | | ✓ | |
| ABILITY AS SUPERVISOR—Proficiency in training employees and planning, organizing, assigning and expediting work; leadership; understanding of and effectiveness in implementing departmental and SPB personnel management policies including equal employment opportunity and affirmative action. | | | | |
| ADMINISTRATIVE ABILITY—Promptness of action; soundness of decision, application of good management practices; understanding and effective implementation of departmental and SPB personnel management policies related to equal employment opportunity and affirmative action. | | | | |
| FACTORS NOT LISTED ABOVE (Use additional sheets if more space is needed.) | | | | |
| OVERALL RATING—The overall rating must be consistent with the factor ratings and comments, but there is no prescribed formula for computing the overall rating. | | | ✓ | |

COMMENTS TO EMPLOYEE—(Supervisor should include factual examples of exceptional or poor work and give suggestions as to how performance can be improved. Factor and overall ratings of unacceptable and overall ratings of outstanding must be substantiated. Use additional sheets if more space is needed).

This third and final phase of the report will base primarily on your work in reviewing financial statements and processing claims under the RF program since you've only begun concentrating on the program within the last few months. You understand the fundamental of financial analysis and are learning how to examine the company's financial statements and interpret the company's business activities each time you work on a project. Experience and knowledge will come with time. Your claim processing work was thorough. Again, I want to commend you on being conscientious with your work, always meeting deadlines, eager to learn and effectively use all information sources.

Welcome to DWR on a permanent status!

| Rater discussed report with employee | ☑ YES | ☐ NO |
|---|---|---|

RECOMMEND YOU BE GRANTED PERMANENT CIVIL SERVICE STATUS
(To be checked only on Final Report. If the probationer is rejected, notification must be given as prescribed by Government Code Section 19173.)

☑ YES     ☐ NO

| RATER'S SIGNATURE | TITLE Chief | DATE SIGNED 5/23/11 |
|---|---|---|

**In signing this report I do not necessarily agree with the conclusions of the rater.**

| EMPLOYEE'S SIGNATURE Elise Kenig | DATE SIGNED 5/23/11 | ☐ I would like to discuss this report with the reviewing officer. |
|---|---|---|

**concur in the ratings given by the rater. I have made no change in this report.**

| REVIEWING OFFICER'S SIGNATURE Netta-Brown | DATE SIGNED 5/23/11 | AS REQUESTED, REVIEWING OFFICER DISCUSSED REPORT WITH EMPLOYEE ON DATE |
|---|---|---|

**DISTRIBUTION  Copies:  1 — Departmental Files  2 — Employee  3 — Supervisor  4 — Miscellaneous**

STATE OF CALIFORNIA – PERSONNEL ADMINISTRATION

**REPORT OF PERFORMANCE**
**FOR PROBATIONARY EMPLOYEE**

RATER: Before filling out this report read instructions on the back.

- [✓] FIRST
- [ ] SECOND
- [ ] THIRD

STD. 635 (REV 8/2002)

| IE (Last) | First Elise | Initial | SOCIAL SECURITY NUMBER | REPORT DATE 03/09/12 |
|---|---|---|---|---|
| CIVIL SERVICE TITLE Associate Governmental Program Analyst | | POSITION NUMBER 1650-5393-002 | | DATE PROBATION ENDS 10/01/12 |
| DEPARTMENT NAME Department of Water Resources | DIVISION / UNIT DIRWM, Financial Assistance Branch | EMPLOYEE'S HEADQUARTERS Sacramento | | |

**YOUR WORK PERFORMANCE WILL DETERMINE WHETHER YOU OBTAIN PERMANENT CIVIL SERVICE STATUS**

RATINGS ARE INDICATED BY "X" MARKS

| QUALIFICATION FACTORS | UNACCEPTABLE | IMPROVEMENT NEEDED | STANDARD | OUTSTANDING |
|---|---|---|---|---|
| 1. **SKILL**—Expertise in doing specific tasks; accuracy; precision, completeness, neatness, quantity. | | | ✓ | |
| 2. **KNOWLEDGE**—Extent of knowledge of methods, materials, tools, equipment, technical expressions and other fundamental subject matter. | | | ✓ | |
| 3. **WORK HABITS**—Organization of work; care of equipment; punctuality and dependability; industry; follows good practices of vehicle and personal safety. | | | | ✓ |
| 4. **RELATIONSHIPS WITH PEOPLE**—Ability to get along with others; effectiveness in dealing with the public, other employees, patients or inmates. | | | | ✓ |
| 5. **LEARNING ABILITY**—Speed and thoroughness in learning procedures, laws, rules and other details; alertness; perseverance. | | | | ✓ |
| 6. **ATTITUDE**—Enthusiasm for the work; willingness to conform to job requirements and to accept suggestions for work improvement; adaptability. | | | | ✓ |
| 7. **COMMUNICATION**—Exhibits aptitude toward good writing and verbal skills, can give concise information in working situations. | | | ✓ | |
| 8. **ABILITY AS SUPERVISOR**—Proficiency in training employees and planning, organizing, assigning and expediting work; leadership; understanding of and effectiveness in implementing departmental and SPB personnel management policies including equal employment opportunity and affirmative action. | | | N/A | |
| **ADMINISTRATIVE ABILITY**—Promptness of action; soundness of decision, application of good management practices; understanding and effective implementation of departmental and SPB personnel management policies related to equal employment opportunity and affirmative action. | | | N/A | |
| 10. **FACTORS NOT LISTED ABOVE** (Use additional sheets if more space is needed.) | | | | |
| **OVERALL RATING**—The overall rating must be consistent with the factor ratings and comments, but there is no prescribed formula for computing the overall rating. | | | ✓ | |

**COMMENTS TO EMPLOYEE**—(Supervisor should include factual examples of exceptional or poor work and give suggestions as to how performance can be improved. Factor and overall ratings of unacceptable and overall ratings of outstanding must be substantiated. Use additional sheets if more space is needed).

Elise,
First, thank you for your hard work and contribution in carrying out the mission of the Financial Assistance Branch (FAB). In the last five months, I have found you as an organized, energetic, and result-oriented person who is glad to take on new assignments without any hesitation. As the Prop 84 Implementation Grant Analyst lead, you are following high quality and systematic approach to implement "award to agreement" phase. You have done satisfactory job to process the invoices and close out a number of prop 13 grants.
I am glad to have you in my Section. Your work is very much appreciated. Please let me know if you need any assistance from me.
Thanks again!

| Rater discussed report with employee | [ ] YES | [ ] NO | | |
|---|---|---|---|---|
| I RECOMMEND YOU BE GRANTED PERMANENT CIVIL SERVICE STATUS (To be checked only on Final Report. If the probationer is rejected, notification must be given as prescribed by Government Code Section 19173.) | | [ ] YES | [ ] NO | |
| RATER'S SIGNATURE | | TITLE SUPERVISING ENGINEER | | DATE SIGNED 3/9/12 |

*In signing this report I do not necessarily agree with the conclusions of the rater.*

| EMPLOYEE'S SIGNATURE Elise King | DATE SIGNED 3/9/12 | [ ] I would like to discuss this report with the reviewing officer. |
|---|---|---|
| I concur in the ratings given by the rater. I have made no change in this report. | | AS REQUESTED, REVIEWING OFFICER DISCUSSED REPORT WITH EMPLOYEE ON DATE |
| REVIEWING OFFICER'S SIGNATURE Tracie L. Boughter | DATE SIGNED 3/28/12 | |

**REPORT OF PERFORMANCE**
**FOR PROBATIONARY EMPLOYEE**
Case EMD01257-MCE-EFB   Document 11   Filed 11/16/18   Page 42 of 124

STD. 636 (REV 8/2002)

**RATER — Before marking the report, read instructions on the back**

- [✓] FIRST
- [ ] SECOND (FINAL)
- [✓] THIRD

(5)

| NAME (Last | First | Initial) | SOCIAL SECURITY NUMBER | REPORT DATE |
|---|---|---|---|---|
| ng | Elise | | | 05/07/12 |

| SERVICE TITLE | POSITION NUMBER | DATE PROBATION ENDS |
|---|---|---|
| Associate Governmental Program Analyst | 1650-5393-002 | 04/01/12 |

| DEPARTMENT NAME | DIVISION / UNIT | EMPLOYEE'S HEADQUARTERS |
|---|---|---|
| Department of Water Resources | DIRWM, Financial Assistance Branch | Sacramento |

### YOUR WORK PERFORMANCE WILL DETERMINE WHETHER YOU OBTAIN PERMANENT CIVIL SERVICE STATUS

| QUALIFICATION FACTORS | UNACCEPTABLE | IMPROVEMENT NEEDED | STANDARD | OUTSTANDING |
|---|---|---|---|---|
| 1. SKILL—Expertise in doing specific tasks; accuracy; precision, completeness, neatness, quantity. | | | ✓ | |
| 2. KNOWLEDGE—Extent of knowledge of methods, materials, tools, equipment, technical expressions and other fundamental subject matter. | | | ✓ | |
| 3. WORK HABITS—Organization of work; care of equipment; punctuality and dependability; industry; follows good practices of vehicle and personal safety. | | | | ✓ |
| 4. RELATIONSHIPS WITH PEOPLE—Ability to get along with others; effectiveness in dealing with the public, other employees, patients or inmates. | | | | ✓ |
| 5. LEARNING ABILITY—Speed and thoroughness in learning procedures, laws, rules and other details; alertness; perseverance. | | | | ✓ |
| 6. ATTITUDE—Enthusiasm for the work; willingness to conform to job requirements and to accept suggestions for work improvement; adaptability. | | | | ✓ |
| 7. COMMUNICATION—Exhibits aptitude toward good writing and verbal skills, can give concise information in working situations. | | | | |
| 8. ABILITY AS SUPERVISOR—Proficiency in training employees and planning, organizing, assigning and expediting work; leadership; understanding of and effectiveness in implementing departmental and SPB personnel management policies including equal employment opportunity and affirmative action. | | | N/A | |
| ADMINISTRATIVE ABILITY—Promptness of action; soundness of decision, application of good management practices; understanding and effective implementation of departmental and SPB personnel management policies related to equal employment opportunity and affirmative action. | | | N/A | |
| 10. FACTORS NOT LISTED ABOVE (Use additional sheets if more space is needed.) | | | | |
| OVERALL RATING—The overall rating must be consistent with the factor ratings and comments, but there is no prescribed formula for computing the overall rating. | | | | ✓ |

COMMENTS TO EMPLOYEE–(Supervisor should include factual examples of exceptional or poor work and give suggestions as to how performance can be improved. Factor and overall ratings of unacceptable and overall ratings of outstanding must be substantiated. Use additional sheets if more space is needed).

Elise,

Congratulations! You have successfully completed your probation period! I admire your hard work and sincerity. During the probation period you have maintained good personality, great enthusiasm for work, and excellent work ethics. Your significant job accomplishments include: as the Lead Analyst for Prop 84 Implementation Grant, you have demonstrated high quality-systematic approach to establish necessary fiscal information and encumber funds for all grant agreements within a reasonable time frame; you have done satisfactory job to process the invoices and close out a number of prop 13 grants. Other areas where you have been demonstrating outstanding performance include providing constructive ideas to improve FAB's grant and loan file management and archive. Last but not least, you have made satisfactory progress with your attitude in taking complete ownership of assignments.

I wish you a successful, productive, and pleasant career with DWR. Please let me know if you need any assistance from me.
I am glad to have you in my Section. Your work is very much appreciated. Please let me know if you need any assistance from me.
Thanks again!

| Rater discussed report with employee | [✓] YES | [ ] NO |
|---|---|---|

I RECOMMEND YOU BE GRANTED PERMANENT CIVIL SERVICE STATUS
(To be checked only on Final Report. If the probationer is rejected, notification must be given as prescribed by Government Code Section 19173.)   [✓] YES   [ ] NO

| RATER'S SIGNATURE | TITLE SUPERVISING ENGINEER | DATE SIGNED 5/8/12 |
|---|---|---|

**In signing this report I do not necessarily agree with the conclusions of the rater.**

| YEE'S SIGNATURE Elise King | DATE SIGNED 5/8/12 | [ ] I would like to discuss this report with the reviewing officer. |
|---|---|---|

**I concur in the ratings given by the rater. I have made no change in this report.**

| REVIEWING OFFICER'S SIGNATURE | DATE SIGNED | AS REQUESTED, REVIEWING OFFICER DISCUSSED REPORT WITH EMPLOYEE ON DATE |
|---|---|---|

**DISTRIBUTION  Copies:**  1 — Departmental Files  2 — Employee  3 — Supervisor  4 — Miscellaneous

**iNDIVIDUAL DEVELOPMENT PLAN**

STD. 637 (REV. 7-94c)

| EMPLOYEE NAME *(Last, First, Middle Initial)* | DATE OF THIS PERFORMANCE DISCUSSION | |
|---|---|---|
| g, Elise | | |
| L SERVICE TITLE | POSITION NUMBER | LAST PERFORMANCE DISCUSSION DATE |
| Associate Governmental Program Analyst | 1650-5393-002 | October 19, 2012 |
| STATE DEPARTMENT NAME | DEPARTMENT SUBDIVISION | EMPLOYEE'S HEADQUARTERS |
| Department of Water Resources | DIRWM, Financial Assistance Brar | Sacramento |

| PERFORMANCE OBJECTIVES — Goals for further improvements in job performance during the next year in order to meet or exceed standards for the employee's present job or to develop employee skills. | PLANS FOR ACHIEVING OBJECTIVES — Specific methods by which the employee can work toward accomplishing his or her performance objectives (in-service training courses, college courses, rotation, special work assignments for training purposes, etc.). |
|---|---|
| 1. Continue to improve analytical ability required for the AGPA classification. | 1. Review the 525 to identify areas where I can contribute to developing new approaches, methods, faster and better ways to do things within departmental objectives. Work with CSO, Budget Office and Accounts Payable staff to improve processes for budget revisions and invoicing. |
| 2. Improve overall knowledge of budget, SAP processes, DOF, GO Bond Law regulations and procedures as well as other DWR departmental procedures and processes. | 2. Utilize DWR department websites and sources(Budget Office, Contract Services Office, SAM, OAL) and outside agency websites to review SAM, and DWR guidelines. Review the Budget Analyst Guide located on the DOF website and the California State Library, and California State Archives (on-line and at physical locations on N and O Street respectively) to develop knowledge of Agency policies and regulations to help answer questions and solve issues regarding Department policies and procedures. |
| nhance problem-solving and Decision Making abilities. | 3. Attend CPS' Problem Solving and Decision Making course . |
| 4. Improve proficiency in BMS Identify skills necessary to use the new ABCRS system. Improve MS Office applications. | 4. Work with PSO staff, BMS tutorials and instructions on the FAB Shared drive to learn new skills. Attend webinar for the new ABCRS application as well as any on-line tutorials provided by BAO. Continue to improve MS Office applications skills through Udemy video tutorials and "How To" on-line website. |

*I HAVE PARTICIPATED IN A DISCUSSION OF OVER-ALL JOB PERFORMANCE*

| PLOYEE'S SIGNATURE | DATE SIGNED | SUPERVISOR'S SIGNATURE | DATE SIGNED |
|---|---|---|---|
| Elise King | 10/25/13 | | 10/25/13 |

*(Over)*

STATE OF CALIFORNIA — DEPARTMENT OF PERSONNEL ADMINISTRATION
**PERFORMANCE APPRAISAL SUMMARY**
OF PAST JOB PERFORMANCE Case 2:17-cr-00257-EMC-EHSB   Document 11   Filed 11/16/18   Page 44 of 124

STD. 637 (REV. 7-94c) (REVERSE)

| PERFORMANCE FACTORS | I | M | E* | COMMENTS* |
|---|---|---|---|---|
| **QUALITY OF WORK:** Consider the extent to which completed work is accurate, neat, well-organized, thorough, and effective. | | | ✓ | |
| 2. **QUANTITY OF WORK:** Consider the extent to which the amount of work produced compares to quality standards for the job. | ✓ | | | |
| 3. **WORK HABITS:** Consider the employee's effectiveness in organizing and using work tools and time, in caring for equipment and materials, in following good practices of vehicle and personal safety, etc. | ✓ | | | |
| 4. **RELATIONSHIPS WITH PEOPLE:** Consider the extent to which the employee recognizes the needs and desires of other people, treats others with respect and courtesy, and inspires their respect and confidence, etc. | ✓ | | | |
| 5 **TAKING ACTION INDEPENDENTLY:** Consider the extent to which the employee shows initiative in making work improvements, identifying and correcting errors, initiating work activities, etc. | ✓ | | | |
| **MEETING WORK COMMITMENTS:** Consider the extent to which the employee completes work assignments, meets deadlines, follows established policies and procedures, etc. | ✓ | | | |
| 7. **ANALYZING SITUATIONS AND MATERIALS:** Consider the extent to which the employee applies consistently good judgment in analyzing work situations and materials, and in drawing sound conclusions. | ✓ | | | |
| **SUPERVISING THE WORK OF OTHERS:** Consider the employee's effectiveness in planning and controlling work activities, motivating and developing subordinates, improving work methods and results, encouraging and supporting employee suggestions for work improvement, applying policies, selecting and developing subordinates in accordance with State Personnel Board and departmental affirmative action policies. | | | | |
| **PERSONNEL MANAGEMENT PRACTICES:** Consider the extent to which the employee understands and applies good personnel management practices including affirmative action and upward mobility. Does the employee contribute effectively to the implementation of State Personnel Board and departmental equal employment opportunity policies and to the attainment of affirmative action goals? | | | | |

GENERAL COMMENTS OR COMMENTS ON OTHER FACTORS

Elise,

thank you for your well organized and thorough work. I praise your persistence and commitment to gather and maintain Prop 84 round 1 implementation grant agreements' awards to execution status spreadsheet. Additionally, you have demonstrated high quality grant analyst work in regards to processing invoices and amendments on time for several P50, P1E, and P84 grants. I strongly encourage you to coordinate other grant analysts in headquarters and region offices to support the IRWM grant program activities. Your knowledge and ideas are valuable to the group. Please let me know if you need any help or advice from me.

supervisor may make "comments" only, or may use rating categories only, or may use either or both methods of appraisal on any performance factor, as he or she prefers. The rating categories are:
  I - Improvement needed for performance to meet expected standards
  M - Performance fully meets expected standards
  E - Performance consistently exceeds expected standards

Exhibit ⑧

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 555-2017-00411 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Elise King** | | |

| Street Address | City, State and ZIP Code |
|---|---|
| **10 Mount Judah Place, Sacramento, CA 95835** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CALIFORNIA DEPARTMENT OF WATER RESOURCES** | **500 or More** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **901 P Street,  Sacramento, CA 95814** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **09-15-2016**   Latest **09-15-2016**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the Respondent on March 2, 2010 as Office Technician. My most recent position was Associate Governmental Program Analyst. My immediate supervisor was Muzaffar Eusuff from June of 2011 to June of 2015, and Susan Bradley-Hudson from July of 2015 to September of 2016.

I am a person with disabilities that the Respondent is aware of. Since May of 2014, I took multiple leaves of absences due to my disabilities. On April 16, 2015, I filed charge EEOC No. 555-2015-00673C because I was denied accommodation by the Respondent and such decision prevented my return to work because I was released to work with restrictions. I later appealed the Respondent's denial of accommodation and failure to engage in the interactive process before the State Personnel Board ("Board").

On late April of 2016, my appeal before the Board was heard by an administrative law judge ("ALJ"). On or about August of 2016, I was notified of the ALJ's ruling in favor of the Respondent. On September 6, 2016, I was instructed by the Respondent to return to work on September 9, 2016 in light of the Board's administrative decision. On September 9, 2016, I notified the Respondent of my intention to file a petition for rehearing and I diligently proceeded to file such petition before the Board on September 22, 2016. But I was notified of the Respondent's intention to discharge me on the grounds of my absence without approved leave on September 15, 2016, and effectively discharged by the Respondent on September 30, 2016.

I believe that I was retaliated against because of my engagement in protected activity, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2/20/17   *Elise King*<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
GOVERNOR EDMUND G. BROWN JR.
DIRECTOR KEVIN KISH
2218 Kausen Drive, Suite 100 I Elk Grove I CA !95758
800-884-1684 I TDD 800-700-2320
www.dfeh.ca.gov I email: contact.center@dfeh.ca.gov

EEOC Number: 555-2017-00411C

Case Name: Elise King v. CA Department of Water Resources

Filing Date: April 02, 2017

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH), a state agency, and the United States Equal Employment Opportunity Commission (EEOC), a federal agency. The complaint will be filed in accordance with California Government Code section 12960. The notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter. Please contact EEOC directly for any discussion of the complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your state Right to Sue notice. This state Right to Sue Notice allows you to file a private lawsuit. According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above- referenced complaint. The lawsuit may be filed in a State of California Superior Court.

Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice or, pursuant to Government Code section 12965, subdivision (d)(2), 90 days from receipt of the federal right-to-sue letter from the EEOC, whichever is later. You should consult an attorney to determine with accuracy the date
by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, the DFEH does not retain case records beyond three years after a complaint is filed.

(Revised 11/2016)

Exhibit (10)  4

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Elise King**<br>**10 Mount Judah Place**<br>**Sacramento, CA 95835** | From: | **Oakland Local Office**<br>**1301 Clay Street**<br>**Suite 1170-N**<br>**Oakland, CA 94612-5217** |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **555-2017-00411** | **Juanita Rodriguez,**<br>**Investigator** | **(510) 637-3246** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____  04/02/17
**Dana C. Johnson,**                              *(Date Mailed)*
**Local Office Director**

Enclosures

cc:    **Stephanie N. Varrelman**
       **Chief of the Office of Workforce Equality**
       **CALIFORNIA DEPARTMENT OF WATER RESOURCES**
       **P.O. Box 942836, Room 630**
       **Sacramento, CA 94236**



**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
Error! Not a valid filename.

GOVERNOR EDMUND G. BROWN, JR.
DIRECTOR PHYLLIS W. CHENG

EEOC Number: 555-2015-00673C
Case Name:    Elise King vs. CALIFORNIA DEPARTMENT OF WATER RESOURCES
Filing Date:    May 18, 2015

### NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH) by the U.S. Equal Employment Opportunity Commission (EEOC).  The complaint will be filed in accordance with California Government Code section 12960.  This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter.  Please contact EEOC directly for any discussion of the complaint or the investigation.

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

This letter is also your Right to Sue notice.  This Right-To-Sue Notice allows you to file a private lawsuit in State court.  According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint.  The lawsuit may be filed in a State of California Superior Court.  Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice.  Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint.  You should consult an attorney to determine with accuracy the date by which a civil action must be filed.  This right to file a civil action may be waived in the event a settlement agreement is signed.

If you have questions about the right to file under federal law, please contact the EEOC using the contact information below.

EEOC Northern California
450 Golden Gate Ave 5-West
PO Box 36025
San Francisco, CA  94102
(415) 522-3000

EEOC Southern California
255 East Temple Ste., 4th Floor
Los Angeles, CA  90012
(213) 894-1100

DFEH-200-02 (01/13)

Exhibit 12



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GOVERNOR EDMUND G. BROWN JR.

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

DIRECTOR KEVIN KISH

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

October 08, 2015

Elise King
3104 O Street
Sacramento California 95816

RE: **Notice of Case Closure on Administrative Dismissal**
    DFEH Number: 524349-153820
    EEOC Number: 37A-2015-02199-C (Sacramento - N)
    King / California Department of Water Resources

(415) 522
3000

Dear Elise King:

The Department of Fair Employment and Housing (DFEH) has closed your case on the basis of Administrative Dismissal for the following reason(s):

X       You filed a matter on the same discriminatory issues with DFEH, Equal
        Opportunity Office Commission (EEOC) or the U.S. Department of Housing and
        Urban Development (HUD).  Matter Number 555-2015-00673.

If you have any questions, please contact me.

Sincerely,

*Elizabeth Reyes*

Elizabeth Reyes
Consultant III
213.337-4478
elizabeth.ramirez@dfeh.ca.gov

cc:


        California Department of Water Resources
        Gareth Johnson
        1416 Ninth Street, Room 630
        Sacramento California 95814

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 555-2015-00673 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Elise King** | | **11-27-1961** |

| Street Address | City, State and ZIP Code |
|---|---|
| **3104 O Street, Apt 274, Sacramento, CA 95816** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **CALIFORNIA DEPARTMENT OF WATER RESOURCES** | **500 or More** | **(916) 653-6768** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1416 Ninth Street, Sacramento, CA 95814** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest — Latest |

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

Earliest **05-27-2014**  Latest **04-09-2015**

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I have been employed by Respondent since March 2, 2010. I have been employed in my specific division since on or around June 15, 2011. My job title at the time of the alleged adverse employment actions was and currently is Associate Government Program Analyst. My immediate supervisor is Muzaffar Eusuff, Ph.D.

I have a disability for which Respondent is aware.

I have been out on various forms of leave since May 27, 2014, due to symptoms related to my disability. Within the last three hundred days, I have been cleared to return to modified work duty by my doctors, in accordance with restrictions that I requested through the reasonable accommodation process. Respondent has denied my requests and has stalled the interactive process. I remain on State Disability Leave at this time.

I believe that I have been discriminated against in violation of the Americans with Disabilities Act of 1990, as amended. I also believe that I have been retaliated against for my participation in a protected activity in violation of the statute.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>APR 16 2015 |
| Apr 16, 2015 _Elise King_<br>Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)    EEOC - OLO |

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Elise King**<br>**10 Mount Judah Place**<br>**Sacramento, CA 95835** | From: **Oakland Local Office**<br>**1301 Clay Street**<br>**Suite 1170 N**<br>**Oakland, CA 94612** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **555-2015-00673** | **Bryan G. Hoss,**<br>**Investigator** | **(510) 637-3240** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Dana C. Johnson,**
**Local Office Director**

03/20/17
*(Date Mailed)*

cc:    **Stephanie Varrelman, Chief**
**CALIFORNIA DEPARTMENT OF WATER**
**RESOURCES**
**1416 Ninth St.**
**P.O. BOX 942836**
**Sacramento, CA 94236**



King, Elise
DIRWM

**Duenas, April@DWR**

| | |
|---|---|
| From: | Myrum, Debbie@DWR |
| Sent: | Monday, June 02, 2014 8:56 AM |
| To: | Campos, Deserie@DWR |
| Cc: | Gist, Danielle@DWR; Duenas, April@DWR |
| Subject: | RE: FMLA question |

Thank you Deserie,

Yes, she does have enough leave credits to cover her time off. I will send the notice to her today.

Debbie Myrum
916-651-9210

---

**From:** Campos, Deserie@DWR
**Sent:** Monday, June 02, 2014 8:51 AM
**To:** Myrum, Debbie@DWR
**Cc:** Gist, Danielle@DWR; Duenas, April@DWR
**Subject:** RE: FMLA question

Hi Debbie, please FMLA notice her because we are unsure if this is a work related injury. I will check on her leave options to see what she is entitled to receive for disability. Does she have enough leave credits to cover her time off? Thanks!

*Deserie Campos*
Senior Personnel & Benefits Specialist
Department of Water Resources
Human Resources Office
SAP Administration & Benefits
(916)653-0928



---

**From:** Myrum, Debbie@DWR
**Sent:** Monday, June 02, 2014 7:49 AM
**To:** Campos, Deserie@DWR
**Cc:** Gist, Danielle@DWR
**Subject:** FMLA question

Good Morning Deserie,

I had an employee come to me on Friday morning with a Doctor's note that they are off work two weeks. I asked if it was work related and she said "that hasn't been determined yet". At this point, do I "notice" her on FMLA? What exactly do I need to do?

1

Discovery 1 - 001055



**eliseking@msn.com**

| | |
|---|---|
| **From:** | Lane-Mills, Donna@DWR [Donna.Lane-Mills@water.ca.gov] |
| **Sent:** | Monday, November 02, 2015 12:45 PM |
| **To:** | eliseking@msn.com |
| **Subject:** | FW: Information on Employee Benefit Status |

Hello Ms. King

As you have requested, we have forwarded your pay and leave balance information to your address on Mount Judah. They were placed in the mail last Friday afternoon.

Below are the dates that we have documented for your FMLA and SDI coverage.   I will forward a copy of your message to our Employee Health Service Office so they can respond to you about your Worker's Comp leave.

| | From | to |
|---|---|---|
| FMLA | 5/29/2014 | 8/20/2014 |
| SDI Waiting Period | 5/27/2014 | 6/2/2014 |
| SDI | 6/3/2014 | * |

  \* SDI is approved by EDD.   We received confirmation from EDD
     that your SDI payments were approved effective 6/3/14.
  However, EDD does not send us notification of the ending date of
     your SDI approval.  You may contact EDD for this information

My current job title is Staff Services Manager I, and I am the current supervisor of Deserie Campos.

Donna Lane-Mills
DWR – Human Resources Office
(916) 653-0251

**From:** elise king [mailto:eliseking@msn.com]
**Sent:** Monday, October 26, 2015 8:56 PM
**To:** Lane-Mills, Donna@DWR
**Cc:** Campos, Deserie@DWR
**Subject:** Re: Information on Employee Benefit Status

Hello Donna,

Thank you for the information that you have provided.   I would appreciate if you would mail any of the information from DWR listed in the table to my home address.

1

(18)

## CERTIFICATION OF HEALTH CARE PROVIDER FOR FAMILY LEAVE
### (Family and Medical Leave Act of 1993)

**Check One:** ☐ Care of Family Member
☒ Personal Illness   ☐ Pregnancy

**Patient Medical Record #: 110013253298**

| | |
|---|---|
| **ELISE KING**<br>Employee's Name | **STATE OF CA - DWR**<br>Employing Company |
| Patient's Name (if other than employee) | Relationship to Employee |

### TO BE COMPLETED FOR THE EMPLOYEE BY THE PHYSICIAN OR PRACTITIONER

**Medical Facts: SERIOUS HEALTH CONDITION REQUIRING ABSENCE PLUS TREATMENT**

Was medication prescribed (other than over-the-counter)? ☐ Yes   ☒ No

### I. Care of a Family Member

☐ The patient is a family member with a Serious Health Condition (SHC) which would require the employee to take time off from work to provide basic medical, personal or safety needs, transportation, or psychological comfort. The probable frequency and duration of this need is:

☐ Block of Time   to

**Frequency:**

☐ Intermittent Dates:  to   **Days per Week/Month:   Hours per Week/Month:**

**Additional Info:**

### II. Personal Illness/Pregnancy

1. The patient is the employee with a Serious Health Condition* (SHC) commenced on **5/29/14**

2. ☒ Patient unable to work:   Begin Date: **5/29/14** Through Date **7/6/14**

   ☒ Patient has restrictions:   Begin Date: **7/7/14** Through Date **9/28/14 (EXTENSION)**

   **Modified Work:   Restricted from working in customary worksite (901 P Street) due to the risk of environmental/ interpersonal triggers flaring up/ exacerbating symptoms. In addition, she is restricted from all but incidental auditory/visual contact with her Management team, M Eusuff, T Billington and P Landis. Communication is limited to written form only (eg email, memo). No meetings, telephone calls, conversations.**

   ☐ Patient requires intermittent leave/care or may have episodic flare-ups due to a serious health condition.
   Begin Date:   Through Date
   Periods of incapacitation are likely to occur: Hrs/Days  every  (week/month)

3. If the condition is pregnancy estimated date of delivery or scheduled C-section:
   Condition summary: ☐ Normal pregnancy   ☐ Complications with pregnancy

4. Surgery Date:
   Patient admitted to Hospital, Hospice or Residential Medical care facility: Admission date: Release date:

5. Dates of visits for treatment of this condition: **7/28/14, 7/31, 8/4, 8/18, 8/19, plus 8 more appointments**

6. Will the patient need treatment visits at least twice per year due to this condition? ☐ Yes   ☒ No

7. Treatment Plan:
   ☒ Yes  ☐ No   Is it necessary for the employee to be absent from work for treatment?
   If yes:   - Approximate number of additional treatments: **7**
   - Approximate time each treatment will take: **30-60 min**
   ☐ Yes  ☒ No   Will another provider of health services (e.g., physical therapist) provide treatments?
   If so, please state the nature of treatment:

8. Can return to full duties with **no restrictions** on **9/29/14**

### HEALTH CARE PROVIDER

| | |
|---|---|
| **IRVING HELLMAN(PHD)**<br>Physician's/Provider's Name (please print) | **ELEANOR P DEKRUYFF, Auth Signer for IRVING HELLMAN(PHD)**<br>Physician's/Provider's Signature  *Irving Hellman, PhD* |
| **GENERAL, OTHER**<br>Type of Practice (field of specialization) | **PSY9183**<br>State License #    **916-746-3592**<br>Area Code/Phone Number |

**KAISER PERMANENTE**
**MEDICAL SECRETARIES**
**1600 EUREKA ROAD**
**FAX**

| **ROSEVILLE**<br>City | **CA**<br>State | **95661**<br>Zip Code | **8/25/14**<br>Date | **94-2728480**<br>Tax ID# |
|---|---|---|---|---|

## CERTIFICATION OF HEALTH CARE PROVIDER FOR FAMILY LEAVE

| Check One: ☐ Care of Family Member | | Patient Medical Record #: **110013253298** |
|---|---|---|
| ☒ Personal Illness ☐ Pregnancy | | |

| Employee's Name | **DWR**<br>Employing Company |
|---|---|
| **ELISE KING** | **SELF** |
| Patient's Name (if other than employee) | Relationship to Employee |

### TO BE COMPLETED FOR THE EMPLOYEE BY THE PHYSICIAN OR PRACTITIONER

**Medical Facts: SERIOUS MEDICAL CONDITION, ABSENCE PLUS TREATMENT**

Was medication prescribed (other than over-the-counter)? ☐ Yes ☒ No

**I. Care of a Family Member**

☐ The patient is a family member with a Serious Health Condition **(SHC)** which would require the employee to take time off from work to provide basic medical, personal or safety needs, transportation, or psychological comfort. The probable frequency and duration of this need is:

☐ Block of Time to

Frequency:

☐ Intermittent Dates: to  Days per Week/Month:  Hours per Week/Month:  Additional Info:

**II. Personal Illness/Pregnancy**

1. The patient is the employee with a Serious Health Condition* **(SHC)** commenced on **5/29/14**

2. ☐ Patient unable to work: Begin Date: *** Through Date ***

☒ Patient has restrictions: Begin Date: **7/5/14** Through Date **11/2/14**

Modified Work: **Restricted from working in customary worksite (901 P Street) due to the risk of environmental/ interpersonal triggers flaring up/ exacerbating symptoms. In addition, she is restricted from all but incidental auditory/visual contact with her Management team, M Eusuff, T Billington and P Landis. Communication is limited to written form only (eg email, memo). No meetings, telephone calls, conversations.**

3. If the condition is pregnancy estimated date of delivery or scheduled C-section:
   Condition summary: ☐ Normal pregnancy  ☐ Complications with pregnancy

4. Surgery Date:
   Patient admitted to Hospital, Hospice or Residential Medical care facility: Admission date: Release date:

5. Dates of visits for treatment of this condition: **RECENT: 9/18/14**

6. Will the patient need treatment visits at least twice per year due to this condition? ☒ Yes ☐ No

7. Treatment Plan: **CONTINUED CARE, F/U**
   ☒ Yes ☐ No  Is it necessary for the employee to be absent from work for treatment?
   If yes:  - Approximate number of additional treatments: **AS NEEDED**
   - Approximate time each treatment will take: **PER MD**
   ☐ Yes ☒ No  Will another provider of health services (e.g., physical therapist) provide treatments?
   If so, please state the nature of treatment:

8. Can return to full duties with no restrictions on 11/3/14

### HEALTH CARE PROVIDER

| **IRVING HELLMAN(PHD)** | JAYNE HOSKIN, Auth Signer for IRVING HELLMAN(PHD) |
|---|---|
| Physician's/Provider's Name (please print) | Physician's/Provider's Signature |

| **GENERAL, OTHER** | **PSY9183** | **916-746-3638** |
|---|---|---|
| Type of Practice (field of specialization) | State License # | Area Code/Phone Number |

| **KAISER PERMANENTE**<br>**MEDICAL SECRETARIES**<br>**1600 EUREKA ROAD** | **ROSEVILLE**<br>City | **CA**<br>State | **95661**<br>Zip Code | **9/19/14**<br>Date | **94-2728480**<br>Tax ID# |
|---|---|---|---|---|---|

*Serious Health Condition (SHC) is defined by Title 29 § 825.113-825.115 as: Inpatient overnight stay in a hospital, hospice or residential medical facility; Continuing Treatment defined as, Incapacity and Treatment, Pregnancy or Prenatal Care, Chronic Conditions, Permanent or Long-Term Conditions, and Conditions requiring multiple treatments.

19



Kaiser Permanente                                                                                                    Page 1 of 1

# KAISER PERMANENTE. thrive

HELLMAN, IRVING (PHD)
2016 Morse Avenue
Sacramento CA 95825-2135
916-973-5000

**Patient Name:** King,Elise
**Patient MRN:** 110013253298
**Encounter Date & Time:** 7/1/2014 1:30 PM

Please see below for this health care provider's directives and information relating to this encounter.

## Industrial Work Status Report

**Date of Injury:** 5/27/2014
**Claim #:**
**Next Appointment Date:** 3 Weeks

<u>Off Work</u>
This patient is placed off work from 7/1/2014 through 7/6/2014

<u>Modified Activity</u> (Applies to work and home)
This patient is placed on modified activity at work and at home from 7/7/2014 through 7/27/2014.

*If modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required.*

<u>Other needs and/or restrictions:</u>
Restricted from working in customary worksite (901 P Street) due to the risk of environmental/ interpersonal triggers flaring up/ exacerbating symptoms. In addition, she is restricted from all but incidental auditory/visual contact with her Management team, M Eusuff, T Billington and P Landis. Communication is limited to written form only (eg email, memo). No meetings, telephone calls, conversations.

This form has been electronically signed and authorized by HELLMAN, IRVING (PHD)

*This form contains your private health information that you may choose to release to another party; please review for accuracy.*

Printed By: HELLMAN, IRVING D on 7/1/2014 at 2:40:37 PM

Dscovery 1 - 001083



Kaiser Permanente                                                        Page 1 of 1

# KAISER PERMANENTE. thrive

HELLMAN, IRVING (PHD)
2016 Morse Avenue
Sacramento CA 95825-2135
916-973-5000

**Patient Name:** King,Elise
**Patient MRN:** 110013253298
**Encounter Date & Time:** 7/24/2014 9:30 AM

Please see below for this health care provider's directives and information relating to this encounter.

## Industrial Work Status Report

**Date of Injury:** 5/27/2014
**Claim #:**
**Next Appointment Date:** 1 Month

**Modified Activity** (Applies to work and home)
This patient is placed on modified activity at work and at home from 7/24/2014 through 8/31/2014.

*If modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required.*

**Other needs and/or restrictions:**
Restricted from working in customary worksite (901 P Street) due to the risk of environmental/ interpersonal triggers flaring up/ exacerbating symptoms. In addition, she is restricted from all but incidental auditory/visual contact with her Management team, M Eusuff, T Billington and P Landis. Communication is limited to written form only (eg email, memo). No meetings, telephone calls, conversations.

This form has been electronically signed and authorized by HELLMAN, IRVING (PHD)

*This form contains your private health information that you may choose to release to another party; please review for accuracy.*

Printed By: HELLMAN, IRVING D on 7/24/2014 at 10:23:13 AM



Kaiser Permanente                                                    Page 1 of 1

# KAISER PERMANENTE. thrive

HELLMAN, IRVING (PHD)
2016 Morse Avenue
Sacramento CA 95825-2135
916-973-5000

**Patient Name:** King, Elise
**Patient MRN:** 110013253298
**Encounter Date & Time:** 8/19/2014 3:30 PM

Please see below for this health care provider's directives and information relating to this encounter.

## Industrial Work Status Report

**Date of Injury:** 5/27/2014
**Claim #:**
**Next Appointment Date:** 1 Month

**Modified Activity (Applies to work and home)**
This patient is placed on modified activity at work and at home from 8/19/2014 through 9/28/2014.

*If modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required.*

**Other needs and/or restrictions:**
Restricted from working in customary worksite (901 P Street) due to the risk of environmental/ interpersonal triggers flaring up/ exacerbating symptoms. In addition, she is restricted from all but incidental auditory/visual contact with her Management team, M. Eusuff, T. Billington and P. Landis. Communication is limited to written form only (eg email, memo). No meetings, telephone calls, conversations.

This form has been electronically signed and authorized by HELLMAN, IRVING (PHD)

*This form contains your private health information that you may choose to release to another party; please review for accuracy.*

Printed By: HELLMAN, IRVING D on 8/19/2014 at 4:11:11 PM

State of California
Department of Industrial Relations
DIVISION OF WORKERS' COMPENSATION

*Estado de California*
*Departamento de Relaciones Industriales*
*DIVISIÓN DE COMPENSACIÓN AL TRABAJADOR*

WORKERS' COMPENSATION CLAIM FORM (DWC 1)

*PETITION DEL EMPLEADO PARA DE COMPENSACIÓN DEL TRABAJADOR (DWC 1)*

**Employee:** Complete the "Employee" section and give the form to your employer. Keep a copy and mark it "Employee's Temporary Receipt" until you receive the signed and dated copy from your employer. You may call the Division of Workers' Compensation and hear recorded information at **(800) 736-7401.** An explanation of workers' compensation benefits is included as the cover sheet of this form.

You should also have received a pamphlet from your employer describing workers' compensation benefits and the procedures to obtain them.

*Empleado:* Complete la sección "Empleado" y entregue la forma a su empleador. Quédese con la copia designada "Recibo Temporal del Empleado" hasta que Ud. reciba la copia firmada y fechada de su empleador, Ud. puede llamar a la Division de Compensación al Trabajador al **(800) 736-7401** para oir información gravada. En la hoja cubierta de esta forma esta la explicación de los beneficios de compensación al trabajador.

*Ud. también debería haber recibido de su empleador un folleto describiendo los benficios de compensación al trabajador lesionado y los procedimientos para obtenerlos.*

Any person who makes or causes to be made any knowingly false or fraudulent material statement or material representation for the purpose of obtaining or denying workers' compensation benefits or payments is guilty of a felony.

Toda aquella persona que a propósito haga o cause que se produzca cualquier declaración o representación material falsa o fraudulenta con el fin de obtener o negar beneficios o pagos de compensación a trabajadores lesionados es culpable de un crimen mayor "felonía".

---

**Employee—complete this section and see note above**    *Empleado—complete esta sección y note la notación arriba.*

1. Name. *Nombre.* Elise King    Today's Date. *Fecha de Hoy.* 7/3/14
2. Home Address. *Dirección Residencial.* 10 Mount Judah Phlee
3. City. *Ciudad.* Sacramento    State. *Estado.* CA    Zip. *Código Postal.* 95835
4. Date of Injury. *Fecha de la lesión (accidente).* 5/27/14    Time of Injury. *Hora en que ocurrió.* _____ a.m. _____ p.m.
5. Address and description of where injury happened. *Dirección/lugar dónde occurió el accidente.*
   901 P Street Sacramento CA
6. Describe injury and part of body affected. *Describa la lesión y parte del cuerpo afectada.*
   Serious Medical Condition resulting from humiliation, harassment and retaliation
7. Social Security Number. *Número de Seguro Social del Empleado.* 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
8. Signature of employee. *Firma del empleado.* Elise King

---

**Employer—complete this section and see note below.** *Empleador—complete esta sección y note la notación abajo.*

9. Name of employer. *Nombre del empleador.* Department of Water Resources
10. Address. *Dirección.* 901 P St. Sacramento CA 95814
11. Date employer first knew of injury. *Fecha en que el empleador supo por primera vez de la lesión o accidente.* 7/3/14
12. Date claim form was provided to employee. *Fecha en que se le entregó al empleado la petición.* 7/7/14
13. Date employer received claim form. *Fecha en que el empleado devolvió la petición al empleador.* 7/7/14
14. Name and address of insurance carrier or adjusting agency. *Nombre y dirección de la compañía de seguros o agencia administradora de seguros.*
15. Insurance Policy Number. *El número de la póliza de Seguro.*
16. Signature of employer representative. *Firma del representante del empleador.* Yvar L. Lashi
17. Title. *Título.* Chief Financial Act. Brod    18. Telephone. *Teléfono.* 916-651-9226

---

**Employer:** You are required to date this form and provide copies to your insurer or claims administrator and to the employee, dependent or representative who filed the claim within **one working day** of receipt of the form from the employee.

*Empleador:* Se requiere que Ud. feche esta forma y que provéa copias a su compañía de seguros, administrador de reclamos, o dependiente/representante de reclamos y al empleado que hayan presentado esta petición dentro del plazo de **un día hábil** desde el momento de haber sido recibida la forma del empleado.

SIGNING THIS FORM IS NOT AN ADMISSION OF LIABILITY

*EL FIRMAR ESTA FORMA NO SIGNIFICA ADMISION DE RESPONSABILIDAD*

☐ Employer copy/*Copia del Empleador*    ☐ Employee copy/*Copia del Empleado*    ☐ Claims Administrator/*Administrador de Reclamos*    ☐ Temporary Receipt/*Recibo del Empleado*

6/10 Rev.



| | |
|---|---|
| **From:** | Billington, Tracie@DWR |
| **To:** | Eusuff, Muzaffar@DWR; Lindberg, Tracey@DWR; Duenas-Davis, April@DWR |
| **Cc:** | Myrum, Debbie@DWR |
| **Subject:** | RE: Elise King |
| **Date:** | Friday, May 29, 2015 12:51:06 PM |

Zaffar – Please send a response to yesterday's email that says:

As far as we know, your State Disability Insurance ends on June 2, 2015. We are checking with Personnel on the remainder of the time. Someone from Employee Health Services will notify you next week regarding the status of the balance of time.

**From:** Eusuff, Muzaffar@DWR
**Sent:** Friday, May 29, 2015 8:06 AM
**To:** Billington, Tracie@DWR; Lindberg, Tracey@DWR; Duenas-Davis, April@DWR
**Subject:** RE: Elise King

FYI.
Thanks.

*Zaffar Eusuff, Ph.D., P.E.*
Financial Assistance Branch
Division of Integrated Regional Water Management
California Department of Water Resources
901 P Street, Room 213 A      P.O. Box 942836
Sacramento, CA 95814          Sacramento, CA 94236-0001
Phone (916) 651-9266          Fax (916) 651-9292

**From:** Billington, Tracie@DWR
**Sent:** Thursday, May 28, 2015 3:19 PM
**To:** Lindberg, Tracey@DWR; Duenas-Davis, April@DWR
**Cc:** Eusuff, Muzaffar@DWR
**Subject:** RE: Elise King

Thanks – So at this point, we should expect Elise to return to work tomorrow. We will let you know if she has not reported by her normal start time.

**From:** Lindberg, Tracey@DWR
**Sent:** Thursday, May 28, 2015 1:09 PM
**To:** Billington, Tracie@DWR
**Subject:** FW: Elise King

Hi Tracie:

See below what April has to say about the extension.

Tracey Lindberg
Division of Statewide Integrated Water Management



**From:** elise king [mailto:eliseking@msn.com]
**Sent:** Wednesday, October 29, 2014 2:47 PM
**To:** Duenas-Davis, April@DWR
**Cc:** jacklyn.smith@water.ca.gov
**Subject:** Reasonable Accommodation vs. Worker's Compensation Process

Hi April,

Thank you for the clarification on the reasonable accoommodation process. It may not have been clear when we spoke about a week ago that the doctor's appointment that I was referring to was the appointment with the Worker's Compensation MPN provider that I was already assigned. Here is what I understand that you said today:

1. Until the 4171 is filled out it is implied that the employee is agreeing with the doctor's evaluation and recommendation and that no other reasonable accommodation request is being considered.
The options letter dated August 28, 2014, which was mailed to you, lists the options which may be available to you. Since you are collecting SDI and have not requested any other options, and because you indicate "The report extends my leave through 11/23/14" (from today's email) or a similar statement, you have not disputed the restrictions which your doctor has indicated, and you have not returned to work, then that is correct: it is implied that you agree with our physician. When you contacted me on September 25, 2014, you advised me that you were off until November 2, 2014 and stated that these options (in the options letter) were premature since your claim was pending decision. Upon speaking with you on October 20, 2014 regarding the workers' comp claim denial, you were not interested in pursuing reasonable accommodation. While I understand that details may differ (waiting to speak to doctor this week versus not interested in RA), you did not wish to select another option at that time. You may, at any time, complete the Form 4007 or other method to indicate what accommodation you are requesting. The Form 4007 is the most detailed, however, so there is no confusion. It does not need to be signed by anyone other than you.

2. That once the denial of the worker's compensation claim is made (pending the QME or appeal) it is necessary for the employee to fill out the 4171 to officially initiate the Reasonable Accommodation process. (I thought I did that with Maria, however there is no form in the file.)
Please see my note above regarding the September 25, 2014 conversation. And, to clarify, if you are requesting a reasonable accommodation, you must participate in the interactive process, and I must contact the physician. I cannot contact the physician without the signed release.

3. We agreed that I would locate and complete the 4171 form and scan and send to you, and that you would assist in working through the process.
Correct.

4. You will continue to be involved in the process in a different capacity. This means that once the 4171 is received you begin discussion with the physician, employee and employer to find a beneficial solution.
Yes, our office will consider possible accommodation and/or alternate accommodations as appropriate. We cannot guarantee an outcome at this time.

5. You mentioned that I would need to both notify my supervisor, and Desirie Campos in Benefits which I have already done.

notifying your supervisor, it is your responsibility to follow call-in procedures, whatever that may be for you. I will not contact your supervisor regarding your absence for you. Once you complete the Form 4171 and I begin interacting with your physician, I will work with the program and you. However, until then, you would need to find out from your supervisor if he can accommodate your restrictions.

## 6. That the current Work Status Report is effective until the date stated by the doctor and as long as the process is actively continuing.

I'm confused by what you mean. The work status you submitted states that you have restrictions, so if your supervisor is able to accommodate, then you are expected to be at work. If your supervisor is unable to accommodate your restrictions, then you are off work. This ability to accommodate or not is valid until the expiration of the status (currently November 23), if not sooner. You will need to continue the interactive process if you are interested in reasonable accommodation.

Please let me know if I have captured the scope of our phone conversation today.

Thanks,

Elise King
(916) 752-1720

___

From: eliseking@msn.com
To: april.duenas@water.ca.gov
CC: jacklyn.smith@water.ca.gov
Subject: RE: Updated Work Status Report
Date: Wed, 29 Oct 2014 13:44:44 -0700
Hello April,

I still have no idea what you are talking about. Please give me a call.

Thank you,

Elise King
916-752-1720

___

From: April.Duenas@water.ca.gov
To: eliseking@msn.com
Subject: RE: Updated Work Status Report
Date: Wed, 29 Oct 2014 20:29:36 +0000
Elise,

understand that you have scheduled a QME exam, but for the time being, since your workers' comp claim was denied, I will retain this note for my records. But it isn't workers' comp at this time. I was just reminding you to follow whatever call in procedures as necessary. I do not do that for you.

**Ellingson, Jana**

| | |
|---|---|
| From: | Beiler, Tom@DWR |
| Sent: | Tuesday, August 11, 2015 10:32 AM |
| To: | Nelson, Jacqueline@DWR |
| Subject: | RE: WSR 8.10.25 Eking |

Thanks. If we haven't already done so, please ask the SCIF adjuster to provide us with a copy of the QME report when it's received. Thanks.

---

**From:** Nelson, Jacqueline@DWR
**Sent:** Tuesday, August 11, 2015 10:27 AM
**To:** Beiler, Tom@DWR; Williams, Melinda@DWR
**Subject:** RE: WSR 8.10.25 Eking

Yes Tom,

The QME re-evaluation was scheduled for July 17th and the Deposition was scheduled for August 18th.

*Jacqueline Nelson*

**Chief, Employee Health Services**
Department of Water Resources
Human Resources Office
(916) 654-0533 Office
(916) 653-1533 Fax
jacqueline.nelson@water.ca.gov

---

**From:** Beiler, Tom@DWR
**Sent:** Tuesday, August 11, 2015 10:24 AM
**To:** Nelson, Jacqueline@DWR; Williams, Melinda@DWR
**Subject:** RE: WSR 8.10.25 Eking

I say yes.
Also Jackie, can you remind me again as to when the QME evaluation and the deposition of Ms. King are scheduled?
Thanks.

---

**From:** Nelson, Jacqueline@DWR
**Sent:** Tuesday, August 11, 2015 10:22 AM
**To:** Beiler, Tom@DWR; Williams, Melinda@DWR
**Subject:** FW: WSR 8.10.25 Eking

Hi Tom and Melinda,

Another note from Elise King. Are we still continuing on with what we have been doing (e.g. keeping her off work and letting her know she cannot be accommodated)? Nothing is changing on Elise Kings' end of this.



STATE OF CALIFORNIA – CALIFORNIA NATURAL RESOURCES AGENCY                    **EDMUND G. BROWN JR.,** *Governor*

**DEPARTMENT OF WATER RESOURCES**
1416 NINTH STREET, P.O. BOX 942836
SACRAMENTO, CA  94236-0001
(916) 653-5791



September 6, 2016

Ms. Elise King
10 Mount Judah Place
Sacramento, California  95835


RE:    Return To Work Notice


Dear Ms. King:

This letter is to inform you that you are directed to return to work in your position of Associate Governmental Program Analyst on Friday, September 9, 2016 at 9:00 a.m. at the Department of Water Resources (DWR) Division of Integrated Regional Water Management (DIRWM) Financial Assistance Branch (FAB) located at 901 P Street, Room 213-A, Sacramento, California.  You will report to work under Susan Bradley-Hudson, Staff Services Manager I of the FAB Grant Analysis Section.

On August 12, 2016, FAB accepted your Work Status Note, indicating that you would remain off work through Thursday, September 8, 2016.  Since the end of May 2014, you have been off work on continuous leave.  You have exhausted all leave balances and leave entitlements and are not eligible for reasonable accommodation.  DIRWM can no longer approve any further extensions of leave.

We look forward to your return.  Please note, should you not report to work it will be considered an unexcused absence.  For your information, five consecutive days of such unexcused absences may be cause for separation from service under the absence without leave statute.

Sincerely,


Arthur Hinojosa, P.E., Chief
Division of Integrated Regional Water Management
California Department of Water Resources



**eliseking@msn.com**

**Subject:**      FW: Return To Work Notice
**Attachments:**   Elise King Work Status Report 9-8-16.pdf

**From:** eliseking@msn.com
**Sent:** Friday, September 09, 2016 7:30 AM
**To:** 'arthur.hinojosa@water.ca.gov'; 'art.hinojosa@water.ca.gov'
**Cc:** 'debbie.myrum@water.ca.gov'
**Subject:** RE: Return To Work Notice

Good Morning,

I am taking a stab at getting this email to you since your letter did not include your official email address.  If one of the above email addresses is not yours, I am requesting that this email be forwarded to you in it's entirety.

I do not understand why you would have gone so far as to send a letter threatening to terminate my employment when you have never reached out to me to see if my issues have any merit and whether you might be a voice of reason in this situation.  Maybe that never occurred to you.  Are you in the habit of terminating employees that you have never met or spoken with for reasons that you are not sure are accurate?  I don't know what your job description is, although it would seem that it would include fair and equitable treatment for all of your subordinates.  I will say certainly that I am do not feel that I am getting that from you.  You can say that this is just the way it is and put your big girl pants on.  And my response is, "it is the way it is until it isn't that way anymore."  That is the truth that I stand in when I examine my responsibilities to those I care for in my life.  Many of them will remain on this earth when I am dead and buried.

I have no idea what your relationship has been with the matter of my reasonable accommodation request (which is still pending due to my rights file for Request For A Rehearing and other remedies that are still available to me).  My worker's compensation claim (which is still pending and being "negotiated" by the department) and my whistle-blower complaints to both the DOF (Bond Accountability) and BSA.  To my knowledge my whistle blower complaints continue to be ignored in violation of state law (which mean that those are still pending as well).  MY EEOC case should be assigned an investigator soon.  Terminating me (which is the same as the AWOL event that you are initiating) may be one solution.  It won't make this problem go away.

I will not be coming to work tomorrow unless you can provide another location for me to work.  I have attached another Work Status Report for your approval.

Thank you,

Elise King

**From:** Myrum, Debbie@DWR [mailto:Debbie.Myrum@water.ca.gov]
**Sent:** Tuesday, September 06, 2016 8:54 AM
**To:** elise king
**Subject:** Return To Work Notice

Please see attached letter that was mailed via overnight mail today.

Thank you

1



# KAISER PERMANENTE thrive

SIZER, RICHARD ALAN (PHD)
2008 Morse Avenue
Sacramento CA 95825-2135
916-973-5000

**Patient Name:** King,Elise
**Encounter Date & Time:** 9/8/2016 4:00 PM

Please see below for this health care provider's directives and information relating to this encounter.

## Work Status Report

**Date onset of condition:**
**Next Appointment Date:**


**Off Work**
This patient is placed off work from 9/8/2016 through 10/19/2016


**Other needs and/or restrictions:**
Primary therapist: Rachaell Wood MFT

Other needs and/or restrictions:
Restricted from working in customary worksite (901 P Street) due to the risk of environmental/
interpersonal triggers flaring up/ exacerbating symptoms. In addition, she is restricted from all but
incidental auditory/visual contact with M Eusuff, T Billington and P Landis. Communication is limited
to written form only (eg email, memo). No meetings, telephone calls, conversations.

This form has been authorized by SIZER, RICHARD ALAN (PHD)


*This form contains your private health information that you may choose to release to another party;
please review for accuracy.*

Printed By: WOOD, RACHAELL K on 9/8/2016 at 4:47:17 PM

(27-4)

STATE OF CALIFORNIA – CALIFORNIA NATURAL RESOURCES AGENCY                                              EDMUND G. BROWN JR., Governor

## DEPARTMENT OF WATER RESOURCES
1416 NINTH STREET, P.O. BOX 942836
SACRAMENTO, CA 94236-0001
(916) 653-5791



September 15, 2016

Ms. Elise King
10 Mount Judah Place
Sacramento, CA 95835

Dear Ms. King:

Effective September 30, 2016, the Department of Water Resources intends to invoke the
absence without leave (AWOL) statute (Government Code Section 19996.2) because you have
been absent without leave for five (5) consecutive working days. You have been absent from
September 9, 2016 to September 15, 2016 and that absence was without approved leave.

If you disagree with these facts, you may request an informal (Coleman) hearing to be held prior
to September 28, 2016. To request a Coleman hearing, contact Jamie Cole at (916) 653-8049.
At the hearing you will have an opportunity to explain why you disagree with this intended
decision. If the AWOL separation is finalized, you will be considered to have resigned on
September 8, 2016, your last day of approved leave.

Whether or not you respond to the appointing power to request an informal (Coleman) hearing,
you still have the right to file a written request for reinstatement with the California Department
of Human Resources (CalHR), 1515 "S" Street, North Building, Suite 400, Sacramento,
California 95814, within 15 calendar days of service of this notice. A request for reinstatement
is made pursuant to Government Code Section 19996.2. If you file a timely request, CalHR or
its authorized representative will hold a hearing within a reasonable time. You are responsible
for notifying CalHR and your appointing power of any changes in your address that occur after
the effective date.

Sincerely,

Arthur Hinojosa, Chief
Division of Integrated Regional Water Management

cc:      California Department of Human Resources
         Gary Bardini, Deputy Director
         Deborah Myrum, Administrative Officer
         Kathy Aldana, Human Resources Officer (2)
         Melinda Williams, Office of the Chief Counsel
         Tom Beiler, Labor Relations Officer
         Employee Personnel File



State of California                    DEPARTMENT OF WATER RESOURCES          California Natural Resources Agency

## DECLARATION OF SERVICE

I, Marcella Keppler_____, declare:
    (Name of person serving notice)

I am and was at the time of the service of the attached paper over the age of 18 years and not a party to the proceedings involved.

On September 15, 2016_____, I served the attached *[check the appropriate box(es)]:*
                    (Date)

- [ ] Notice of Adverse Action
- [ ] Documents Upon Which the Action is Based
- [ ] Notice of Amended Adverse Action
- [ ] Notice of Rejection During Probation

- [x] Notice of AWOL Separation
- [ ] Notice of Non-Punitive Termination
- [ ] Other

_____

On Elise King_____ as follows *(check appropriate box)*:
          (Name of person served)

- [ ] By Personal Service, by personally delivering to and leaving with said person a copy at the address shown below.

- [x] By Service by Mail, by placing a true copy thereof in a sealed envelope addressed to the last known address of said person at the address as shown below and depositing said envelope in [ ] U.S. Certified Mail or [x] U.S. Express Mail or Other Overnight Delivery service  with return receipt requested and postage fully prepaid, at Sacramento_____, California.
                                    (City where posted)

Address *(show address where personal service was made or mailing address used)*:
10 Mount Judah Place
Sacramento, CA  95835

I declare under penalty of perjury that the above is true and correct.
Executed on September 15, 2016___ at Sacramento_____, California.
          (Date)                        (City)

*Marcella Keppler*
                                    (Signature of person serving notice)

Routing:
Original to Classification and Succession Planning (Except on AWOL Separation)
Original to CalHR, Legal Office (Only AWOL Separation)

cc:   Chief, Human Resources Office
      Office of Workforce Equality (if applicable)
      Employee Personnel File
      Chief, Labor Relations Office
      Office of the Chief Counsel
      Administrative Officer
      Division/Region/Office Chief
      Skelly Officer

DWR 2887 (Rev. 10/13)

## TRANSFER OR SEPARATION FROM DWR

1. Complete Part 1 and Section A, B or C and Part D on Page 1 and fax/deliver both pages to:
   a. Fiscal Services - Email scanned copy to Paypd1@water.ca.gov
   b. Human Resources Office - FAX (916)653-9509, Room 070
   c. Employee Health Services - FAX (916)654-9531, Room 030N
   d. Office of Workforce Equality, FAX (916) 654-5663, Room 660
2. Make a copy for your records and route the original, with appropriate signatures, of both pages to the Human Resources Office
   Human Resources Office
   Payroll, Benefit and SAP Administration
   PO Box 942836
   Sacramento, CA 95814
   Section D requires additional signatures

### PART 1 – To be completed by Supervisor or Employee

| EMPLOYEE NAME (First, Middle, Last) | | EMPLOYEE PERSONNEL NO. | DWR POSITION NO. | SAP POSITION NO. |
|---|---|---|---|---|
| Elise King | | 8194 | 1650-5393-004 | 50012619 |

| FORWARDING ADDRESS [Complete STD 686/687 (EAR) for address changes] A street address is required if overnight delivery of final warrant is necessary | ADDRESS TO WHICH WARRANT/STATEMENT OF EARNINGS SHOULD BE SENT (if different) A street address is required if overnight delivery of final warrant is necessary |
|---|---|
| 10 MOUNT JUDAH PLACE  SACRAMENTO, CA 95835 | |

| DATE & TIME EMPLOYEE GAVE WRITTEN NOTICE OF SEPARATION/RETIREMENT | SEPARATION DATE (Must be minimum of 1 day prior to retirement start date)  Sept. 9, 2016 (BoB) |
|---|---|

| LAST DAY PHYSICALLY WORKED  05/30/14 | FINANCIAL DISCLOSURE POSITION?  ☐ Yes ☒ No | TEC PENDING SUBMISSION TO ACCOUNTING?  ☐ Yes ☒ No | REIMBURSED FOR MOVING EXPENSES?  ☐ Yes ☒ No |
|---|---|---|---|

| CIP Access Revoked (if applicable)?  ☐ Yes ☐ No | DISPOSITION OF LAST WARRANT  ☒ Mail ☐ Pick up ☐ Send to Unit |
|---|---|

**NOTE:** If you are leaving a position that is designated in the Department's Conflict of Interest Code, you should expect to receive a Statement of Economic Interests (FPPC Form 700). If you do not receive a leaving office statement within 10 days of your separation date, please contact the Assistant Filing Officer at (916) 651-6851.

### A. Leaving DWR (Employee MUST complete Parts A, B, or C, and D below)

☒ Leaving State Service    Reason Separation from State Service – AWOL Separation

☐ Transfer    Agency/Department _____

TYPE OF APPOINTMENT
☐ Permanent    ☐ Limited Term/T&D    Duration of LT/T&D _____

### B. Retirement (See EPG Human Resources 3: Retirement, Resignation or Transfer Enterprise Process Guide)

☐ Retirement    Years of State Service _____

☐ Request Retired Employee ID card. Prepare letter of transmittal (See DAM 3951 and EPG Human Resources 3: Retirement, Resignation or Transfer Enterprise Process Guide)

| LEAVE HOURS TO BE USED PRIOR TO RETIREMENT DATE | RETIRING EMPLOYEE ELIGIBLE FOR A MOMENTO?  ☐ Yes ☐ No |
|---|---|

| LUMP SUM DEFERRAL TO NEXT TAX YEAR?  ☐ Yes ☐ No | LUMP SUM DEFERRAL TO SAVINGS PLUS (401K/457)?  ☐ Yes ☐ No | IF YES:  ☐ Current Tax Year ☐ Next Tax Year |
|---|---|---|

### C. Leave of Absence (See DAM Section 3170 and Human Resources 11: Leave of Absence Enterprise Process Guide)

| TYPE OF LEAVE OF ABSENCE  ☐ Non-Discretionary ☐ Discretionary | REASON FOR LEAVE | |
|---|---|---|

| Beginning: _____ | Ending: _____ | TOTAL TIME OFF (Months/Weeks/Days) |
|---|---|---|

| ☐ RECOMMEND APPROVAL ☐ DISAPPROVE | SUPERVISOR SIGNATURE | DATE |
|---|---|---|
| ☐ RECOMMEND APPROVAL ☐ DISAPPROVE | FIELD DIVISION/BRANCH CHIEF SIGNATURE | DATE |
| ☐ APPROVED ☐ DISAPPROVE | DIVISION CHIEF SIGNATURE | DATE |

### D. Signatures

| EMPLOYEE SIGNATURE  ► Not available for signature | DATE/TIME  9/28/16 | SUPERVISOR SIGNATURE  ✗ Susan M B Hudson | DATE/TIME  9.28.16 12:45pm |
|---|---|---|---|

DWR 2993 (Rev. 3/16)    Page 1 of 2



**Department of Water Resources**
**Enterprise Process Guide**
**Employee Health Services 6**
**Reasonable Accommodation for Disabilities and Medical Conditions**
**Revised January 28, 2011**

| | |
|---|---|
| **Policy:** The Department of Water Resources (Department) is committed to providing a workplace in which all individuals are treated with respect and professionalism. Consistent with this commitment, the Department complies with all applicable State and federal laws, rules, regulations, and policies regarding equal opportunity. The Department provides reasonable accommodation to employees who, because of their disability or medical condition, can perform the essential functions of their job with or without accommodation. The Department also provides accommodation to applicants who may need assistance competing in exams and hiring interviews. | |
| **Reference:** | <ul><li>DAM 3212.5 - Reasonable Accommodation for Disabilities and Medical Conditions</li><li>DAM 3213 - Equal Employment Opportunity Policy Statements</li><li>DAM 3214.5 - Reasonable Accommodation Program Government Code 12926 - 12926.1</li><li>Government Code 12900 - 12906 - California Fair Employment and Housing Act</li><li>Government Code 19230 (a-c) - 19231</li><li>Rehabilitation Act Section 504</li><li>Americans With Disabilities Act</li></ul> |
| **Responsibility:** | <ul><li>Human Resources Office<ul><li>Selection Services<ul><li>Classification and Placement (C&P) Analyst</li></ul></li></ul></li><li>Labor Relations and Employee Health Services (LR & EHS) Chief</li><li>Employee Health Services (EHS) Chief<ul><li>Return to Work Coordinator (RTWC)</li></ul></li><li>Facilities, Transportation, and Property Branch (FTPB) Chief</li></ul> |
| | <ul><li>Division of Engineering (DOE), Architecture Unit</li><li>Supervisor</li><li>Administrative Officer (AO)</li><li>Division/Office Chief</li></ul><br>**Note: Only the LR & EHS Chief has the authority to deny a request for Reasonable Accommodation.** |
| **Forms** | <ul><li>Reasonable Accommodation Request (DWR 4007)</li><li>Reasonable Accommodations Guidelines for the Examination and/or the Hiring Interview Process (DWR 4008)</li><li>Authorization for the Release of Medical Information (DWR 4171)</li><li>Request for Building Services (DWR 4194)</li><li>Examination and/or Employment Application (STD. 678)</li></ul> |

**Definition of Terms**

**Direct Threat:** A significant risk of substantial and imminent harm to the health and safety of

the individual or others, wh   cannot be eliminated or reduced to   acceptable level by reasonable accommodation.

**Essential Functions:**  The job duties which are fundamental to the position.

**Interactive Process:**  Consulting with the employee making the request to ascertain the precise job-related limitations, determine how or whether the limitations can be overcome with reasonable accommodation, identify potential accommodations, and assess their effectiveness.

**Medical Condition (as defined in the Fair Employment and Housing Act):**  Any health impairment associated with a diagnosis of cancer when competent medical evidence indicates that the cancer has been cured or is in remission.  Certain genetic characteristics are also covered by this statute.

**Mental Disability:**  Any mental or psychological disorder that requires accommodation.  This includes having a record of such impairment or being regarded or treated as having such impairment.

**Person with A Disability:**  Anyone who has either a physical or a mental impairment, which limits one or more of the person's life activities, has a record of such impairment, or is regarded as having such impairment.

**Physical Disability:**  Any physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that affects one or more body systems and limits a major life activity.  This includes having a record of such impairment or being regarded or treated as having such impairment.

**Request for Accommodation:**  A statement by an individual or other responsible party acting on behalf of the employee, of their need for an adjustment or change at work, in the application process, or in a benefit or privilege of employment for a reason related to a disability or medical condition.

**Undue Hardship:**  Any action that imposes a significant difficulty or expense or that would fundamentally alter the nature of the operation of the program.

**General Information:**

The need for reasonable accommodation is determined on a case-by-case basis.  A decision to grant, modify, or deny a request for reasonable accommodation will only be made after obtaining all necessary information.

Reasonable accommodation is defined as a logical adjustment made to a job and work environment which enables a qualified person with a disability to perform the essential functions of his or her position and to take part in any and all aspects of the employment process.

There are five examples of reasonable accommodation to which the Department must respond:

- Request for accommodation to allow an employee with a disability to continue to perform the essential functions of his or her position, or to be reassigned to a vacant position.
- Request for accommodations to allow a person with a disability to perform the essential functions of their position to which he or she was newly hired.
- Requests for accommodations to allow an employee with a disability to participate in training activities available to non-disabled employees for job improvement and self development.

- Request for accommodations in the civil service examination process to allow a candidate with a disability to compete with non-disabled candidates as equally as possible.
- Request for accommodations to allow an employee with a disability to have equal access to services and privileges afforded to non-disabled employees.

## Funding

The Department has funding available to pay for approved reasonable accommodations. The Human Resources Office (HRO) will pay for those accommodations that cost up to $250. HRO will pay 50% of the costs from $250 to $1,000. The employee's Division/Office is responsible for the remaining costs. The employee's Division/Office is also responsible for costs associated with contracting for sign language interpreters, Braille transcribers, etc.

The cost of eliminating physical barriers, such as modifications to physical structures, will be paid for by the organization where the modification is required.

## Timeframe

The Department is committed to processing employee's Requests for Reasonable Accommodation through the interactive process in a timely manner.
Click on the appropriate links below for procedures on:

- Essential Functions
- Examinations, and the Interview and Hiring Process
- Physical Accessibility
- Appeal Rights

**Procedure: Essential Functions**

| | Action | Responsible Party | Procedure |
|---|---|---|---|
| 1 | Submit Request | Employee or Representative | Requests for Reasonable Accommodation may be made verbally or in writing by the employee or by an individual acting on behalf of the employee. Once the need for an accommodation is known, the Department requests that the employee complete a Reasonable Accommodation Request (DWR 4007). |
| | | | A completed hard copy of the DWR 4007 can EITHER be mailed to Employee Health Services (EHS), 1416 9th Street, Room 330, Sacramento, CA 95814, OR the form can be scanned and emailed to the EHS office. |
| | | | Employees with questions about completing the DWR 4007 can contact EHS at (916) 654-0533. |
| | | | **Note:** A family member, health care professional, or other responsible party (representative) may request an accommodation on behalf of an employee. If the request is submitted to someone other than an EHS RTWC, the individual receiving the request must forward the request to EHS without delay. |



| 2 | Initial Review of Request | RTWC | The RTWC performs the initial review of the request. |
|---|---|---|---|
| | | | If the request was received verbally, the RTWC begins the interactive process and ask the employee to complete the DWR 4007. |
| | | | The RTWC reviews the DWR 4007 for completeness and request any incomplete information from the employee. |
| | | | Immediately upon receipt of a request for reasonable accommodation, verbal or written, the RTWC sends a letter to the employee acknowledging receipt of the request. |
| 3 | Initiate Interactive Process | RTWC | The RTWC reviews the request and supporting documents. This review ensures compliance with applicable laws, rules and regulations as well as consistency throughout the Department regarding implementation and funding. |
| | | | The RTWC initiates the interactive process with the employee in a timely and good-faith manner. |
| | | | **Note:** The purpose of the interactive process is to: |
| | | | • Determine if the requestor is a person with a qualifying disability. |
| | | | • Determine if adequate medical documentation is provided. If necessary, request that the employee complete an Authorization for the Release of Medical Information (DWR 4171). |
| | | | • Initiate discussions with the employee's health care provider(s) to obtain necessary medical opinions on any reasonable accommodations under consideration. |
| | | | • Identify the precise job-related limitations and their effects on the employee's ability to perform the essential functions of the job in question. |
| | | | • Identify how those limitations can be reasonably accommodated. |

| | | | • Con : with professionals in the reasonable accommodation field and explore available options.<br>• Identify potential accommodations and assess their effectiveness. |
|---|---|---|---|
| 4 | Administrative Review | RTWC<br><br>AO | The RTWC discusses the request and the possible remedies with the Division's/Office's AO. The AO participates in the interactive process by assisting the RTWC in identifying possible accommodations that meets the business needs of the Division/Office.<br><br>**Note:** Throughout the process, the RTWC consults with the Division/Office Chief, AO, the supervisor, and employee's representative as needed and appropriate. Legal advice is obtained from the Office of the Chief Counsel when necessary. |
| 5 | Management Review | RTWC<br><br>Chief, EHS<br><br>AO<br><br>Division/Office Chief | The RTWC, Chief of EHS, and AO review their recommendations with the Division/Office Chief. The Chief, in consultation with the supervisor, AO, RTWC, and the Chief of EHS considers the request and the identified options. The group makes a determination regarding which of the possible accommodations can be provided to the employee while meeting the business needs of the Division/Office.<br><br>The Division/Office Chief has the following options: |
| | | | 1) Approve the request: the RTWC works with the AO to finalize the details. (Proceed to step 6.)<br>2) Modify and approve the request: the RTWC works with the AO to finalize the details. (Proceed to step 6.)<br>3) Recommend denial of the request and provide EHS with a detailed written explanation stating why the employee cannot be accommodated. (Proceed to step 7.) |
| 6 | Approve the Request | RTWC | The RTWC reviews the request with the Chief, EHS. The Chief, EHS gives final approval of the request when all the criteria for a reasonable accommodation have been met. |

28-6

| | | | If approved, the RTWC notifies the employee, the Division/Office Chief, the AO, and the supervisor that the accommodation has been approved.<br><br>Notice is given in writing to the employee and copies are given to the Division/Office Chief and the supervisor. The RTWC ensures that the required forms and documents are completed and processed.  (Proceed to step 9.) |
|---|---|---|---|
| 7 | Review Recommendation for Denial | RTWC<br><br>Chief, EHS | When the written recommendation for denial is received, the RTWC discusses the recommendation with the Chief, EHS. |
| 8 | Obtain Approval to Deny Request | Chief, LR & EHS | The Chief, LR & EHS determines if the justification for denial provided by the Division/Office is acceptable.<br><br>If the justification does not meet the standards for denial, the Chief, LR & EHS notifies the Division/Office Chief and other staff as appropriate.  The Chief, LR & EHS may recommend that the parties resume the interactive process (step 3).<br><br>If the justification meets the standards for denial, the Chief, LR & EHS notifies the employee in writing of the reason(s) for denial and informs the employee of their appeal rights (see **Appeal Rights on the last page of this Guide**).  The Chief, LR & EHS also advises the Division/Office Chief, the AO, and the employee's supervisor. |
| 9 | Implement Reasonable Accommodation | Division/Office Chief<br><br>AO<br><br>Supervisor<br><br>RTWC | The employee's supervisor implements the accommodation as approved by the Division/Office Chief and the Chief, EHS.<br><br>The AO ensures completion of appropriate documents/forms (i.e. purchase requisition requests) and forwards the documents to the Division/Office Chief for review.<br><br>**Note:**  If the supervisor, AO, and the employee agree on an acceptable accommodation, it may be implemented at any time during the process, if approved by Chief, EHS. |



| Procedure: Examination | | ne Interview and Hiring Process | |
|---|---|---|---|
| 1 | Request for Accommodation | Applicant | The applicant notifies the C&P Analyst or the hiring supervisor that an accommodation is needed by checking "YES" for Question Number 2 on the Examination and/or Employment Application (STD. 678) by the final filing date indicated on the bulletin. The applicant may also contact the hiring authority directly. |
| 2 | Review the Request | C&P Analyst<br><br>Hiring Supervisor | The C&P Analyst or hiring supervisor must contact the applicant upon notification of the need for accommodation. The C&P Analyst or hiring supervisor must determine the type of reasonable accommodation needed (large print, interpreter, reader, etc). The C&P Analyst or hiring supervisor documents the accommodation needed on the Reasonable Accommodation Guidelines (DWR 4008) for the Examination and Hiring Interview Process.<br><br>**Note:** The C&P Analyst or hiring supervisor consults with the RTWC as needed to determine the most effective accommodation and to make the necessary arrangements. |
| 3 | Approve Request | C&P Analyst<br><br>Hiring Supervisor | The C&P Analyst or hiring supervisor approves the request, notifies the applicant and makes the arrangements for the accommodation. |
| | | | **Note:** If assistance is needed to secure the reasonable accommodation, the C&P Analyst or hiring supervisor contacts the RTWC as soon as the application is reviewed, accepted and the specific accommodations required have been identified. |
| 4 | Deny Request | C&P Analyst<br><br>Hiring Supervisor | If the C&P Analyst or hiring supervisor determines that the requested accommodation is not reasonable, they must immediately notify the RTWC to discuss the situation. If the C&P Analyst or hiring supervisor recommends a denial of the requested accommodation, he or she must provide written justification and documentation to the RTWC. |



| 5 | Review Justificatic | RTWC<br><br>Chief, EHS | The RTWC ‚ iews the justification and prepares a recommendation for the Chief, LR & EHS. |
|---|---|---|---|
| 6 | Final Review | Chief, LR & EHS | The Chief, LR & EHS determines if the justification for the denial is reasonable and consistent with law.<br><br>If the justification does not meet the standards for denying a request, the Chief, LR & EHS notifies the Chief, Selection Services or the hiring supervisor.  (Return to step 3.)<br><br>If the justification meets the standards for denial, the Chief, LR & EHS notifies the applicant in writing of the reason(s) for the denial and informs the applicant of his or her **appeal rights. (See Appeal Rights on the last page of this Guide).** The Chief, LR & EHS also notifies the C&P Analyst and the Chief, Selection Services or the hiring supervisor. |

**Procedure:  Physical Accessibility**

| 1 | Submit Request | Employee or Representative | The employee who needs reasonable accommodation regarding physical accessibility submits a request, verbally or in writing, to anyone in their chain of supervision or to EHS using the Reasonable Accommodation Request (DWR 4007), and attaches any appropriate supporting documentation. All verbal requests should be followed by submission of a completed DWR 4007 and the supporting documentation. |
|---|---|---|---|
| 2 | Receive and Forward Request | Employee, Supervisor or Responsible Party | The employee, supervisor, or responsible party forwards the request to EHS.  If the request is made verbally it should be documented using the Reasonable Accommodation Request (DWR 4007), and forwarded to EHS. |
| 3 | Review the Request | RTWC | The RTWC submits a Request for Building Service (DWR 4194), to the Chief of Facilities, Transportation, and Property Branch (FTPB). |
| 4 | Determine if an On-site Review is Needed | Chief, FTPB | The Chief, FTPB, reviews the request and, in consultation with the RTWC, determines if an on-site review is warranted. |



| | | | If an on-sit ⋅view is warranted, the Chief, FTPB requests the DOE, Architecture Unit to conduct the review. |
|---|---|---|---|
| 5 | Determine if Modifications Are Warranted | DOE, Architecture Unit | DOE's Architecture Unit, following an on-site review, determines if the requested modifications are warranted for compliance with the California Code of Regulations, Title 24 and the American with Disabilities Act.<br><br>The findings must be submitted in writing (e-mail is acceptable) to the Chief, FTPB. |
| 6 | Modifications are Warranted | Chief, FTPB | If the work/modifications are warranted, the Chief, FTPB informs the RTWC and initiates the procedures to ensure the work is completed. |
| 7 | Modifications Are Not Warranted | Chief, FTPB | The Chief, FTPB provides the RTWC with the basis for the denial. |
| 8 | Review Denial and Develop Recommendation | RTWC | The RTWC reviews the reason(s) for denial and develops and discusses recommendations with the Chief, EHS. |
| 9 | Review Denial and Notify Applicant | RTWC<br><br>Chief, EHS<br><br>Chief, LR & EHS | The Chief, LR & EHS determine(s) if the justification for denial is based on acceptable standards and applicable law. If the justification does not meet the standards for denial, the Chief, LR & EHS notifies the Chief, FTPB and other staff as deemed appropriate. If the denial is justified, the Chief, LR & EHS notifies the applicant in writing. The notice includes the reasons for the denial and the applicant's **appeal rights** (See <u>Appeal Rights</u> below). |

**Procedure: Appeal Rights**

| 1 | Appeal of Denial of Request for Reasonable Accommodation | Employee or Applicant | The employee or applicant may appeal directly to the State Personnel Board's Appeals Division. Appeals must be submitted in writing within 30 calendar days following the written denial of reasonable accommodation. The appeal should be addressed to the State Personnel Board, Appeals Division, 801 Capitol Mall, Sacramento, CA 95814.<br><br>Employees/applicants denied reasonable accommodation also have the right to concurrently appeal to the State Department of Fair Employment and Housing and the Federal Equal Employment Opportunity Commission. |
|---|---|---|---|

Enterprise Process Guides are maintained by the Management Analysis Office.

AUGUST 21 2015 3:12 PM

# The worst state office building in Sacramento

E King worked here btwn 2/10 and 6/4

## The State Worker

Jon Ortiz chronicles civil-service life for California state workers

The Resources building is the worst state building in Sacramento, according to a state study. **Andrew Holzman**

BY ANDREW HOLZMAN

*aholzman@sacbee.com*

*California state government's recent survey of the buildings it owns ranked them for physical condition – the ratio of repair costs to replacement costs – and safety. None of the Sacramento buildings' scores fell into the "very poor" range, but we've focused in this series on five that are listed as "poor," meaning they will need large-scale renovation soon.*

The windows at California's Resources Building have a foggy glaze, and that shouldn't be surprising – a state study says they haven't been washed in more than 10 years, a wait nine years longer than most other state windows have endured after a drought-related washing moratorium.

According to Department of General Services spokesman Brian Ferguson, the crane-like device used for cleaning them is broken.

The Resources Building is the worst state structure in Sacramento, according to the study, which was commissioned under state law. At 1416 9th Street, the building houses departments of California's Natural Resources Agency, including Parks and Recreation, Water Resources and others.

The building could have scored first in part because it's the tallest in the top-five group and also the one with the most occupants, both factors in the study's formula for measuring safety. But it has other safety issues, too: It's one of only two buildings in the top five for which the report recommends asbestos and lead paint removal.

Even without considering safety, Resources still ranks at the top of the list. With $148,827,594 needed for repairs in the next 12 months, the building has the



highest ratio of repair costs to replacement value for any of the facilities considered.

*Andrew Holzman: 916-326-5545, @andrewlholzman*

**RESOURCES BUILDING**

**Address:** 1416 Ninth Street

**Year constructed:** 1964

**Major tenant(s):** Department of Fish and Wildlife, the Department of Forestry and Fire Protection, the Department of Parks and Recreation, the Department of Water Resources, and the Natural Resources Agency.

**Capacity:** 2,327 people

**Estimated cost of repairs needed in next 12 months:** $148,827,594

**Safety issues:** Expanded sprinkler system recommended. Electrical breakers are a type with a history of safety problems and must be replaced. Asbestos in floor, ceiling and insulation.

**Accessibility issues:** Some toilets and water fountains need to be replaced for accessibility.

**Other urgent repairs needed:** Windows have not been cleaned in ten years due to broken window-cleaning apparatus, roof surface is "spongy" and may leak soon, seismic bracing needed.

**Historic designation:** Considered historic on the basis of age. Changes must be reviewed by the state historic preservation officer.

*Source: Facility Condition Assessment by EMG, a consultant*

Read more here: http://www.sacbee.com/news/politics-government/the-state-worker/article31833003.html#storylink=cpy

AUGUST 17, 2015 9:30 AM

# Sacramento's third worst state office building: Bonderson

*E King worked here from 6/11 through 5/27/14 and continuing*

## **The State Worker**

Jon Ortiz chronicles civil-service life for California state workers

The Bonderson building, at 901 P Street, was been identified by a survey as Sacramento's third worst state building.

BY ANDREW HOLZMAN

*aholzman@sacbee.com*

*California state government's recent survey of the buildings it owns ranked them for physical condition – the ratio of repair costs to replacement costs – and safety. None of the Sacramento buildings' scores fell into the "very poor" range, but we've focused on five that are listed as "poor," meaning they will need large-scale renovation soon.*

On a survey of state office buildings in Sacramento, the Paul Bonderson Building is identified as the third worst.

Built in 1983, it's the youngest building in the list's five worst. A consultant for the state says Bonderson needs about $10 million in repairs, for new flooring, ceiling tiles and ventilation improvements, among other things.

For now, the Department of General Services will maintain the building as-is, without major renovations. But because the Bonderson building is among the state's top three worst, DGS is also studying how it could be replaced.

The Paul Bonderson building is named after a decades-long state employee.

"Paul R. Bonderson has ably and effectively served in California's statewide and regional water quality control programs, since inception of the Dickey Water Pollution Control Act in 1949," a resolution from the Colorado River Basin regional water board declared upon his retirement in 1981.

The resolution says Bonderson was an especially well-trusted and widely liked employee.

29-4

*Andrew Holzman: 916-326-5545, @andrewlholzman*

## PAUL BONDERSON BUILDING

**Address:** 901 P Street

**Year constructed**: 1983

**Major tenant(s):** Department of Consumer Affairs' Board of Chiropractic Examiners, High Speed Rail Authority, Department of Water Resources

**Capacity:** 518 people

**Estimated cost of repairs needed in next 12 months:** $10,816,467

**Safety issues:** Building lacks fire sprinkler system.

**Accessibility issues:** Elevators need basic upgrades for accessibility; guard rail for people who are blind recommended below lobby staircase.

**Other urgent repairs needed:** Ventilation system needs to be replaced; new paint, flooring and ceiling tiles needed.

**Historic designation:** None.

*Source: Facility Condition Assessment by EMG, a consultant.*

Read more here: http://www.sacbee.com/news/politics-government/the-state-worker/article31414880.html#storylink=cpy



**From:** King, Elise@DWR
**Sent:** Tuesday, November 12, 2013 11:05 AM
**To:** King, Elise@DWR
**Subject:** FW: WARNING: Rat Sightings
Just keepin' my feet up.  Hazardous duty.  At least the skunk problems are over. ☺

**From:** Woolridge, Linda@DWR
**Sent:** Tuesday, November 12, 2013 10:10 AM
**To:** DWR DIRWM Financial Assistance Branch
**Subject:** FW: WARNING: Rat Sightings
FYI!

**From:** Gottfried, Jennifer@DWR
**Sent:** Tuesday, November 12, 2013 9:54 AM
**To:** DWR DSIWM Statewide Infrastructure Investigations Branch
**Cc:** Layne, Sandy@DWR; Weber, Cynthia@DWR; Woolridge, Linda@DWR; Van Buren, Nancy@DWR; Avila, Andria@DWR; Nolan, Adrienne@DWR; Grant, Chas@DWR
**Subject:** WARNING: Rat Sightings

 Hello,
There have been a few new rat sightings last Friday afternoon of two large rats on the loose in room 213A. Tracey will be starting the process of getting the pest control guy back out to set some traps.
It is very important for you to report any sightings of rats OR evidence of rat activity, such as missing or out of place items, chew marks, things knocked onto the floor, and droppings. This will help the pest control folks figure out which holes the rats are likely coming out of, and where to set the traps to be most effective.
If you see one (dead or alive), please do not approach the rat, as they carry a variety of nasty diseases and parasites that may be contagious, including rabies.
Please use the yellow Clorox wipes to sanitize your desktop, phone, keyboard, and anything else you touch where a rat may have had access.

Also, please keep all food items put away in locked upper flipper bins. The rats can get into the lateral file cabinets by crawling up the back side and into the bin area, so that is not a secure place for food items. The upper flippers seem to be the only secure area they have been unsuccessful in penetrating, when they are locked.
If you see any activity or evidence of activity, please notify Tracey and cc me, or notify your supervisor, immediately.
Thank you for your patience while we address this problem.
Jennifer Gottfried
  Desk 916-651-9248
  Cell 916-204-9414

**Williams, Melinda@DWR**

| | |
|---|---|
| From: | Lindberg, Tracey@DWR |
| Sent: | Tuesday, September 22, 2015 8:12 AM |
| To: | Billington, Tracie@DWR |
| Subject: | FW: Pest Control |

Tracey Lindberg
Division of Statewide Integrated Water Management
Division of Integrated Regional Water Management
Administrative Office
phone  916-651-9231
fax       916-651-9296

**From:** Myrum, Debbie@DWR
**Sent:** Monday, March 03, 2014 8:42 AM
**To:** DWR DIRWM Regional Planning Branch; DWR DIRWM Financial Assistance Branch; DWR DIWM Administration Services Office; DWR DIWM Project Services Office; DWR DSIWM Integrated Data and Analysis Branch; DWR DSIWM Statewide Infrastructure Investigations Branch; DWR DSIWM Strategic Water Planning Branch; DWR DSIWM Water Use and Efficiency Branch
**Cc:** Layne, Sandy@DWR; Guivetchi, Kamyar@DWR; Landis, Paula@DWR
**Subject:** FW: Pest Control

Good Morning,

This is a reminder...PLEASE DO NOT leave ANY food, candy, gum, etc. in you cubicles/offices.  We are trying to get rid of the rodents, however, as long as there is a food source for them, they will keep coming back.

Thank you

Debbie Myrum
916-651-9210

**From:** Myrum, Debbie@DWR
**Sent:** Wednesday, September 18, 2013 11:23 AM
**To:** DIRWM Financial Assistance Branch; DIRWM Regional Planning Branch; DIWM Administration Services Office; DIWM Project Services Office; DSIWM Integrated Data and Analysis Branch; DSIWM Statewide Infrastructure Investigations Branch; DSIWM Strategic Water Planning Branch; DSIWM Water Use and Efficiency Branch
**Subject:** Pest Control

Hello,

The Pest Control company was here this morning.  He said he didn't see any evidence of rodent activity.  In an effort to try to prevent any reoccurrence, we STRONGLY urge people to keep any/all food products in sealed containers.  If food is not readily accessible, they will not come around.

IF you see any signs of rodent activity, please contact Tracey Lindberg at 651-9231, or, if Tracey is unavailable, please contact me.

Thank you



STATE OF CALIFORNIA – CALIFORNIA NATURAL RESOURCES AGENCY                                        EDMUND G. BROWN JR., Governor

**DEPARTMENT OF WATER RESOURCES**
1416 NINTH STREET, P.O. BOX 942836
SACRAMENTO, CA  94236-0001
(916) 653-5791

**FILE COPY**



July 10, 2014

Elise King
10 Mount Judah Place
Sacramento, California  95835

Dear Ms. King:

The Employee Health Services Office (EHS) is in receipt of your workers' compensation claim form alleging an injury or illness on May 27, 2014 and I am the Return to Work Coordinator assigned to your case.

If you choose to seek medical treatment for this alleged injury or illness, you must make an appointment with one of our Department's Medical Provider Network (MPN) treating physician's unless the Department has documentation of a pre-designated treating physician on file, prior to your date of injury.

It is important that you provide me with a copy of your visit verification or off-work excuse, from the physician, each time that you are seen for medical treatment and that you notify your supervisor immediately if you are provided work restrictions or excused from work. You must continue to follow your Division's time off and call-in procedures.

In the event that the treating physician excuses you from work for more than three days, continuously or intermittently, and your workers' compensation claim is pending decision or is denied, the Department will begin provisional coverage for your days off of work under the Family Medical Leave Act (FMLA). The FMLA is considered an unpaid leave of absence that allows qualified employees to take up to 12 weeks of unpaid leave annually when the employee, or a qualified family member, has a serious health condition certified by a Health Care Provider. During this time, you may be able to utilize existing leave credits and the Department will maintain your health, dental, and vision coverage. In the event that you do not provide a Health Care Provider's Certification timely or your workers' compensation claim is accepted, your provisional FMLA coverage will be canceled. Enclosed are the forms for your completion and return for eligibility in this program:

- DWR 29 – FMLA Leave Request/Notice – Please complete the employee information portion of this form and return to me for processing.

- DWR 29a – FMLA Certification of Health Care Provider – Please have your health care provider complete this form and return to me for processing.

The following options may be available to you if you are medically excused from work while your alleged injury or illness is pending decision or if the claim is denied:

Non-Industrial Disability Insurance (NDI): Excluded employees and rank-and-file employees in bargaining units 2, 9, 10, and 12, who have elected to earn Vacation & Sick Leave are eligible for the State's NDI program.  NDI will pay the maximum amount of $135 each week an employee is unable to work due to a non-work related injury or illness.



Elise King
July 10, 2014
Page 2

Enhanced Non-Industrial Disability Leave (ENDI):  Excluded employees and rank-and-file
employees in bargaining units 2, 9, 10, and 12, who have elected to earn Annual Leave
are eligible for the ENDI program.  ENDI will pay approximately 50% of an employee's
regular wages for each week that he or she is unable to work because of a non-work
related injury or illness.  Employees may choose to use the cash value of available leave
credits to supplement ENDI to receive either 75% or 100% of their regular wages.

State Disability Insurance (SDI):  Rank-and-File employees in units 1, 4, 11, 14, 15, and
21 are eligible for the SDI program.  SDI is a wage continuation program for up to 52
weeks and is available to employees who have been certified for a non-work related
injury or illness.  Employees eligible for SDI benefits may receive approximately 50% of
their regular wages, and have the option to use the cash value of up to 40 hours of their
leave credits each month to supplement their income.

Leave Balances:  You may be able to use your existing leave balances to supplement
your income.

Catastrophic Leave (CAT Leave):  If you choose to use your existing leave balances, and
find that you are in danger of exhausting such balances prior to returning to work, you
may request CAT leave donations.

If you are interested in pursuing any of the aforementioned options or for further discussion,
please contact me at (916) 653-8806.  My confidential fax number is (916) 653-1533.

Sincerely,

Maria Lee-Beason
Return to Work Coordinator
Employee Health Services

Enclosure(s)

cc: Debbie Myrum, DSIWM
    Deserie Campos, Room 320
    EHS FILE

Discovery 1 - 001006



**eliseking@msn.com**

| | |
|---|---|
| **From:** | elise king [eliseking@msn.com] |
| **Sent:** | Tuesday, July 15, 2014 11:58 PM |
| **To:** | maria.lee-beason@water.ca.gov |
| **Subject:** | WC Status/Conversation |

Hello Maria,

It was a pleasure speaking with you on Wednesday afternoon. I just wanted to clarify some things that we discussed and find out if my worker's compensation paperwork that is to go to the SCIF has been completed by my department and sent over to move my worker's compensation claim forward. I filled out the claim on July 3rd and gave it to Lee Lee. I am still not clear on the dates and protocols that I am supposed to be looking for as far as deadlines for filing the claim for both myself and my department (IRWM/FAB). Could you please confirm:

1. I mentioned that I received a voice mail from Zaffar Eusuff, my supervisor, on Tuesday, July 8th, notifying me that IRWM/FAB were informed by Lee Lee in the benefits department on Monday, July 7th, that I would be out through July 27th. I emailed the Work Status Report on July 1st and July 2nd, and again delivered a hard copy of the information with the Work Status Report to Deserie Campos via Lee Lee on July 3rd due to not having any response from the benefits department from these emails and follow up voice mail inquiries to Deserie.

Dr. Eusuff stated in his voice mail to me on Tuesday, the department decided that it could not (or would not) make the accommodation that my doctor requested and that meant that in their eyes I would remain off until July 27th or longer.

I did not receive a written statement from them in regards to the accommodation and inquired whether you were aware of the reasons that IRWM decided that they could not honor the doctor's accommodation. You stated that you were not aware of the reasons and that the department staff was still working on putting together the explanation for the decision. I requested a copy of the explanation from you. You stated that it would be outlined in the Employer's Report to SCIF and you would not be able to provide me with a copy of that report or any documentation of the reasons IRWM decided not to make an accommodation. You recommended that I request the Employer's Report from SCIF once I was assigned a Claims Adjuster. You stated that the person assigned to my claim would probably be Dominque Altizer and declined to provide a phone number or email address for her as well.

2. I mentioned that Dr. Eusuff also stated in the voice mail that there was a phone call-in protocol and that I was not aware of such policy. Up until that time I was instructed that I would only need to continue to provide any Work Status extensions to the Personnel Office and that they would make the necessary notifications to the

31-2

appropriate staff in IRWM. I asked you what the protocol was for DWR for phoning in to my unit during an absence due to FMLA or Worker's Compensation to which you stated that you were not aware of it and there may be one. You suggested that in the future that I would email a copy of the Work Status Report to my supervisor and cc you (your department). However, I noted that there my be HIPAA restrictions regarding the transmission of information to my department staff. You agreed that I could send you the Work Status Report and that you would notify the proper staff in IRWM.

I look forward to hearing from you soon.

Elise King

916-752-1720

**eliseking@msn.com**

**Subject:**          FW: Work Status Report E King
**Attachments:**     Work Status Report E King.pdf

**From:** elise king [mailto:eliseking@msn.com]
**Sent:** Thursday, July 31, 2014 12:22 PM
**To:** maria.lee-beason@water.ca.gov
**Subject:** FW: Work Status Report E King

Good Afternoon Maria,

I have not received confirmation that you have received this updated Work Status Report which I sent on 7/25/14. I have also not received any communication from my department regarding this report.

My understanding is that you are my Return To Work Coordinator. I am not quite certain what that means. During our conversations last week it I understood that you would be an intermediary between the department and myself on my transition back to work. So far, I have not received any written indication from either you or my department as to why the accommodation requested by my doctor is unacceptable, and what is the reason for the denial; or what accommodation the department is willing to make for my return to work. Sadly, it seems that the communication channels from the management in IRWM/FAB are disjointed.

So far, I have received a voice mail from Zaffar Eusuff stating only that he would not be able to make the accommodation requested so that I would be out until the end of July 2014. Due to the nature of the accommodation, it would not be prudent for me to contact the department managers directly by phone although I did email them on July 25th to notify them of the new Off Work Report. Please advise.

Could you confirm that you have received this updated information and whether you are the correct person to address this inquiry? If not, please provide me with the contact information of the appropriate staff member to answer my questions. Also, is it possible for you to provide me with a copy of the Employer's Report to SCIF? This is my second request for such information.

I look forward to hearing from you soon.

Thanks for your assistance,

Elise King

From: eliseking@msn.com
To: muzaffar.eusuff@water.ca.gov; debbie.myrum@water.ca.gov
Subject: FW: Work Status Report E King
Date: Fri, 25 Jul 2014 15:54:19 -0700

Hello,

1

(31-4)

I sent the Work Status Report to Deserie and Maria which covers the period from 7/24/14 through 8/31/14. Zaffar mentioned in his voice mail to me last month that there is a call-in procedure, however, he did not state what that procedure is. Neither Deserie or Maria is aware of what the procedure is either so I am not sure what that means. Normally, when I am out sick I notify both Zaffar and Linda by phone or email.

Thank you,
Elise

From: eliseking@msn.com
To: deserie.campos@water.ca.gov; maria.lee-beason@water.ca.gov
Subject: Work Status Report E King
Date: Fri, 25 Jul 2014 15:46:31 -0700

Good Afternoon,

Please find attached an updated Work Status Report. The report outlines accommodations that will need to be reviewed by DWR staff.    Please let me know, if these or other accommodations will be considered by my department.

Sincerely,

Elise King

| | |
|---|---|
| **From:** | Myrum, Debbie@DWR |
| **To:** | Campos, Deserie@DWR |
| **Cc:** | Eusuff, Muzaffar@DWR |
| **Subject:** | FW: Work Status Report E King |
| **Date:** | Monday, July 28, 2014 6:47:55 AM |

Good Morning Deserie,

Apparently, Elise King is off through August 31 unless we can accommodate her latest request?  We did not get a copy of that request.  Will you please send it to Zaffar and me?

Also, just FYI, the "call in procedure" that Elise mentions below is just that she is to call her Supervisor, not go through you.  It is fine that she lets your know of her Work Status, but she is also to advise her Supervisor of her Work Status.  We should not have to rely on you for this information.  If you have any questions, please feel free to contact me.

Thank you

Debbie Myrum
916-651-9210

---

**From:** elise king [mailto:eliseking@msn.com]
**Sent:** Friday, July 25, 2014 3:54 PM
**To:** Eusuff, Muzaffar@DWR; Myrum, Debbie@DWR
**Subject:** FW: Work Status Report E King

Hello,

I sent the Work Status Report to Deserie and Maria which covers the period from 7/24/14 through 8/31/14.  Zaffar mentioned in his voice mail to me last month that there is a call-in procedure, however, he did not state what that procedure is.  Neither Deserie or Maria is aware of what the procedure is either so I am not sure what that means.  Normally, when I am out sick I notify both Zaffar and Linda by phone or email.

Thank you,
Elise

---

From: eliseking@msn.com
To: deserie.campos@water.ca.gov; maria.lee-beason@water.ca.gov
Subject: Work Status Report E King
Date: Fri, 25 Jul 2014 15:46:31 -0700

Good Afternoon,

Please find attached an updated Work Status Report.  The report outlines accommodations

## Lee-Beason, Maria@DWR

| | |
|---|---|
| **From:** | Lee-Beason, Maria@DWR |
| **Sent:** | Friday, August 01, 2014 3:32 PM |
| **To:** | Myrum, Debbie@DWR |
| **Cc:** | Eusuff, Muzaffar@DWR |
| **Subject:** | RE: Response to Elise King's Modified Activity Request |

Hi Debbie

Zaffar may respond to Elise stating given the temporary restrictions set forth by physician (list the restrictions as noted on recent work status) you are unable to accommodate her. Again, state if her restrictions change to contact you with the information for evaluation. Communication with management is an essential function.

Does this help?

Maria Lee-Beason
Return to Work Coordinator
Employee Health Services
(916) 653-8806
(916) 653-1533 fax

**From:** Myrum, Debbie@DWR
**Sent:** Friday, August 01, 2014 2:05 PM
**To:** Lee-Beason, Maria@DWR
**Cc:** Eusuff, Muzaffar@DWR
**Subject:** FW: Response to Elise King's Modified Activity Request

Hi Maria,

How are we supposed to respond to this? Zaffar let Elise know that we could not accommodate the "modified activity". Any advice you can give us is greatly appreciated.

Thank you

Debbie Myrum
916-651-9210

**From:** Eusuff, Muzaffar@DWR
**Sent:** Friday, August 01, 2014 2:01 PM
**To:** Myrum, Debbie@DWR
**Subject:** FW: Response to Elise King's Modified Activity Request

Debbie,
I think we should wait for Tracie to answer this.
Thanks.

**From:** elise king [mailto:eliseking@msn.com]
**Sent:** Friday, August 01, 2014 2:00 PM
**To:** Eusuff, Muzaffar@DWR
**Subject:** RE: Response to Elise King's Modified Activity Request

Good Afternoon Zaffar,

1

(32-2)

Can you tell me what specifically are the reasons that you can not accommodate this request? And what sort of modified activity that you can accommodate?

Thanks,

Elise King

---

From: Muzaffar.Eusuff@water.ca.gov
To: eliseking@msn.com
CC: Debbie.Myrum@water.ca.gov
Subject: Response to Elise King's Modified Activity Request
Date: Fri, 1 Aug 2014 16:56:46 +0000

Good morning, Elise.
I acknowledge the receipt of your latest Work Status Report, dated July 24, 2014.
In response, I am letting you know that we are still unable to accommodate the "modified activity" as recommended in the letter.
Therefore, we understand you are in the "off work" status from 7/24/2014 through 8/31/2014.
Please advise me should there be any change in your Work Status.
Thanks.

*Zaffar Eusuff, Ph.D., P.E.*
Financial Assistance Branch
Division of Integrated Regional Water Management
California Department of Water Resources
901 P Street, Room 213 A        P.O. Box 942836
Sacramento, CA 95814            Sacramento, CA 94236-0001
Phone (916) 651-9266            Fax (916) 651-9292

2



**eliseking@msn.com**

| | |
|---|---|
| **From:** | Eusuff, Muzaffar@DWR [Muzaffar.Eusuff@water.ca.gov] |
| **Sent:** | Friday, August 08, 2014 9:04 AM |
| **To:** | elise king |
| **Subject:** | RE: Response to Elise King's Modified Activity Request |

Good morning, Elise.

We are still unable to accommodate the "modified activity" as recommended in the Work Status Report, dated July 24, 2014.

Therefore, we understand you are in the "off work" status from 7/24/2014 through 8/31/2014.

Please advise me should there be any change in your Work Status.

Thanks.


*Zaffar Eusuff, Ph.D., P.E.*

Financial Assistance Branch

Division of Integrated Regional Water Management

California Department of Water Resources

901 P Street, Room 213 A     P.O. Box 942836

Sacramento, CA 95814        Sacramento, CA 94236-0001

Phone (916) 651-9266      Fax (916) 651-9292


**From:** elise king [mailto:eliseking@msn.com]
**Sent:** Friday, August 01, 2014 2:00 PM
**To:** Eusuff, Muzaffar@DWR
**Subject:** RE: Response to Elise King's Modified Activity Request

Good Afternoon Zaffar,

Can you tell me what specifically are the reasons that you can not accommodate this request?  And what sort of modified activity that you can accommodate?

Thanks,

Elise King


From: Muzaffar.Eusuff@water.ca.gov
To: eliseking@msn.com
CC: Debbie.Myrum@water.ca.gov
Subject: Response to Elise King's Modified Activity Request
Date: Fri, 1 Aug 2014 16:56:46 +0000

Good morning, Elise.

I acknowledge the receipt of your latest Work Status Report, dated July 24, 2014.

In response, I am letting you know that we are still unable to accommodate the "modified activity" as recommended in the letter.

Therefore, we understand you are in the "off work" status from 7/24/2014 through 8/31/2014.

Please advise me should there be any change in your Work Status.

Thanks.

*Zaffar Eusuff, Ph.D., P.E.*
Financial Assistance Branch
Division of Integrated Regional Water Management
California Department of Water Resources
901 P Street, Room 213 A      P.O. Box 942836
Sacramento, CA 95814          Sacramento, CA 94236-0001
Phone (916) 651-9266          Fax (916) 651-9292

2



**Lee-Beason, Maria@DWR**

| | |
|---|---|
| **From:** | Lee-Beason, Maria@DWR |
| **Sent:** | Wednesday, August 27, 2014 4:47 PM |
| **To:** | Nelson, Jacqueline@DWR |
| **Subject:** | FW: Elise King RAR |

Hi Jacqueline
I spoke with employee this afternoon at 4:15 prior to receiving below email. I began the interactive process, explained the process, and went over the options letter. I will be mailing a copy of the letter out tomorrow.

We discuss further.

Thanks

Maria Lee-Beason
Return to Work Coordinator
Employee Health Services
(916) 653-8806
(916) 653-1533 fax

**From:** Temesvari, Judit [mailto:JTemesvari@SEIU1000.org]
**Sent:** Wednesday, August 27, 2014 3:59 PM
**To:** Lee-Beason, Maria@DWR
**Subject:** Elise King RAR

Ms. Lee-Beason,

I am the SEIU Local 1000 union representative for Elise King and I am writing to request that the department engage in the interactive process of Reasonable Accommodation as required by ADA guidelines. Feasible options of accommodations should be discussed between he parties, and the formal denial of RAR triggers formal appeal rights. Please provide the appropriate RAR forms, and/or an applicable Return to Work Options Letter to Ms. King.

If you would like to discuss this matter please don't hesitate to contact me at 866-471-7348.
Thank you,

Judit Temesvari
SEIU Local 1000 - Resource Center
Union Representative
1108 O street, Suite 415
Sacramento, CA 95814
Bus: (866) 471-7348
Fax: (916) 554-1349

34-2

Elise King — EE                    8/27/14

Left e-mails — & phone calls going on too long

① needs to get a copy of DWC-1  3301

② discussed RTW — is the RTWC helping to
   coordincte it

EE advises  Legally give a statement that program cannot
   accomodate —

③ Dr. wishes to know which part program cannot
   accomodate.

④ EE eventually wishes to RTW — not trying to
   avoid.

⑤ She needs wants to be accomodated or what
   DWR/program can/cannot accomodate So Dr. can
   review              R/T #

              (916) 752—1720

⑥ EE asked about name of sup & if s/b escalated.
   RTWC TA will speak/w Marie — explained K of
   recent. No need to s/w S. Nelson.



**Lee-Beason, Maria@DWR**

| | |
|---|---|
| **From:** | Billington, Tracie@DWR |
| **Sent:** | Thursday, August 28, 2014 10:59 AM |
| **To:** | Lee-Beason, Maria@DWR; Myrum, Debbie@DWR; Eusuff, Muzaffar@DWR |
| **Subject:** | RE: Work Status Report Accommodation |

Thanks – and Zaffar, her immediate supervisor, will do as requested. Thanks tb

**From:** Lee-Beason, Maria@DWR
**Sent:** Thursday, August 28, 2014 10:57 AM
**To:** Myrum, Debbie@DWR; Eusuff, Muzaffar@DWR; Billington, Tracie@DWR
**Subject:** RE: Work Status Report Accommodation

Good morning

I spoke with Elise yesterday afternoon. I am in receipt of an updated work status. It has the same restrictions as the last, restricted from working at 901 P Street, restricted from all but incidental auditory/visual contact with management, communication limited to written form only (email and memo), no meetings, telephone calls, conversations. The period of stated restriction is from 8/19/14 through 9/28/14.

Elise inquired on the reasonable accommodation process. I will send her an options letter and reasonable accommodation forms.

Please send Elise an email advising you are aware of the most recent work status restrictions and you are unable to accommodate her due to those restrictions at this time. Please ask that she keep you updated on her work statuses.

Let me know if you have any questions.

Thank you

Maria Lee-Beason
Return to Work Coordinator
Employee Health Services
(916) 653-8806
(916) 653-1533 fax

**From:** Myrum, Debbie@DWR
**Sent:** Thursday, August 28, 2014 8:39 AM
**To:** Eusuff, Muzaffar@DWR; Billington, Tracie@DWR
**Cc:** Lee-Beason, Maria@DWR
**Subject:** RE: Work Status Report Accommodation

No I have not. I saw the email to you from Maria Lee-Beason and spoke with Maria yesterday but she didn't mention a new Work Status Report.

Per Maria, you can respond to her saying that we cannot meet the requested accommodations because reporting to the chain of command is an essential function of the job.

Debbie Myrum
916-651-9210

1

Discovery 1 - 000891



**DEPARTMENT OF WATER RESOURCES**
1416 NINTH STREET, P.O. BOX 942836
`ACRAMENTO, CA 94236-0001
,916) 653-5791

August 28, 2014

Elise King
10 Mount Judah Place
Sacramento, California  95835

Dear Ms. King:

It was a pleasure to speak with you on August 27, 2014. As discussed, DWR is in receipt of your current work status from Irving Hellman, PhD. dated August 19, 2014. Given the written modified duty work restrictions, your Division is unable to accommodate those restrictions.

You inquired about the reasonable accommodation process and your options. As discussed, please review the options available to you noted below. If you have questions, please contact our office. I am also enclosing the Reasonable Accommodation Request form and Authorization for Release of Medical Information form.

1.   Return to Work

     a.   Full duty: You may return to work as an Associate Governmental Program Analyst performing all of the essential functions.

     b.   Reasonable Accommodation: If you believe that you are disabled and that a reasonable accommodation would enable you to perform the essential functions of your current position/classification or of another classification, for which you qualify, you may request a reasonable accommodation.

          This option may be effectuated through a medical transfer/demotion pursuant to Government Code section 19253.5.

     c.   Medical Transfer/Demotion: If you are unable to perform the work of your current position, but are able to perform the work of another position in the Department, you may be able to medically transfer or medically demote to such a position.  If at a later date you were no longer incapacitated for duty in your original position, under most circumstances, you would have a mandatory right to reinstatement to that classification or an equivalent classification.  This option is available through the provisions of Government Code section 19253.5.

2.   Temporary Leave

     a.   Family Medical Leave Act (FMLA)/California Family Rights Act (CFRA): If you qualify, you may request a leave of absence under either of these

statutes. Both allow qualified employees to take up to 12 weeks of unpaid leave each year when they, or a qualified family member, have a serious health condition. You may be able to utilize existing leave credits. These statutes require that the employer maintain an employee's health, dental and vision coverage during such a leave.

b.   Medical Leave of Absence: You may request an unpaid medical leave of absence for up to one year. Under this option, the employer is not required to maintain an employee's health, dental and vision coverage. You may choose to pay for these benefits yourself.

c.   Leave Balances: You may be able to utilize existing leave balances, including a request for catastrophic leave.

d.   Temporary Assignment: A temporary assignment or loan of employees within an agency or between agencies not to exceed two years may be available to facilitate your return to work. You would have mandatory right of return to your former position should this option be exercised.

e.   State Disability Insurance (SDI):  SDI is a wage continuation program for up to 52 weeks and is available to employees who have been certified for a non-work related injury or illness. Employees eligible for SDI benefits may receive approximately 50% of their regular wages, and have the option to use the cash value of up to 40 hours of their leave credits each month to supplement their income.

f.   Catastrophic Leave:  Catastrophic Leave permits salary and benefit continuation for employees who have exhausted all paid leave because of a serious injury or illness or the need to care for a seriously injured or ill family member.  Upon request, a Catastrophic Leave bank will be established by the Department to receive donated vacation, annual leave, CTO, and holiday credits donated from other State employees in a minimum of eight-hour increments.

3.   Separation from State Service

a.   Disability Retirement: If you are unable to return to work due to your health condition, you may apply for disability retirement with CalPERS. Disability retirement is considered a temporary separation from state service. Health benefits are available through CalPERS while you are on retirement status. If, after you are approved for disability retirement and, at a later date, it is determined that you are able to return to work as an Associate Governmental Program Analyst, you will have mandatory rights to reinstatement to Associate Governmental Program Analyst.

While you await the determination of your disability retirement application from CalPERS, you may use your existing leave credits, request FMLA/CFRA leave, or request a medical leave of absence. If you are eligible you may also apply for service retirement pending approval of your disability retirement.

b. <u>Service Retirement</u>: If you are eligible, you may apply for service retirement with CalPERS. A service retirement is a permanent separation from state service. Health benefits are available through CalPERS while you are on retirement. You would retain permissive reinstatement rights to state service.

c. <u>Voluntary Resignation</u>: You may choose to voluntarily resign from state service. You would retain permissive reinstatement rights. You may be able to purchase health, dental and vision benefits.

If you have any questions or would like to discuss further, please contact Employee Health Services at (916) 654-0533.

Sincerely,

Maria Lee-Beason, Return to Work Coordinator
Employee Health Services

It has been more than a month since we last discussed my Return To Work status, Worker's Compensation and Workplace issues. I am still off through 1/4/15. The report from the QME that evaluated me through the worker's compensation process has to be completed and issued to my attorney and SCIF by 12/20. Below is an email from my supervisor which states the reason for the "management's" refusal to make the accommodation requested by my physician.

I would like to discuss how you might assist me in working with the Return To Work Coordinator to facilitate the process and the outcome. Hopefully, we can schedule a time for me to come and meet with you to discuss what the next steps are for me and work together in getting the accommodation plan and other issues resolved.

I look forward to hearing from you in the very near future.

Thank you,

Elise King

---

From: Muzaffar.Eusuff@water.ca.gov
To: eliseking@msn.com
CC: Debbie.Myrum@water.ca.gov; Tracie.Billington@water.ca.gov
Subject: Work Status Report Accomodation
Date: Fri, 29 Aug 2014 21:22:45 +0000
Good afternoon, Elise.
Upon review your Work Status Report, the management has decided that the requested accommodations cannot be provided because reporting to the chain of command is an essential function of the job.
Also, I am aware that you are working with Employee Health Services on obtaining reasonable accommodation information and your options.
The latest Work Status Report indicates that you will be off through September 28. Please advise me should there be any change in your Work Status.
Thanks.

*Zaffar Eusuff, Ph.D., P.E.*
Financial Assistance Branch
Division of Integrated Regional Water Management
California Department of Water Resources
901 P Street, Room 213 A        P.O. Box 942836
Sacramento, CA 95814           Sacramento, CA 94236-0001
Phone (916) 651-9266           Fax (916) 651-9292

2

| | |
|---|---|
| **From:** | Billington, Tracie@DWR |
| **To:** | Myrum, Debbie@DWR; Eusuff, Muzaffar@DWR |
| **Subject:** | RE: Worker"s Comp issue |
| **Date:** | Wednesday, October 08, 2014 9:51:14 AM |

Thanks for the update.

**From:** Myrum, Debbie@DWR
**Sent:** Wednesday, October 08, 2014 9:48 AM
**To:** Eusuff, Muzaffar@DWR
**Cc:** Billington, Tracie@DWR
**Subject:** Worker's Comp issue

Good Morning,

April is out of the office until Monday, October 13 so I spoke with Tawnya Alibani. Tawnya is going to look into whether there was a hearing yesterday and get back to me. She said we would probably NOT hear the results this soon. Even State Fund would not hear the results that quickly. She is also unaware as to whether the employee has filed the "Reasonable Accommodation" request concurrently or not. IF the WC claim is denied, then they would go through the RA process and since this request is not really 'reasonable', then other options would be offered to the employee. Options such as: medical reassignment; service retirement; medical retirement; etc. Employee Health Services with be working with the employee.

As soon as I hear anything, I will let you know.

Thank you

*Deborah Myrum*
**Administrative Officer**
**Division of Statewide Integrated Water Management**
**Division of Integrated Regional Water Management**
916-651-9210
debbie.myrum@water.ca.gov

| Elise King - AGPA - IRWM/FAB | | |
|---|---|---|
| **Request** | **Reason** | **Notes** |
| I request transfer to another department out of Department of Water Resources, IRWM Division/FAB, and Bonderson Building Room 213A; transfer locations can include another division within the Department of Water Resources, the Natural Resources Agency, or other Agency. | Will help with interpersonal and environmental triggers. BB Room 213A triggers medical condition (EE states similar to PTSD.) | |
| The position that I am transferred to cannot include an option to return to work in the IRWM/FAB or under supervision of staff who were employed by IRWM/FAB from May 2011 through the date the transfer is completed. | **EE revised this request (below)** | **NOT A REASONABLE REQUEST** |
| The position that I am transferred to cannot include an option to return to work in the IRWM/FAB. | **REVISED request:** The communication style is not sufficient. EE states her current chain of command does not follow rules, policies, etc. | |
| 1) I request placement into an equivalent of higher classification 2) with a full-time and Flex-time work schedule; a transitional period to return to full duties and full-time work schedule within two to three months as deemed necessary by the medical care provider. | 1) Supervisor issues. 2) Needs period to adjust to her RTW. | 1) Wants another position, NOT a demotion but will accept an equivalent position based on CalHR guidelines, if she meets MQs. 2) EE states she can perform all EFs while here, but amount of work needs to be adjusted based on amount of time worked during transition period. EE wants flextime work schedule including a telecommuting option. |

| | | |
|---|---|---|
| The physical environment needs to be free from harmful levels of environmental toxins, rodents, insects, and excessive dust. | EE states unsafe working conditions. | EHS is unaware of any current issues, and cannot speak to prior potential incidents. DWR wants all employees to be safe in their working environment and is always available to address issues if they arise. EHS can look into security concern (homeless people wandering around in building). |
| The work area should have a natural light source. If the work are is a cubicle an open cubicle style, with at least one side open, is necessary. If the work area is in enclosed office it must have a window. | Calms employee. | Overhead lighting is ok, but EE is requesting a natural light source such as a window to create a calming environment. EE also requests an opening to her cubicle face the direction of a natural light source of walkway with a natural light source. |
| Supervisor issues. | The communication style in place is not sufficient. She needs email communication for clarity. | EE must communicate as part of her duties. Emailed communication or follow up to verbal conversations may be reasonable, but restricting all communication to email is NOT reasonable. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

38-2

*E KING    WAS NEV
OFFERED TH 38-3
OPTIONS*

**Talking Points**
**4/8/15 Mtg with Elise King and SEIU**

EE requested RAR conference with SEIU so representative can "weigh in" on case status and participate in the process prior to any decision by EHS.

- Allowing SEIU rep as a courtesy.  MOU (2.1) only allows representation for discussion on denied RAs.

DWR has been unable to accommodate Kaiser's current restrictions per work status reports which are;

- Restricted from working in customary worksite (901 P St) due to the risk of environmental/interpersonal triggers flaring up/exacerbating symptoms.
- Restricted from all but incidental auditory/visual contact with management. Communication is limited to written form (eg; emails, memo).
- No meetings, telephone calls, conversations.

PTPs Restrictions/Recommended Accommodations (Ms. Cook, Dr. Larrow)

- Requires work in another division with DWR.
- Cannot return to current unit, current supervisor, and current coworkers.

DWR is not able to accommodate these restrictions.   Working with your supervisor, manager and co-workers is an essential function of the job and cannot be waived through RA

See back of current 4007 for EK's breakdown of RA requests.



**eliseking@msn.com**

| | |
|---|---|
| **From:** | elise king <eliseking@msn.com> |
| **Sent:** | Thursday, June 11, 2015 9:27 PM |
| **To:** | jtemesvari@seiu1000.org |
| **Subject:** | FW: Administrative Questions |
| **Attachments:** | 3.27.15 (50075784) 525 Staff Svc Mgr I (1) - Copy.pdf |

Hi Judit,

FYI. So, the question is who is doing these tasks and how are all of these issues being addressed up until this person is hired?

From: Debbie.Myrum@water.ca.gov
To: eliseking@msn.com
Subject: RE: Administrative Questions
Date: Wed, 13 May 2015 16:52:46 +0000

Hi Elise,

Deserie Campos can answer your merit salary adjustment questions.  Her number is 916-653-0928

As for your second question;  Yes, FAB will soon hire a new Staff Services Manager I.  This SSM I will be responsible for the 4 AGPAs in FAB and RPB.  The change will be effective as soon as the new SSM I is on board, sometime between now and July 1.

Please let me know if you have any more questions.

Thank you

Debbie Myrum
916-651-9210

**From:** elise king [mailto:eliseking@msn.com]
**Sent:** Wednesday, May 13, 2015 9:00 AM
**To:** Myrum, Debbie@DWR
**Subject:** Administrative Questions

Good Morning Debbie,

Would you please address the following questions or refer me to who might be able to assist me with this information?

I have a question regarding my annual merit salary adjustment for 2014.  Do you know which staff member would be able to answer specific questions about this issue?

Is it true that IRWM/FAB has hired or will soon hire a new Staff Services Manager to supervise all of the IRWM HQ and Regional Office analysts?  Could you tell me whether or not the change does include a change of

1

(39-2)

supervisor for the IRWM/FAD Implementation Section grant analyst position, and when this change would be effective?

Thank you,

Elise King

FAB NEW
"ANALYST SUPERVISOR"
· Susan Bradley - Hudson

39-3

State of California                                      California Natural Resources Agency
DEPARTMENT OF WATER RESOURCES

## JOB DESCRIPTION AND POSITION CLASSIFICATION

| CLASSIFICATION | DWR POSITION NUMBER | SAP POSITION NUMBER | MCR |
|---|---|---|---|
| **Staff Services Manager I** | **1650-4800-900** | **50075784** | **2** |

| APPOINTEE | SAP PERSONNEL NO. | DIVISION/SECTION | |
|---|---|---|---|
| **Vacant** | **TBD** | **DIRWM/Financial Assistance Branch** | |

| COLLECTIVE BARGAINING IDENTIFIER | | | |
|---|---|---|---|
| Management Related BU: ☐ | Supervisory Related BU: ☑ **S01** ☐ | Confidential Related BU: ☐ | Rank and File BU: |

| RESPONSIBILITIES EXERCISED | IMMEDIATE SUPERVISOR (Print) | SUPERVISOR'S CLASSIFICATION |
|---|---|---|
| ☑ Supervisory ☐ Lead Person | **Tracie Billington** | **Principal Engineer, Water Resources** |

| APPROVED BY (Personnel Analyst's Name) | | DATE |
|---|---|---|
| **RW** | | **3/27/15** |

| Percent of Time | Activity |
|---|---|
| | **POSITION SUMMARY**<br><br>Under the general direction of the Principal Engineer, Water Resources, the Staff Services Manager I coordinates the activities and supervises a team of analyst that support and delivers various grant programs administered by the Financial Assistance Branch, Division of Integrated Regional Water Management (IRWM).<br><br>**ESSENTIAL FUNCTIONS**<br><br>This position requires the incumbent to work cooperatively with Department staff, contractors, and grant recipients. The Staff Services Manager will supervise branch staff that perform fiscal assignments related to the IRWM grant programs; also responsible for coordinating and overseeing ← Branch work assigned in all four region offices. Provide guidance and expertise to staff, review staff work for accuracy, consistency with branch and department policies and procedures related to the program delivery of various financial assistance programs. Must have excellent verbal and written communication and interpersonal skills; exercise good judgment and tact; handle competing priorities and meet short deadlines; a strong customer-oriented focus; perform in a team environment; and maintain regular, consistent, and predictable attendance. The specific essential duties are: |
| **45%** | Assist the Branch Chief in the formulation of policies and procedures. Provide in depth analyses to disseminate policies, procedures, and other materials related to Financial Assistance Branch programs and projects. Develop, review, and implement internal procedures and perform administrative, program control, fiscal, and business management functions. This includes working cooperatively with various Department organizations including the Bond Administrative Officer, the four Regional Offices, the Budget Office, and Fiscal Services. Perform bill analysis and review of relevant legislation, regulations and standards that affect the branch programs. Establish and maintain cooperative relations with management on high profile problems and/or politically sensitive programs. Create responses to legislative, public and media inquiries including |

| SUPERVISOR'S STATEMENT: | I HAVE DISCUSSED THE DUTIES OF THE POSITION WITH THE EMPLOYEE. |
|---|---|

| SUPERVISOR'S NAME (Print) | SUPERVISOR'S SIGNATURE | DATE |
|---|---|---|
| **Tracie Billington** | ➢ | |

| EMPLOYEE'S STATEMENT: | I HAVE DISCUSSED WITH MY SUPERVISOR THE DUTIES OF THE POSITION AND HAVE RECEIVED A COPY OF THE DUTY STATEMENT. |
|---|---|

| EMPLOYEE'S NAME (Print) | EMPLOYEE'S SIGNATURE | DATE |
|---|---|---|
| | ➢ | |

DWR 525 (Rev. 1/09)                                                                      Page 1 of 3

## JOB DESCRIPTION AND POSITION CLASSIFICATION

| CLASSIFICATION | DWR POSITION NUMBER | | SAP POSITION NUMBER | MCR |
|---|---|---|---|---|
| **Staff Services Manager I** | **1650-4800-900** | | **50075784** | **2** |
| APPOINTEE | SAP PERSONNEL NO. | DIVISION/SECTION | | |
| **Vacant** | **TBD** | **DIRWM/Financial Assistance Branch** | | |

| Percent of Time | Activity |
|---|---|
| | responses to requests about procedures, cost reimbursement issues, and/or bond accountability obligations. Develop, review, and approve customized reports for management, the Legislature, and the public. Participate in public meetings and workshops regarding Branch programs and activities. Driving on a vehicle on public roadways is required to attend meetings. |
| | Plan, lead, organize, and control the staff and activities in order to develop and maintain a highly skilled professional staff to meet the Department's mission through: assigning and distributing work, monitoring and evaluating performance, preparing annual Appraisal and Development reports, determining training needs and approving training requests, implementing the three phases of progressive discipline, verifying and approving employee's attendance and leave requests, interviewing and hiring qualified employees, understanding employee's rights with regards to labor relations, and leading by example. |
| 30% | Ensure the timely completion of Budget Change Proposals and related materials, including Spring Finance Letters. Verify that budgetary information is entered into SAP and COGNOS. Provide oversight in monitoring correct and accurate funding commitments, reviewing and verifying staff reports, documents tracking, and routine reporting materials. Monitor detailed bond expenditure plans and budget planning documents. Review, critique and approve staff work. Recommend to the Branch Chief and other section chiefs corrective actions, as needed. Ensure that approved corrective actions are implemented. Ensure that cash flow projections and related bond accountability obligations are timely, complete, and accurate. Develop and present reports to management on the status of contracts and funding balances. |
| 25% | Oversee and manage staff database and website development, maintenance, and monitoring to ensure that analyst and technical staff have and use the necessary tools to meet branch obligations. Develop systems or processes to assure expeditious and cost effective service to internal and external customers, develop information and data collection systems to evaluate program objectives, design and utilize data reports to assess customer service needs and to assure maximum quality services. |
| | **FINANCIAL DISCLOSURE REQUIREMENT** |
| | Position is listed in the Department's Conflict of Interest Code and requires disclosure. |
| | **SPECIAL REQUIREMENTS** |
| | Possess valid California Driver's License to attend meetings. Limited travel and overtime work may be required to meet program deadlines. |

## JOB DESCRIPTION AND POSITION CLASSIFICATION

| CLASSIFICATION | DWR POSITION NUMBER | | SAP POSITION NUMBER | MCR |
|---|---|---|---|---|
| **Staff Services Manager I** | **1650-4800-900** | | **50075784** | **2** |
| APPOINTEE | SAP PERSONNEL NO. | DIVISION/SECTION | | |
| **Vacant** | **TBD** | **DIRWM/Financial Assistance Branch** | | |

| Percent of Time | Activity |
|---|---|
| | **KNOWLEDGE, SKILLS, AND ABILITIES** |

**KNOWLEDGE, SKILLS, AND ABILITIES**

Possess basic database skills and knowledge of the State contracting and budgeting processes. Have excellent verbal and written communication and interpersonal skills. Ability to work in a team environment.

**OTHER REQUIREMENTS**

This position provides necessary support to Emergency Operations and the Divisions of Flood Management, Safety of Dams, and Operations and Maintenance, Engineering, and the Public Affairs Office during governor declared emergencies, flood, drought, dam, SWP, and other incidents and emergencies. This position may participate in emergency operations in the capacity of area teams, field inspection, coordination, and assisting agencies such as Cal EMA and FEMA in disaster work, including performing fieldwork to complete damage survey reports for droughts, flooding, earthquakes, and other emergencies. This position may also serve in one of the sections as established in the Incident Command System to assist the Department in performing its emergency preparedness, response, recovery, and mitigation functions. These functions are established in the California State Emergency Plan and the Department's Administrative Orders.

AFTER REORGANIZATION
• E. King former position

State of California                DEPARTMENT OF WATER RESOURCES                California Natural Resources Agency

(40)

## JOB DESCRIPTION AND POSITION CLASSIFICATION

| CLASSIFICATION | DWR POSITION NUMBER | SAP POSITION NUMBER | MCR |
|---|---|---|---|
| **Associate Governmental Program Analyst** | **1650-5393-004** | **50012619** | **1** |

| APPOINTEE | SAP PERSONNEL NO. | DIVISION/SECTION |
|---|---|---|
| **Elise King** | **8194** | **IRWM/Financial Assist Br/Implementation Grants Se** |

| COLLECTIVE BARGAINING IDENTIFIER | | | |
|---|---|---|---|
| Management Related BU: ☐ | Supervisory Related BU: ☐ | Confidential Related BU: ☑ | Rank and File BU: **R01** |

| RESPONSIBILITIES EXERCISED | IMMEDIATE SUPERVISOR (Print) | SUPERVISOR'S CLASSIFICATION |
|---|---|---|
| ☐ Supervisory  ☐ Lead Person | **Zaffar Eusuff** | **Supervising Engineer, Water Resources** |

| APPROVED BY (Personnel Analyst's Name) | DATE |
|---|---|
| **JL** | **05/19/11** |

| Percent of Time | Activity |
|---|---|

**POSITION SUMMARY**

Under the direction of the Supervising Engineer, the Associate Governmental Program Analyst (AGPA) exercises independent judgement and initiative in performing the more complex and difficult fiscal assignments related to implementation grants in the Integrated Regional Water Management (IRWM) grant program. The incumbent may be assigned duties to support and work as part of a matrix managed team, including planning grants administration. Duties include determining compliance with IRWM grant program requirements; support the preparation and administration of implementation grant, loan, or service agreements; processing of payment claims for implementation grants and other IRWM grant programs.

**ESSENTIAL FUNCTIONS**

The Implementation Grants are awarded to support projects that are ready for or are nearly ready for implementation. This position requires the incumbent to perform highly varied and extremely complex contract preparation and analysis including the administration of grant, loan, or service agreements; report and correspondence preparation; and analysis and administrative approval of payment claims for IRWM programs. Incumbent must work cooperatively with Department of Water Resources (DWR) staff, contractors, and grant recipients; maintain regular, consistent, predictable attendance; and exercise good judgment. The specific essential functions are:

**15%**

Independently develop and administers implementation grant agreements. Review contract documents to ensure consistency with IRWM Implementation grant program policies and procedures and that appropriate language, legal provisions, and other requirements are included. Review, analyze, and coordinate the execution and implementation of grant, loan, and service agreements with external customers (implementation grantees and agencies) and internal customers, technical staff, Office of Chief Counsel, Budget Office, Fiscal Services, and Contract Services Office. Keep abreast of requirements of the State Contracting Manual, State Administrative Manual, DWR guidelines,

| SUPERVISOR'S STATEMENT: | I HAVE DISCUSSED THE DUTIES OF THE POSITION WITH THE EMPLOYEE. | |
|---|---|---|
| SUPERVISOR'S NAME (Print) | SUPERVISOR'S SIGNATURE | DATE |
| **Zaffar Eusuff** | ➢ | |

| EMPLOYEE'S STATEMENT: | I HAVE DISCUSSED WITH MY SUPERVISOR THE DUTIES OF THE POSITION AND HAVE RECEIVED A COPY OF THE DUTY STATEMENT. | |
|---|---|---|
| EMPLOYEE'S NAME (Print) | EMPLOYEE'S SIGNATURE | DATE |
| | ➢ | |

DWR 525 (Rev. 1/09)                                                                                     Page 1 of 2

# JOB DESCRIPTION AND POSITION CLASSIFICATION

| CLASSIFICATION | DWR POSITION NUMBER | | SAP POSITION NUMBER | MCR |
|---|---|---|---|---|
| **Associate Governmental Program Analyst** | **1650-5393-004** | | **50012619** | **1** |
| APPOINTEE | SAP PERSONNEL NO. | DIVISION/SECTION | | |
| **Elise King** | **8194** | **IRWM/Financial Assist Br/Implementation Grants Se** | | |

| Percent of Time | Activity |
|---|---|
| | various codes (e.g., Public Contract Code and Government Code), and other relevant policies and procedures. Driving a vehicle on public roadways will be required to attend meetings. |
| **15%** | Conduct analytical reviews of implementation grant and loan applications; determine completeness; and evaluate compliance with minimum financial, legal and organizational eligibility criteria. Analyze financial, economic, and demographic data and associated information to determine the legal, financial, and organizational eligibility of applicants for financial assistance. Prepare findings, recommendations, and reports on applications for implementation grants or loans. Participate in the development of proposed legislation affecting the bond law programs. Conduct bill analyses and interpret legislation related to financial assistance programs administered by the Division. Assist the Branch Chief with responding to internal and external audits. Consult with prospective implementation grant applicants and other State agencies on financial assistance programs. Recommend and implement improvements to policies and procedures to improve branch activities, including development of grant agreement templates for use within the Branch and by other Divisions that undertake similar activities; and improving fiscal controls for the various financial assistance programs. |
| **35%** | Review each invoice claim, in conjunction with technical staff, to verify the eligibility of charges claimed and the appropriateness and accuracy of the dollar amounts. Submit claims to management for approval and initiate payment. Prepare SAP Services Entry Sheets to authorize payment. Consult and recommend to grantees procedures for submitting reimbursement claims. Answer and resolve complex questions and concerns from the public and grantees as they arise. |
| **35%** | Utilize SAP, Grants Review and Tracking System (GRanTS), and COGNOS reporting tools to monitor bond-funded implementation grants and loans. Develop custom reports for management, the Legislature, and the public. Track Implementation Grant funding commitments and monitor funding liquidation dates. Maintain and modify databases for tracking and analysis of financial status of various bond law programs, primarily implementation grants. Train staff in the use of various management tools including SAP, GRanTS, and COGNOS. Serve as liaison with GRanTS administrator for implementation of necessary modifications and upgrades. Ensure that Bond Accountability tracking and reporting requirements for implementation grants are met. Assist in budgeting and tracking of program expenditures within SAP. In consultation with Branch and Implementation Grants Section Chief, develop cash flow projections for upcoming General Obligation bond sales; and tracking bond sale allocations by sale, program, and project. |

**SPECIAL REQUIREMENTS**

Must possess a valid California Drivers License.
Limited travel and overtime work may be required to meet program deadlines.
Basic database skills and knowledge of the State contracting and budgeting processes.



STATE OF CALIFORNIA – NATURAL RESOURCES AGENCY                                    Edmund G. Brown Jr., Governor
**DEPARTMENT OF WATER RESOURCES**
1416 NINTH STREET, P.O. BOX 942836
SACRAMENTO, CA 94236-0001
(916) 653-5791

June 18, 2015

Elise King
10 Mount Judah Place
Sacramento, California  95835

Dear Ms. King:

The Department of Water Resources (DWR), Employee Health Services Office is
responding to your request for reasonable accommodation dated May 28, 2015.  Your
requested accommodation we are addressing today is to be transferred to a different
Department outside of DWR, or a different division within DWR.  Additionally, you
requested accommodation for the following: placement to an equivalent classification
with a full-time and flex-time work schedule; a transitional period to return to full duties
and full-time work schedule within two to three months as deemed necessary by the
medical care provider; the physical environment needs to be free from harmful levels of
environmental toxins, rodents, insects, and excessive dust; the work area should have
a natural light source; if the work area is a cubicle, it must be an open cubicle style and
must have at least one side open; and if work area is an enclosed office, it must have a
window.

DWR provides reasonable accommodation to applicants and employees who, because
of a disability or qualifying medical condition which limits a major life activity, cannot
perform the essential functions of the job without accommodation.

In the letters dated March 25, 2015 and April 23, 2015 that you provided with your
request, Rosemary Cook, LCSW, has not identified any essential functions which you
are unable to perform, with or without accommodation, for your position as an
Associate Governmental Program Analyst with the Division of Integrated Regional
Water Management.  Ms. Cook has recommended that you transfer to another division
within DWR and have no interaction with your current management team.  As has been
discussed with you previously, a request for a change in supervision is not considered
to be a reasonable accommodation; therefore, our previous determination to deny your
request remains unchanged.

The additional requests listed above in the first paragraph can be evaluated by our
Employee Health Services Office once we have identified that you are planning on
returning to work.

With regard to your specific request for an environment free from harmful levels of environmental toxins, rodents, insects, and excessive dust, it is DWR's practice to address any such harmful levels for all of our offices and employees. On an ongoing basis DWR endeavors to take all appropriate steps and measures to address these issues and concerns whenever identified.

If you disagree with our determination in this matter, you have one year (365 days) from your receipt of this letter to file a complaint, in writing, to the Department of Water Resources, Office of Workforce Equality, P.O. Box 942836, Sacramento, California 94236-0001. If you do not receive a response from the Department within 90 days of your complaint, or you receive an unfavorable decision and wish to appeal the Department's final determination, you have additional appeal rights through the State Personnel Board.

Should your condition change or improve and your medical treatment providers update their findings and recommendations, please let us know and we will be happy to resume the interactive process with you to evaluate any further accommodations requested. In the interim, should you have any questions or need assistance in any way, please contact Jacqueline Nelson at (916) 654-0533.

Sincerely,

Tom Beiler, Chief
Employee Health Services and Labor Relations

# REASONABLE ACCOMMODATION REQUEST

**NOTE: The Chief, Labor Relations and Employee Health Services is the only individual within the Department of Water Resources authorized to deny a request for reasonable accommodation.**

(See instructions on page two.)

| EMPLOYEE NAME | CLASSIFICATION |
|---|---|
| Elise King | Associate Governmental Program Analyst |

| HOME ADDRESS, CITY, STATE, ZIP |
|---|
| 10 Mount Judah Place, Sacramento, CA 95835 |

| WORK DIVISION | WORK ADDRESS, CITY, STATE, ZIP | |
|---|---|---|
| Integrated Regional Water Mgmt/FAB | 901 P Street, #213A, Sacramento, CA | |

| WORK PHONE NUMBER | HOME PHONE NUMBER | MOBILE PHONE NUMBER |
|---|---|---|
| | | 916-752-1720 |

| SUPERVISOR'S NAME | SUPERVISOR'S PHONE NUMBER |
|---|---|
| Muzaffar Ensuff | 916-651-9266 |

**I hereby request reasonable accommodation to assist me in performing the duties of my current position in the Department of Water Resources.**

**1. The nature of my disability is:** ☒ Permanent    ☒ Temporary *(Please describe below)*

Major Depression and PTSD, with delayed expression.

**2. Description of accommodation requested:** *(If the item may be purchased, indicate where it may be obtained and include cost and model number, or describe request for work site modification, or specific duties which can be restructured or shared. Medical verification may be required.)*

I request transfer to another department outside of Department of Water Resources, IRWM Division/FAB, and Bonderson Building Room 213A; Transfer locations can include another division within the Department of Water Resources, the Natural Resources Agency or other Agency. I request placement into an equivalent classification with a full-time and Flex-time work schedule; a transitional period to return to full duties and full-time work schedule within two to three months as deemed necessary by the medical care provider. The physical environment needs to be free from harmful levels of environmental toxins, rodents, insects, and excessive dust. The work area should have a natural light source. If the work area is a cubicle an open cubicle style, with at least one side open, is necessary. If the work area is an enclosed office it must have a window.

**3. Accommodation requested will assist me by:** *(Be specific)*

The above request will allow me to be in a work environment where my disability is manageable. Please see the attached Forms from my treatment provider Rosemary Cook, LCSW and the Work Status Report from Dr, Richard Alan Sizer for clarification. Additionally, there is an email with this request that provides more explanation of the details of this reasonable accommodation request interactive process.

**SIGNATURES** *(Please read instructions on page two before signing.)*

| EMPLOYEE *Elise King* | DATE 5/28/15 | |
|---|---|---|
| CHIEF, EMPLOYEE HEALTH SERVICES | DATE | RECOMMEND: ☐ Modified   ☐ Approved |
| ADMINISTRATIVE OFFICER | DATE | ESTIMATED COST $    COST OBJECT NUMBER |
| DIVISION/REGION/OFFICE CHIEF | DATE | |
| CHIEF, LABOR RELATIONS AND EMPLOYEE HEALTH SERVICES | DATE | ☐ Denied   See justification attached |

WR 1007 (Rev. 11/12)            Page 1 of 2

**Ellingson, Jana**

| | |
|---|---|
| **From:** | Nelson, Jacqueline@DWR |
| **Sent:** | Thursday, June 18, 2015 9:40 AM |
| **To:** | 'elise king' |
| **Cc:** | Beiler, Tom@DWR; Duenas-Davis, April@DWR |
| **Subject:** | RE: DWR 4007 RAR #4 (JN's response of 6/18) |

Good morning Elise,

Each DWR 4007 (Reasonable Accommodation Request) received from you was evaluated and a decision was made. Please refer to the decision letters sent to you. As stated before, your medical provider has not identified anything that prevents you from performing your essential job functions. A reasonable accommodation is any modification or adjustment to a job, the work environment, or the way things usually are done that enables a qualified individual with a disability or medical condition who cannot perform the essential functions of the job without accommodation, the ability and equal opportunity to perform their essential job functions.

Since there seems to be a discrepancy on whether or not your request has changed, please review the requests below which are directly cut and pasted from your DWR 4007's submitted to EHS:

**Request (1)** A decision was not issued on request (1) because you submitted a revision (request (2) below) for consideration prior to a decision being made by EHS.

**Request (2)** "I request transfer to another department outside of Department of Water Resources, IRWM Division/FAB, and Bonderson Building Room 213A; Transfer locations can include another division within the Department of Water Resources, the Natural Resources Agency or other Agency. The position that I am transferred to can not include an option to return to work in the IRWM/FAB. I request placement into an equivalent or higher classification with a full-time and Flex-time work schedule; a transitional period to return to full duties and full-time work schedule within two to three months as deemed necessary by the medical care provider. The physical environment needs to be free from harmful levels of environmental toxins, rodents, insects, and excessive dust. The work area should have a natural light source. If the work area is a cubicle an open cubicle style, with at least one side open, is necessary. If the work area is an enclosed office it must have a window."

**Request (3)** "I request transfer to another department outside of Department of Water Resources, IRWM Division/FAB, and Bonderson Building Room 213A; Transfer locations can include another division within the Department of Water Resources, the Natural Resources Agency or a different Agency. I request placement into an equivalent classification with a full-time and Flex-time work schedule; a transitional period to return to full duties and full-time work schedule within two to three months as deemed necessary by the medical care provider. The physical environment needs to be free from harmful levels of environmental toxins, rodents, insects, and excessive dust. The work area should have a natural light source. If the work area is a cubicle an open cubicle style, with at least one side open, is necessary. If the work area is an enclosed office it must have a window."

**Request (4)** "I request transfer to another department outside of Department of Water Resources, IRWM Division/FAB, and Bonderson Building Room 213A; Transfer locations can include another division within the Department of Water Resources, the Natural Resources Agency or other Agency. I request placement into an equivalent classification with a full-time and Flex-time work schedule; a transitional period to return to full duties and full-time work schedule within two to three months as deemed necessary by the medical care provider. The physical environment needs to be free from harmful levels of environmental toxins, rodents, insects, and excessive dust. The work area should have a natural light source. If the work area is a cubicle an open cubicle style, with at least one side open, s necessary. If the work area is an enclosed office it must have a window."

If you still feel that your request has changed, specifically from Request (3) to Request (4), please clarify the change.

In your email below, you stated **"How would you know this unless you reconnect with the medical provider to confirm whether there is new information?** Once again, as a separate, new and complete RAR. Which you refuse to do." As you may recall, you submitted letters from your medical providers with your "RAR #4". In a letter from Ms. Cook, LCSW, was the following sentence: (April 23, 2015) "With the prospect of returning to this work environment, Elise

1

**Ellingson, Jana**

| | |
|---|---|
| **From:** | Bradley, Susan@DWR |
| **Sent:** | Tuesday, July 28, 2015 12:12 PM |
| **To:** | Nelson, Jacqueline@DWR; Myrum, Debbie@DWR |
| **Cc:** | Billington, Tracie@DWR |
| **Subject:** | RE: Work Status Report- CONFIDENTIAL |

Hi ~ thank you so much for all the historical information you provided. I now have a better understanding of the process, and I do appreciate you explaining it to me thoroughly. This is all new to me, and I in no way envy you; I knew there was a reason I never wanted to work in HR. Thanks again Jacqueline. I will forward a copy of my response to her to you and Debbie.

---

**From:** Nelson, Jacqueline@DWR
**Sent:** Tuesday, July 28, 2015 11:45 AM
**To:** Bradley, Susan@DWR; Myrum, Debbie@DWR
**Cc:** Billington, Tracie@DWR
**Subject:** RE: Work Status Report- CONFIDENTIAL

Hi Susan,

Yes, we do verify the authenticity of doctor's notes, and it is Employee Health Services unit only that can do it. We need to respond to her, and the best response at this time is the one that has been sent numerous times by Zaffar. The doctor's note we receive doesn't change, so our response will not either. We need to be very careful with this employee in what we say and how we say it. She is in my unit fairly deep with a workers' comp claim, a prior one, and reasonable accommodation requests (x4) that have been denied. She has filed an EEOC complaint alleging discrimination and she has not stopped there. She has hired an attorney as well. I have our best attorney on her case at State Fund. Soon she will be deposed and subpoenas will be sent from DWR.

We denied her request to take off a year and denied her request for a 3 month leave. In return, we asked for medical substantiation in order for us to approve the 3 months and she hasn't provided it. I know what you are thinking because we all are thinking it...she asked for three months off, we didn't approve it, but she is still taking off in chunks...we must continue receiving doctors notes until the workers' comp issue has been cleared AND per Legal we as a department are showing that we've gone out of our way to accommodate her which will hold up in court. Hang in there....

There are complications with her latest workers' comp claim and we need to wait on doing anything different. This information also came from Legal. I will inform Legal there has been another doctor's note provided by Elise and I will see what advice she gives. I will let you know.

Debbie can fill you in with the rest of the history as she has been involved from day 1. ☺ Hope this helps.

*Jacqueline Nelson*

Chief, Employee Health Services
Department of Water Resources
Human Resources Office
(916) 654-0533 Office
(916) 653-1533 Fax
jacqueline.nelson@water.ca.gov

**From:** Bradley, Susan@DWR
**Sent:** Tuesday, July 28, 2015 11:00 AM

1



State of California
515 "S" Street, North Bldg.
Sacramento, CA 95811

State of California
Governor Edmund Brown Jr.

9/3/2015

Elise King ▰▰▰▰▰▰
Sacramento, CA 95816

Dear Elise King:

Your Limited Examination and Appointment Program (LEAP) Certificate has been recorded with the California Department of Human Resources (CalHR). Please review your contact information listed above for accuracy, as it will be used in verifying your LEAP certification in the examination application process. If any of your information above is not correct, please contact CalHR at (866) 844-8671 before applying for a LEAP examination. If the information is accurate, you are approved to apply for any LEAP examination administered by the State of California.

View currently available examinations by visiting the State of California Employment website, located at: JOBS.CA.GOV. Search for available LEAP examinations by typing "LEAP" into the Job Title field and click Search. A list of currently available LEAP examinations will be provided inthe results. Review the specific LEAP bulletin, for the minimum qualifications and the application processes required to take that specific Examination. Additionally, once on the JOBS.CA.GOV website, review the various employment tutorials available. The Information provided through the "Persons with Disabilities" link available through the Job Seekers tab has valuable information on taking both non-LEAP examinations and LEAP examinations available for State employment. Any questions regarding the LEAP examination process, may be directed to CalHR.

Sincerely,

California Department of Human Resources
Examination Services Program
bexamcerts@calhr.ca.gov
(866) 844-8671

California Relay Service for Hearing Impaired Only 1-800-735-2929

# KAISER PERMANENTE  thrive

SIZER, RICHARD ALAN (PHD)
2008 Morse Avenue
Sacramento CA 95825-2135
916-973-5000

**Patient Name:** King,Elise
**Encounter Date & Time:** 1/5/2016 10:00 AM

Please see below for this health care provider's directives and information relating to this encounter.

## Work Status Report

**Date onset of condition:**
**Next Appointment Date:**

**Modified Activity (Applies to work and home)**
This patient is placed on modified activity at work and at home from 1/6/2016 through 2/2/2016.

*If modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required.*

**Other needs and/or restrictions:**
Restricted from working in customary worksite (901 P Street) due to the risk of environmental/ interpersonal triggers flaring up/ exacerbating symptoms. In addition, she is restricted from all but incidental auditory/visual contact with her Management team, M Eusuff, T Billington and P Landis. Communication is limited to written form only (eg email, memo). No meetings, telephone calls, conversations

This form has been authorized by SIZER, RICHARD ALAN (PHD)

*This form contains your private health information that you may choose to release to another party; please review for accuracy.*

# KAISER PERMANENTE  thrive

SIZER, RICHARD ALAN (PHD)
2008 Morse Avenue
Sacramento CA 95825-2135
916-973-5000

**Patient Name:** King,Elise
**Encounter Date:** 2/19/2016

Please see below for this health care provider's directives and information relating to this encounter.

# Work Status Report

**Date onset of condition:**
**Next Appointment Date:**

**Modified Activity (Applies to work and home)**
This patient is placed on modified activity at work and at home from 2/2/2016 through 3/7/2016.

*If modified activity is not accommodated by the employer then this patient is considered temporarily and totally disabled from their regular work for the designated time and a separate off work order is not required.*

**Other needs and/or restrictions:**
Other needs and/or restrictions:
Restricted from working in customary worksite (901 P Street) due to the risk of environmental/ interpersonal triggers flaring up/ exacerbating symptoms. In addition, she is restricted from all but incidental auditory/visual contact with M Eusuff, T Billington and P Landis. Communication is limited to written form only (eg email, memo). No meetings, telephone calls, conversations

This form has been authorized by SIZER, RICHARD ALAN (PHD)

*This form contains your private health information that you may choose to release to another party; please review for accuracy.*



**Ellingson, Jana**

| | |
|---|---|
| **From:** | Duenas-Davis, April@DWR <April.Duenas@water.ca.gov> |
| **Sent:** | Thursday, March 26, 2015 1:44 PM |
| **To:** | eliseking@msn.com |
| **Subject:** | RE: Reasonable Accommodation Request |

Elise,

Thank you for your response. The reason for the need for clarification is to find out what modifications, if any, can be made under reasonable accommodation. So the specific details are very helpful for us to help you. Here are some examples for clarification purposes.

1. If the building itself is the problem, then you could potentially be moved to another building where homeless people, insects or rodents, dust, and un-vacuumed carpets are also present but be satisfied.

2. If the building itself is not a problem but these other factors are, then if the homeless people were not in your vicinity at work, there were no insects or rodents in the building, the dust was cleaned and removed, and the carpets were vacuumed thoroughly and regularly, you could you remain in the Bonderson building and be satisfied.

3. If all of these factors (the Bonderson building, regardless of its condition, and the homeless people, insects or rodents, dust, and un-vacuumed carpets present, regardless of what building you may be housed in) are problems, then you may require working in a new building free of homeless people, insects and rodents, no dust, and thoroughly vacuumed carpets.

Given the explanations and examples above, can you please tell me what all of your environmental triggers are so I can properly address them?

Thanks.

**April Duenas-Davis, PHR**
Return to Work Coordinator
Employee Health Services
(916) 653-9681

---

**From:** elise king [mailto:eliseking@msn.com]
**Sent:** Thursday, March 26, 2015 1:00 PM
**To:** Duenas-Davis, April@DWR
**Cc:** jtemesvari@seiu1000.org
**Subject:** RE: Reasonable Accommodation Request

Good Morning April,

Thank you for you response. Would it be possible for you to scan and email me a copy of the responses that you have received from my doctors?

This does not seem at all tedious and I appreciate your effort to make sure that we clearly communicate the requirements for the reasonable accommodation being requested. In your email on March 26, 2015, 7:23 AM, you offered your interpretation of what my environmental and interpersonal triggers are and stated, "I need to

(462)

know all the details as they pertain to YOU." You also asked, "Is this correct?" No. It is not what I want to say. Here is my statement regarding the environmental triggers. I will get back to you soon with a more clearly defined explanation of the interpersonal triggers.

In my email to you on March 25, 2015, 4:34 PM, I submitted my explanation detailing the environmental triggers in my current, specific work situation. This is MY interpretation and explanation. Any other interpretation or paraphrasing is not MY interpretation. **The Bonderson Building, Room 213A is the primary environmental trigger due to the unsafe conditions and the effects to my health.** Here is the statement that I provided to you regarding environmental triggers.

*"Please see the attachment for a documented accounting of a continuing problem in Room 213A and the Bonderson Building courtyard. The following issues have existed for some years in Bonderson Building, and specifically Room 213A. There have been numerous times that I have encountered homeless people, dirty and unsafe conditions in the restroom downstairs including large insects (roaches). I have reported these conditions continuously to the proper staff and the conditions have been allowed to persist. I personally was bitten by a spider at work in 2012 (which the department confirmed and verified in an accepted worker's compensation claim). I was affected so severely that I was out of work for a week and had to have four months of treatment and physical therapy due to temporary partial paralysis in my right hand and arm. The excessive dust due to a lack of frequency that the office is cleaned and the requirement that I spend an inordinate amount of time in the file room on the fourth floor, which is never cleaned or vacuumed, has caused me to have more frequent trips to my doctor for allergic symptoms due to a documented allergy to dust mites. As you might imagine, continued exposure to this physical environment has had a negative cumulative affect on my health and levels of angst and anxiety."*

I hope this explanation of environmental triggers clears up any questions you might have. As I state above, I will need to think about the interpersonal triggers and will get back to you soon with a more clearly defined explanation.

Sincerely,

Elise King

From: April.Duenas@water.ca.gov
To: eliseking@msn.com
CC: Jacqueline.Nelson@water.ca.gov
Subject: RE: Reasonable Accommodation Request
Date: Thu, 26 Mar 2015 15:56:48 +0000

Elise,

One more update. I finally reached someone at Kaiser. They did not have record of having received our inquiry to Dr. Hellman, despite my fax confirmation. I resent the information and was told it would be processed on a first-come, first-served basis.

2

State of California  Case 2:17-cv-01257-MCE-EFB  DEPARTMENT OF WATER RESOURCES  Filed 11/16/18  California Natural Resources Agency
TRANSFER OR SEPARATION FROM DWR

Page 124 of 124

47

1. Complete Part 1 and Section A, B, or C and D on Page 1 and fax/deliver both pages to:
   a. Fiscal Services - FAX (916) 654-6682, Room 251
   b. Human Resources Office - FAX (916) 653-9529, Room 520
   c. Employee Health Services - FAX (916) 654-5654, Room 320
   d. Office of Workforce Equality - FAX (916) 653-1536, Room 620

2. Make a copy for your records and route the original, with appropriate signatures, of both pages to the Human Resources Office.

   Human Resources Office
   Payroll, Benefit and SAP Administration
   PO Box 942836
   Sacramento, CA 95814

\* Section C requires additional signatures

## PART 1 – To be completed by Supervisor or Employee

| EMPLOYEE NAME (First, Middle, Last) | | EMPLOYEE PERSONNEL NO. | DWR POSITION NO. | SAP POSITION NO. |
|---|---|---|---|---|
| **Elise King** | | 8194 | 1650-5393-004 | 50012619 |

| FORWARDING ADDRESS [Complete STD 686/687 (EAR) for address changes] A street address is required if overnight delivery of final warrant is necessary | ADDRESS TO WHICH WARRANT/STATEMENT OF EARNINGS SHOULD BE SENT (if different) A street address is required if overnight delivery of final warrant is necessary |
|---|---|
| **10 Mount Judah Place** **Sacramento, CA  95835** | |

| DATE & TIME EMPLOYEE GAVE WRITTEN NOTICE OF SEPARATION/RETIREMENT | SEPARATION DATE (Must be minimum of 1 day prior to retirement start date) |
|---|---|
| | |

| LAST DAY PHYSICALLY WORKED | FINANCIAL DISCLOSURE POSITION? | TEC PENDING SUBMISSION TO ACCOUNTING? | REIMBURSED FOR MOVING EXPENSES? |
|---|---|---|---|
| 5/27/14 | ☐ Yes  ☒ No | ☐ Yes  ☒ No | ☐ Yes  ☒ No |

| DISPOSITION OF LAST WARRANT |
|---|
| ☐ ᗡ Mail  ☐ ᗡPick up  ☐ ᗡ Send to Unit |

NOTE: If you are leaving a position that is designated in the Department's Conflict of Interest Code, you should expect to receive a Statement of Economic Interests (FPPC Form 700). If you do not receive a leaving office statement within 10 days of your separation date, please contact the Assistant Filing Officer at (916) 651-6851.

## A.  Leaving DWR (Employee MUST complete Parts A, B, or C, and D below)

☐ Leaving State Service  Reason

☒ Transfer  Agency/Department **Request medical transfer within DWR per doctor recommendation/restrictions to a physical location other than Bonderson Building; in my current position or different position with equivalent classification.**

TYPE OF APPOINTMENT

☒ ᗡ Permanent  ☐ ᗡ Limited Term/T&D  Duration of LT/T&D

## B.  Retirement (See Enterprise Process Guide Human Resources 3 for more information)

☐ Retirement  Years of State Service

☐ ᗡRequest Retired Employee ID card. Prepare letter of transmittal (See DAM 3951 and EPG Human Resources 3.)

| LEAVE HOURS TO BE USED PRIOR TO RETIREMENT DATE | RETIRING EMPLOYEE ELIGIBLE FOR A MOMENTO? |
|---|---|
| | ☐ Yes  ☐ ᗡNo |

| LUMP SUM DEFERRAL TO NEXT TAX YEAR? | LUMP SUM DEFERRAL TO SAVINGS PLUS (401K/457)? | IF YES: | |
|---|---|---|---|
| ☐ Yes  ☐ ᗡNo | ☐ Yes  ☐ ᗡNo | ☐ Current Tax Year | ☐ Next Tax Year |

## C. Leave of Absence (See DAM Section 3170 and Administrative Procedure Human Resources 18 for more information)

| TYPE OF LEAVE OF ABSENCE | REASON FOR LEAVE | | |
|---|---|---|---|
| ☐ Non-Discretionary  ☐ Discretionary | | | |

| Beginning:  Ending: | TOTAL TIME OFF (Months/Weeks/Days) | |
|---|---|---|
| ☐ ᗡ RECOMMEND APPROVAL ☐ ᗡDISAPPROVE | SUPERVISOR SIGNATURE | DATE |
| ☐ ᗡ RECOMMEND APPROVAL ☐ ᗡDISAPPROVE | FIELD DIVISION/BRANCH CHIEF SIGNATURE | DATE |
| ☐ ᗡ APPROVED  ☐ ᗡDISAPPROVE | DIVISION CHIEF SIGNATURE | DATE |

## ᒞ. Signatures

| EMPLOYEE SIGNATURE | DATE/TIME | SUPERVISOR SIGNATURE | DATE/TIME |
|---|---|---|---|
| ▶ *Elise King* | 5/31/16 | ▶ | |

DWR 2003 (Rev. 7/09)  Page 1 of 2